## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>and the STATE OF ILLINOIS,<br><br>Plaintiffs,<br><br>v.<br><br>MIDWEST GENERATION, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), and the State of Illinois ("Illinois"), by and through Lisa Madigan, Attorney General of the State of Illinois on her own motion, allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought against Midwest Generation LLC ("Defendant" or "Midwest Gen")  pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of:  (1) the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92; (2) visible air pollutant ("opacity") and particulate matter ("PM") limitations under the State Implementation Plan ("SIP") adopted by Illinois and approved by

- 1 -

U.S. EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410; and (3) Title V of the Act,

42 U.S.C. § 7661-7661f, the Title V regulations at 40 C.F.R. Part 70, and the Illinois

Environmental Protection Act, 415 Illinois Codified Statutes ("ILCS"), 5/1 *et seq.*, including the

Title V permit program, 5/39.5.

2.      Defendant is the owner and operator of the electric generating units located at the

following six plants:  the Crawford Station coal-fired electricity generating power plant in

Chicago, Illinois ("Crawford"); the Fisk Station coal-fired electricity generating power plant in

Chicago, Illinois ("Fisk"); the Joliet Station coal-fired electricity generating power plant in Joliet,

Illinois ("Joliet");  the Powerton Station coal-fired electricity generating power plant in Pekin,

Illinois ("Powerton"); the Waukegan Station coal-fired electricity generating power plant in

Waukegan, Illinois ("Waukegan"); and the Will County Station coal-fired electricity power plant

in Romeoville, Illinois ("Will County").  In 1999, the former owner and operator of these six

plants, Commonwealth Edison Company ("ComEd"), sold the plants to Defendant.  Prior to the

sale, ComEd had modified each of the six plants, and subsequently operated the plants and the

individual boiler units at Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County without

first obtaining appropriate permits authorizing the modification and subsequent operation of the

units, and without installing and employing the best available control technology ("BACT") to

control emissions of nitrogen oxides ("$NO_x$"), sulfur dioxide ("$SO_2$"), and/or PM, as the Act

requires. After purchasing the plants, Defendant subsequently separately modified Will County,

and following this and all prior modifications, thereafter operated Crawford, Fisk, Joliet,

Powerton, Waukegan, and Will County without first obtaining appropriate permits authorizing

- 2 -

the modification and subsequent operation of the units, and without installing and employing

BACT to control emissions of $NO_x$, $SO_2$, and/or PM, as the Act requires.

3.      As a result of Defendant's operation of the generating units following these

unlawful modifications and the absence of appropriate controls, massive amounts of $NO_x$, $SO_2$,

and/or PM pollution each year have been, and continue to be, released into the atmosphere.

4.      Midwest Gen has operated, and upon information and belief, continues to operate,

Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County while repeatedly exceeding

opacity and PM limitations established in federally enforceable provisions of the Illinois SIP.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to

Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C.

§§ 1331, 1345, and 1355.

6.      Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b), (c) and 1395(a), because the Defendant resides in this

District, has its principal places of business in this District, the violations have occurred and are

occurring in this District, and five of the six facilities at issue are located in this District.

## NOTICES

7.      U.S. EPA has issued a Notice and Finding of Violation ("NOV") to the

Defendant, at which time it also provided a copy to Illinois, in accordance with Section 113(a)(1)

and (b)(1) of the Act, 42 U.S.C. §§ 7413(a)(1), (b)(1).  The NOV, dated July 31, 2007,  docket

no. EPA-5-07-IL-11, alleged, among other things, violations of:  (1) the Act's PSD program,

42 U.S.C. §§ 7470-7492, and its implementing regulations; (2) standards for opacity and PM

under the federally approved Illinois SIP provisions 35 IAC §§ 212.122, 212.123, and 212.204;

and (3) Title V of the Act, 42 U.S.C. §§ 7661-7661f, at Crawford, Fisk, Joliet, Powerton,

Waukegan, and Will County.

8.     The 30-day period between issuance of the NOV and commencement of a civil

action, required under 42 U.S.C. § 7413, has elapsed.

9.     The United States has provided notice of the commencement of this action to

Illinois EPA as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## AUTHORITY

10.     Authority to bring this action is vested in the Attorney General of the United

States by CAA Section 305, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

11.     Authority to bring this action is vested in the Attorney General of Illinois by

Section 42(e) of the Illinois Environmental Protection Act, 415 ILCS 5/42(e).

## THE DEFENDANT

12.     Defendant is the current owner and operator of Crawford, Fisk, Joliet, Powerton,

Waukegan, and Will County.  Each of these plants generate, and at all relevant times has

generated, electricity from coal-fired, steam generating boilers.

13.     Defendant is a Delaware corporation and is registered to do business in Illinois.

Its principal place of business is One Financial Place, Suite 3500, 440 South LaSalle Street,

Chicago, Illinois 60605.

14.     Defendant is a corporate entity and, as such, is a "person" within the meaning of

Section 302(e) of the Act, 42 U.S.C. § 7602(e).

## **STATUTORY BACKGROUND**

15.     The Clean Air Act is designed to protect and enhance the quality of the nation's

air, so as to promote the public health and welfare and the productive capacity of its population.

Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

The National Ambient Air Quality Standards

16.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of U.S. EPA

to promulgate regulations establishing primary and secondary national ambient air quality

standards ("NAAQS") for those air pollutants ("criteria pollutants") for which air quality criteria

have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408.  The primary NAAQS are

to be adequate to protect public health with an adequate margin of safety, and the secondary

NAAQS are to be adequate to protect public welfare from any known or anticipated adverse

effects associated with the presence of the air pollutant in the ambient air.  The NAAQS

promulgated by U.S. EPA pursuant to this provision are set forth in 40 C.F.R. Part 50.

17.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to

designate those areas within its boundaries where the air quality is better or worse than the

NAAQS for each criteria pollutant or where the air quality cannot be classified due to insufficient

data.  An area that meets the NAAQS for a particular pollutant is an "attainment" area.  An area

that does not meet the NAAQS is a "nonattainment" area.  An area that cannot be classified due

to insufficient data is "unclassifiable."

18.     At the time of the alleged modifications, Powerton was located in an area that had

been designated as being unclassifiable or in attainment with the NAAQS for $NO_x$, $SO_2$, PM,

PM10 (PM having a diameter less than 10 microns),  PM2.5 (PM having a diameter less than

2.5 microns) and ozone.

    19.    At the time of each of the alleged modifications, Crawford, Fisk, Joliet,

Waukegan, and Will County were located in area designated as attainment for $SO_2$, PM, and

PM10, and nonattainment for $NO_x$ and ozone.   However, U.S. EPA granted a waiver to these

areas to allow major stationary sources of $NO_x$ located in these areas to meet less stringent PSD

requirements for $NO_x$ and the one-hour ozone standard ($NO_x$ is a precursor to ozone).   The

waiver became effective February 26, 1996.  61 Fed. Reg. 2428 (January 26, 1996), codified at

40 C.F.R. § 52.726.  Thus, at the time of each modification, these sources had to comply with

PSD.  However, effective June 15, 2004, U.S. EPA designated these areas as moderate

nonattainment for the eight-hour ozone standard.  69 Fed. Reg. 23858 (April 30, 2004), codified

at 40 C.F.R. § 81.314.  As part of this rulemaking, U.S. EPA specified that a CAA

Section 182(f), 42 U.S.C. § 7511a(f), $NO_x$ waiver granted under the one-hour ozone standard

does not apply to areas designated as nonattainment under the newly issued eight-hour ozone

standard.  40 C.F.R. § 51.913(c).  U.S. EPA has not granted these areas a CAA Section 182(f)

$NO_x$ waiver for the eight-hour ozone standard that has been in effect since January 30, 2006.

70 Fed. Reg. 71612, 71661.  Therefore, since at least January 30, 2006, these five facilities have

been located in areas that U.S. EPA has designated as nonattainment for the eight-hour ozone

NAAQS.

    20.    Since April 5, 2005, Crawford, Fisk, Joliet, Waukegan, and Will County have

been located in areas designated as nonattainment for PM2.5.

The Prevention of Significant Deterioration Requirements

21.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for

the prevention of significant deterioration ("PSD") of air quality in those areas designated as

either attainment or unclassifiable for purposes of meeting the NAAQS.  These requirements are

designed to protect public health and welfare, to assure that economic growth will occur in a

manner consistent with the preservation of existing clean air resources, and to assure that any

decision to permit increased air pollution is made only after careful evaluation of all the

consequences of such a decision and after public participation in the decision making process.

These provisions are referred to collectively as the "PSD program."

22.     Pursuant to Section 110 of the Act, 42 U.S.C. § 7410, each State must adopt and

submit to U.S. EPA for approval a State Implementation Plan ("SIP") that includes, among other

things, regulations to prevent the significant deterioration of air quality under Sections 161-165

of the Act, 42 U.S.C. §§ 7471-7475.

23.     Pursuant to Section 302(q) of the Act, 42 U.S.C. § 7602(q), an applicable

implementation plan is the implementation plan, or most recent revision thereof, which has been

approved by U.S. EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410, or promulgated by

U.S. EPA pursuant to Section 110(c) of the Act, 42 U.S.C. § 7410(c), and which implements the

relevant requirements of the Act.

24.     A state may comply with Section 161 of the Act, 42 U.S.C. § 7471, by having its

own PSD regulations approved by U.S. EPA as part of its SIP, which must be at least as stringent

as those set forth at 40 C.F.R. § 51.166.  If a state does not have a PSD program that has been

approved by U.S. EPA and incorporated into the SIP, then the federal PSD regulations set forth

at 40 C.F.R. § 52.21 may be incorporated by reference into the SIP.  40 C.F.R. § 52.21(a).

25.     On August 7, 1980, U.S. EPA determined that the Illinois SIP did not meet the

requirements of Section 161 of the Act, 42 U.S.C. § 7471, and incorporated the federal PSD

regulations at 40 C.F.R. § 52.21(b) through (w) into the Illinois SIP.  40 C.F.R. § 52.738;

45 Fed. Reg. 52841 (August 7, 1980), as amended at 46 Fed. Reg. 9584.  The regulations

appearing at 40 C.F.R. § 52.21 were incorporated into and part of the Illinois SIP at the time of

the violations alleged in this case.  All citations to the PSD regulations herein refer to the

provisions of 40 C.F.R. § 52.21 incorporated into and part of the Illinois SIP as applicable at the

time of the alleged violations.  U.S. EPA has delegated to Illinois the authority to review and

process PSD permit applications.  46 Fed. Reg. 9580.

26.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the

construction and operation of a "major emitting facility" in an area designated as attainment,

unless a permit has been issued that comports with the requirements of Section 165 and the

facility employs BACT for each pollutant subject to regulation under the Act that is emitted from

the facility.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam

electric plants of more than two hundred and fifty million British thermal units ("Btus") per hour

heat input and that emit or have the potential to emit one hundred tons per year or more of any

pollutant to be "major emitting facilities."

27.     Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(c), defines "construction" as

including "modification" (as defined in Section 111(a) of the Act).  "Modification" is defined in

Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the

- 8 -

method of operation of, a stationary source which increases the amount of any air pollutant

emitted by such source or which results in the emission of any air pollutant not previously

emitted."

28.    Section 169(3) of the Act, 42 U.S.C. § 7479(3), defines BACT, in pertinent part,

as "an emission limitation based on the maximum degree of reduction of each pollutant subject

to regulation under this chapter emitted from or which results from any major emitting facility

which the permitting authority, on a case-by-case basis, taking into account energy,

environmental, and economic impacts and other costs, determines is achievable for such

facility. . ."

29.    As set forth at 40 C.F.R. § 52.21(i), any major stationary source in an attainment

or unclassifiable area that intends to construct a major modification must first obtain a PSD

permit.

30.    Under the PSD program, a "major stationary source" is defined to include fossil-

fueled steam electric generating plants of more than 250 million Btus per hour heat input that

emit, or have the potential to emit, one hundred tons per year or more of any regulated air

pollutant.  40 C.F.R. § 52.21(b)(1)(i)(a).

31.    "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as "any physical

change or change in the method of operation of a major stationary source that would result in a

significant net emission increase of any pollutant subject to regulation under the Act."

32.    "Net emissions increase" means "the amount by which the sum of the following

exceeds zero:  (a) [a]ny increase in actual emissions [as defined by 40 C.F.R. § 52.21(b)(21)]

from a particular physical change or change in the method of operation at a stationary source;

and (b) [a]ny other increases and decreases in actual emissions [as defined by

40 C.F.R. § 52.21(b)(21)] at the source that are contemporaneous with the particular change and

are otherwise creditable." 40 C.F.R. § 52.21(b)(3)(i).  A "significant" net emissions increase

means an increase in the rate of emissions that would equal or exceed any of the following rates

for the following pollutants:  40 tons per year of $SO_2$; 40 tons per year of $NO_x$; and 25 tons per

year of PM.  40 C.F.R. § 52.21(b)(23)(i).  Effective July 15, 2008, $SO_2$ is regulated as a precursor

to PM2.5, and $NO_x$ is regulated as a presumed precursor to PM2.5. 73 Fed. Reg. 28321, 28327-

28 (May 16, 2008).

    33.    As set forth at 42 U.S.C. § 7475(a)(4) and 40 C.F.R. § 52.21(j), a source with a

major modification in an attainment or unclassifiable area must install and operate BACT, as

defined in 40 C.F.R. § 52.21(b)(12) and 42 U.S.C. § 7479(3), where the modification would

result in a significant net emissions increase of a pollutant subject to regulation under the Act.

42 U.S.C. § 7475(a)(4).

    34.    Any application for a PSD permit must be accompanied by an analysis of ambient

air quality in the area.  40 C.F.R. § 52.21(m).

    35.    The PSD program also requires any person who elects to modify a major source in

an attainment area to demonstrate, before construction begins, that the construction will not

cause or contribute to air pollution that is in violation of any national ambient air quality standard

or the maximum allowable increase in emissions of that pollutant.  40 C.F.R. § 52.21(k).

    36.    In addition, the owner or operator of a proposed source or modification must

submit all information necessary to perform any analysis or make any determination required

under 40 C.F.R. § 52.21(n).

37.     Though PSD is a preconstruction permitting program, the Clean Air Act and the implementing regulations codified at 40 C.F.R. § 52.21, establish requirements for the lawful operation of the source following a modification.

The Nonattainment New Source Review Requirements

38.     Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth provisions for New Source Review ("NSR") requirements for areas designated as being in nonattainment with the NAAQS standards.  These provisions are referred to collectively as the "Nonattainment NSR program."  The Nonattainment NSR program is intended to reduce emissions of air pollutants in areas that have not attained the NAAQS, so that the areas make progress toward meeting the NAAQS.

39.     Under Section 172(c)(5) of the Nonattainment NSR provisions of the Act, 42 U.S.C. § 7502(c)(5), each state is required to adopt Nonattainment NSR SIP rules that include provisions requiring permits to conform to the requirements of Section 173 of the Act, 42 U.S.C. § 7503, for the construction and operation of modified major stationary sources within nonattainment areas.  Section 173 of the Act, in turn, sets forth a series of minimum requirements for the issuance of permits for major modifications to major stationary sources within nonattainment areas.  42 U.S.C. § 7503.

40.     Section 173(a) of the Act, 42 U.S.C. 7503(a), provides that construction and operating permits may be issued, if, among other things:

"(a) sufficient offsetting emission reductions have been obtained to reduce existing emissions to the point where reasonable further progress towards meeting the national ambient

air quality standards is maintained; and (b) the pollution controls to be employed will reduce emissions to the "lowest achievable emission rate."

41.     Section 182(f) of the Act, 42 U.S.C. § 7511a(f), enacted as part of the Clean Air Act Amendments of 1990, sets forth additional requirements to take effect no later than November 15, 1992, regarding the construction and operation of new or modified major stationary sources of $NO_x$ located within nonattainment areas for ozone.  CAA Section 182(f) defines $NO_x$ as a pollutant that must be treated as a contributor to the criteria pollutant ozone in an ozone nonattainment area.  42 U.S.C. § 7511a(f).  For the purposes of CAA Section 182, a "major stationary source" of $NO_x$ is one that emits or has the potential to emit 100 tons per year or more of a regulated pollutant.  40 C.F.R. § 52.21(b)(1)i).  A "significant" net emissions increase of $NO_x$ is one that would result in increased emissions of 40 tons per year or more. 42 U.S.C. § 7511a; 40 C.F.R. § 52.21(b)(23)(i).

42.     Upon U.S. EPA approval, state SIP requirements are federally enforceable under Section 113 of the Act, 42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.

Title V

43.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources."  The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD and SIP requirements, are collected in one place.

44.     A "major source" for purposes of Title V is defined, among other things, as a source with a potential to emit greater than 100 tons per year of any criteria pollutant.  42 U.S.C. § 7661(2).

- 12 -

45.     Pursuant to CAA Section 502(b), 42 U.S.C. § 7661a(b), U.S. EPA promulgated regulations implementing Title V regulations, which are codified at 40 C.F.R. Part 70.  57 Fed. Reg. 32,250 (July 21, 1992).

46.     Illinois' Title V operating permit program was granted interim approval by U.S. EPA on March 7, 1995 (60 Fed. Reg. 12478) and final approval by U.S. EPA on December 4, 2001 (66 Fed. Reg. 62946).  Illinois' Title V permit program, the Clean Air Act Permit Program ("Illinois CAAPP"), is codified at 415 ILCS 5/39.5.  The CAAPP is not part of the Illinois SIP, but is a federally enforceable program.

47.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Illinois CAAPP, 415 ILCS 5/39.5, have at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

48.     Section 503(c) of the Act, 42 U.S.C. § 7661b(c), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and the Illinois CAAPP, 415 ILCS 5/39.5, have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and includes, among other things:  the citations and descriptions of all requirements applicable to the source (including any requirement to meet BACT pursuant to PSD and to comply with the SIP opacity and PM limitations); a description of, and compliance plan for, requirements for which the source is not in compliance; and a certification by a responsible official of the truth, accuracy, and completeness of the application.

49.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.6(a)(1), and the Illinois CAAPP, 415 ILCS 5/39.5(7)(a) and (c), have at all relevant times required that each Title V permit include, among other things, enforceable

emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the CAA and the requirements of the applicable SIP, including any applicable PSD requirement to comply with BACT and any applicable opacity and PM limitations.

### The Illinois SIP Construction and Operating Permit Program

50.      Prior to the approval of the Illinois CAAPP, the Illinois regulations contained a general state construction and operating permit program that required, among other things, that "air contaminant sources" obtain operating permits and that prohibited the operation of such sources in violation of these permits. This program was approved by U.S. EPA as part of the Illinois SIP. This program was later amended by the Illinois CAAPP, 415 ILCS 5/39.5, as described above.

### The Illinois SIP Opacity (Visible Emissions) Limit

51.      The Illinois SIP codifies visible emissions standards, in relevant sections, at 35 Illinois Administrative Code ("IAC") §§ 212.122 and 212.123. 57 Fed. Reg. 61834, 61837 (December 29, 1992). The Illinois SIP at 35 IAC § 212.122, prohibits the emission of PM having an opacity greater than 20 percent from any fuel combustion emission source that has a heat input of greater than 250 million Btus per hour for which construction or modification commenced on or after April 14, 1972. A "modification" is defined under 35 IAC § 201.102 as "any physical change in, or change in the method of operations of, an emission source or of air pollution control equipment which increases the amount of any specified air contaminant emitted by such source or equipment..." There are narrow exceptions to 35 IAC § 212.122, including, but not limited to, allowing units subject to this limit to have opacity up to 40 percent for a

period or periods aggregating three minutes in any 60 minute period, provided other conditions
are satisfied.

52.     The Illinois SIP at 35 IAC § 212.123 prohibits emissions of PM having an opacity
greater than 30 percent from any emissions source other than those sources subject to
35 IAC § 212.122 discussed in the preceding paragraph.  There are also narrow exceptions to this
rule, including, but not limited to, allowing units subject to this limit to have an opacity up to
60 percent for a period or periods aggregating eight minutes in any 60 minute period, provided
other conditions are satisfied.

The Illinois SIP PM Emission Limit

53.     Illinois SIP provision 35 IAC § 212.204 limits PM emissions to 0.1 lb. per million
Btus in any one hour for fuel combustion emissions units that burn solid fuel exclusively and for
which modification was commenced after April 14, 1972.  58 Fed. Reg. 54294 (October 21,
1993).  For sources subject to this provision, an exceedance of the opacity limits at 35 IAC
§ 212.122 constitutes a separate violation of the particulate emission limit at 35 IAC § 212.204.
35 IAC § 212.124(d)(2)(A); 57 Fed. Reg. 61837.

## CLEAN AIR ACT AND ILLINOIS ACT ENFORCEMENT PROVISIONS

54.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide
that the Administrator may bring a civil action in accordance with Section 113(b) of the Act
whenever, on the basis of any information available, the Administrator finds that any person has
violated or is in violation of any other requirement or prohibition of, among other things:  (1) the
Prevention of Significant Deterioration requirements of Section 165(a) of the Act, 42 U.S.C.
§ 7475(a); (2) the federally enforceable provisions of the Illinois SIP or any permit issued

- 15 -

thereunder; and (3) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder.

55.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring after March 15, 2004; and $37,500 per day for each such violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, among other things, the requirements or prohibitions described in the preceding paragraph.

56.     Sections 111, 112, 165, and 173 of the CAA, and the federal regulations adopted pursuant thereto, are enforceable by Illinois pursuant to Section 9.1(d) of the Illinois Environmental Protection Act ("Illinois Act"), 415 ILCS 5/9.1(d).  Pursuant to Section 42 of the Illinois Act, 415 ILCS 5/42, Illinois may commence a civil action for injunctive relief and civil penalties.

57.     40 C.F.R. § 52.23 provides, among other things, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to Section 113 of the Act, 42 U.S.C. § 7413.

58.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an action for injunctive relief, as necessary, to prevent the construction, modification, or

- 16 -

operation of a major emitting facility that does not conform to the PSD requirements in Part C of

the Act.

## DEFENDANT'S COAL-FIRED GENERATING UNITS

59.   At times pertinent to this civil action, Defendant owned and operated:

A)   the Crawford Station, located in Chicago, Illinois.  The Crawford Station operates

two coal-fired generating units, including Crawford Unit 7 and Crawford Unit 8.

B)   the Fisk Station, located in Chicago, Illinois.  The Fisk Station operates one coal-

fired generating units, including Fisk Unit 19.

C)   the Joliet Station, located in Joliet, Illinois.  The Joliet Station operates three coal-

fired generating units, including, Joliet Unit 6, Joliet Unit 7, and Joliet Unit 8.

D)   the Powerton Station, located in Pekin, Illinois.  The Powerton Station operates

two coal-fired generating units, including Powerton Unit 5 and Powerton Unit 6.

E)   the Waukegan Station, located in Waukegan, Illinois.  The Waukegan Station

operates two coal-fired generating units, including Waukegan Unit 7 and

Waukegan Unit 8.

F)   the Will County Station, located in Romeoville, Illinois.  The Will County Station

operates four coal-fired generating units, including Will County Unit 1, Will

County Unit 2, Will County Unit 3, and Will County Unit 4.

60.   At all times pertinent to this civil action, the Crawford Station, Crawford Unit 7,

Crawford Unit 8, the Fisk Station, Fisk Unit 19, the Joliet Station, Joliet Unit 6, Joliet Unit 7,

Joliet Unit 8, the Powerton Station, Powerton Unit 5, Powerton Unit 6, the Waukegan Station,

Waukegan Unit 6, Waukegan Unit 7, Waukegan Unit 8, the Will County Station, Will County

- 17 -

Unit 1, Will County Unit 2, Will County Unit 3, and Will County Unit 4, were each a "major

emitting facility" and a "major stationary source," within the meaning of the Act and the PSD

regulations in the Illinois SIP for $NO_x$, $SO_2$, and/or PM.

61.     Each stack servicing each Unit is equipped with continuous opacity monitoring

equipment systems that continuously monitor opacity.

62.     At all times pertinent to this civil action, the Crawford Station, the Fisk Station,

the Joliet Station, the Powerton Station, the Waukegan Station, and the Will County Station were

each a "major source" within the meaning of Title V of the Act and the Illinois CAAPP.

63.     On September 7, 1995, ComEd submitted Title V applications for each of the six

plants.  On September 29, 2005, Illinois EPA issued final Title V permits for each of the

Crawford, Fisk, Joliet, Powerton, and Will County Stations.  On February 7, 2006, Illinois EPA

issued a final Title V permit for the Waukegan Station.  On February 16, 2006 for the Crawford,

Fisk, Joliet, Powerton and Will County Stations, and on March 16, 2006 for the Waukegan

Station, the Illinois Pollution Control Board granted Midwest Gen's Motions to stay the effective

date of the final Title V permits pending resolution of contested issues.

## FIRST CLAIM FOR RELIEF

(PSD Violations at Crawford Unit 7)

64.     Paragraphs 1-63 are realleged and incorporated herein by reference.

65.     In or about May 1999, former owner and operator ComEd commenced

construction of one or more major modifications, as defined in the Act and the Illinois SIP, at the

Crawford Station without applying for or receiving a PSD permit.  These modifications included

one or more physical changes or changes in the method of operation at Crawford Unit 7,

- 18 -

including, but not necessarily limited to, replacing boiler components. These modifications were described in the NOV issued to Defendant on July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$, $SO_2$, and/or PM.

66.     Since December 15, 1999, Defendant has owned and operated Crawford Unit 7 without having or seeking a PSD permit covering these major modifications identified in the preceding paragraph.

67.     Defendant has not complied with the PSD requirements in the Illinois SIP with respect to the major modifications at Crawford Unit 7. Among other things, Defendant has failed to obtain a PSD permit as required by the Illinois SIP prior to operation of the major modifications at Crawford Unit 7. As a result, Defendant has failed to comply with the PSD requirements, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Crawford Unit 7.

68.     Defendant has violated, and continues to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD regulations set forth in 40 C.F.R. § 52.21, incorporated into the Illinois SIP, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), at Crawford Unit 7. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

69.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SECOND CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Crawford Unit 7)

70.     Paragraphs 1-69 are realleged and incorporated herein by reference.

71.     As a qualifying modified source under 35 IAC § 212.122, Crawford Unit 7 is

subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from Crawford Unit 7

that exceed the opacity limits in Section 212.122 of the Illinois SIP.

72.     In addition, Crawford Unit 7 is a qualifying source under Illinois SIP provision

35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC

§ 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Crawford

Unit 7 shall constitute a violation of the applicable PM limitations contained in 35 IAC

§ 212.204 at Crawford Unit 7.

73.     In the alternative, as a qualifying source under 35 IAC § 212.123, Crawford Unit 7

is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from Crawford Unit 7

that exceed the opacity limits in Section 212.123 of the Illinois SIP.

74.     U.S. EPA has found, based upon visible emissions referenced in paragraphs 71

and 73, that the Defendant has been, and, upon information and belief, continues to be, in

- 20 -

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at

Crawford Unit 7.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA

notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

75.    Defendant has violated, and continues to violate, the 20 percent opacity limitation

under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative,

the 30 percent opacity limitation under 35 IAC § 212.123, at Crawford Unit 7.   Each of these

provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act,

415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the

Act will continue.

76.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRD CLAIM FOR RELIEF

(Title V Violations at Crawford Unit 7)

77.     Paragraphs 1-76 are realleged and incorporated herein by reference.

78.     As set forth above, on December 15, 1999, Defendant commenced operation of

Crawford Unit 7 with one or more major modifications, as defined under the PSD regulations

and incorporated into the Illinois SIP.  As a result, these modifications triggered the requirements

to, among other things, obtain a PSD permit establishing emissions limitations that meet BACT

and operate in compliance with BACT.  Defendant failed to satisfy these requirements.

Additionally, as described above, Defendant has violated, and, upon information and belief,

continues to be, in violation of opacity and PM limitations under the Illinois SIP, 35 IAC §

212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Crawford Unit 7.

79.     Defendant has failed to submit a complete application for a Title V operating

permit for Crawford Unit 7 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance (including the requirement to meet BACT pursuant

to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois

SIP), and other specific information that may be necessary to implement and enforce the

applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability

of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R.

§ 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

80.     Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Crawford Unit 7.  Unless restrained by an order of this Court, these and similar violations will continue.

81.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FOURTH CLAIM FOR RELIEF

(PSD Violations at Crawford Unit 8)

82.     Paragraphs 1-63 are realleged and incorporated herein by reference.

83.     In or about January 1998, former owner and operator ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at the Crawford Station without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Crawford Unit 8, including, but not necessarily limited to, replacing boiler components.  These modifications were described in the NOV issued to Defendant on July 31, 2007.  These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following: $NO_x$, $SO_2$, and/or PM.

84.     Since December 15, 1999, Defendant has owned and operated Crawford Unit 8 without having or seeking a PSD permit covering the major modifications identified in the preceding paragraph.

- 23 -

85.     Defendant has not complied with the PSD requirements in the Illinois SIP with respect to the major modifications at Crawford Unit 8.  Among other things, Defendant has failed to obtain a PSD permit as required by the Illinois SIP prior to operation of the major modifications at Crawford Unit 8.  As a result, Defendant has failed to comply with the PSD requirements, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Crawford Unit 8.

86.     Defendant has violated, and continues to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), at Crawford Unit 8.  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

87.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Crawford Unit 8)

88.     Paragraphs 1-63 and 83-87 are realleged and incorporated herein by reference.

89.     As a qualifying modified source under 35 IAC § 212.122, Crawford Unit 8 is subject to the 20 percent opacity limit contained in 35 IAC § 212.122.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from Crawford Unit 8 that exceed the opacity limits in Section 212.122 of the Illinois SIP.

90.    In addition, Crawford Unit 8 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources.  As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Crawford Unit 8 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Crawford Unit 8.

91.    In the alternative, as a qualifying source under 35 IAC § 212.123, Crawford Unit 8 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Crawford Unit 8 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

92.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 89 and 91, that the Defendant has been, and continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Crawford Unit 8.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

93.    Defendant has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Crawford Unit 8.  Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act,

415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the

Act will continue.

94.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### SIXTH CLAIM FOR RELIEF

(Title V Violations at Crawford Unit 8)

95.     Paragraphs 1-59 and 83-94 are realleged and incorporated herein by reference.

96.     As set forth above, on December 15, 1999, Defendant commenced operation of

Crawford Unit 8 with one or more major modifications, as defined under the PSD regulations

and incorporated into the Illinois SIP. As a result, these modifications triggered the requirements

to, among other things, obtain a PSD permit establishing emissions limitations that meet BACT

and operate in compliance with BACT. Defendant failed to satisfy these requirements.

Additionally, as described above, Defendant has violated, and, upon information and belief,

continues to be, in violation of opacity and PM limitations under the Illinois SIP, 35 IAC §

212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Crawford Unit 8.

97.     Defendant has failed to submit a complete application for a Title V operating

permit for Crawford Unit 8 that identifies all applicable requirements, accurately certifies

- 26 -

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance (including the requirement to meet BACT pursuant

to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois

SIP), and other specific information that may be necessary to implement and enforce the

applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability

of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R.

§ 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

    98.    Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Crawford Unit 8.  Unless restrained by an order of this Court, these

and similar violations will continue.

    99.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SEVENTH CLAIM FOR RELIEF

### (PSD Violations at Fisk Unit 19)

    100.    Paragraphs 1-63 and are realleged and incorporated herein by reference.

    101.    In or about April 1996, former owner and operator ComEd commenced

construction of one or more major modifications, as defined in the Act and the Illinois SIP, at the

Fisk Station without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Fisk Unit 19, including, but not necessarily limited to, replacing boiler components. These modifications were described in the NOV issued to Defendant on July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following: $NO_x$, $SO_2$, and/or PM.

102.    Since December 15, 1999, Defendant has owned and operated Fisk Unit 19 without having or seeking a PSD permit covering the major modifications identified in the preceding paragraph.

103.    Defendant has not complied with the PSD requirements in the Illinois SIP with respect to the major modifications at Fisk Unit 19. Among other things, Defendant has failed to obtain a PSD permit as required by the Illinois SIP prior to operation of the major modifications at Fisk Unit 19. As a result, Defendant has failed to comply with the PSD requirements, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Fisk Unit 19.

104.    Defendant has violated, and continues to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), at Fisk Unit 19. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

105.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each such violation

- 28 -

occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or

after March 15, 2004; and $37,500 per day for each such violation occurring on or after January

12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.

§ 2461, as amended by 31 U.S.C. § 3701.

## EIGHTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Fisk Unit 19)

106.    Paragraphs 1-63 and 101-105 are realleged and incorporated herein by reference.

107.    As a qualifying modified source under 35 IAC § 212.122, Fisk Unit 19 is subject

to the 20 percent opacity limit contained in 35 IAC § 212.122.  From approximately October 31,

2002 and, upon information and belief, continuing until the present, on numerous occasions,

Defendant emitted, and continues to emit, visible emissions from Fisk Unit 19 that exceed the

opacity limits in Section 212.122 of the Illinois SIP.

108.    In addition, Fisk Unit 19 is a qualifying source under Illinois SIP provision

35 IAC § 212.204 governing PM limitations for such sources.  As provided in 35 IAC

§ 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Fisk Unit 19

shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at

Fisk Unit 19.

109.    In the alternative, as a qualifying source under 35 IAC § 212.123, Fisk Unit 19 is

subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from Fisk Unit 19 that

exceed the opacity limits in Section 212.123 of the Illinois SIP.

- 29 -

110.     U.S. EPA has found, based upon visible emissions referenced in paragraphs 107 and 109, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Fisk Unit 19.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

111.     Defendant has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Fisk Unit 19.   Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

112.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## NINTH  CLAIM FOR RELIEF

(Title V Violations at Fisk Unit 19)

113.     Paragraphs 1-63 and 101-112 are realleged and incorporated herein by reference.

- 30 -

114.    As set forth above, on December 15, 1999, Defendant commenced operation of Fisk Unit 19 with one or more major modifications, as defined under the PSD regulations and incorporated into the Illinois SIP.  As a result, these modifications triggered the requirements to, among other things, obtain a PSD permit establishing emissions limitations that meet BACT and operate in compliance with BACT.  Defendant failed to satisfy these requirements.  Additionally, as described above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Fisk Unit 19.

115.    Defendant has failed to submit a complete application for a Title V operating permit for Fisk Unit 19 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

116.    Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Fisk Unit 19.  Unless restrained by an order of this Court, these and similar violations will continue.

117.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## **TENTH CLAIM FOR RELIEF**

(PSD Violations at Joliet Unit 6)

118.    Paragraphs 1-63 are realleged and incorporated herein by reference.

119.    In or about June 1996, former owner and operator ComEd commenced

construction of one or more major modifications, as defined in the Act and the Illinois SIP, at the

Joliet Station without applying for or receiving a PSD permit.  These modifications included one

or more physical changes or changes in the method of operation at Joliet Unit 6, including, but

not necessarily limited to, replacing boiler components.  These modifications were described in

the NOV issued to Defendant on July 31, 2007.  These modifications resulted in significant net

emissions increases, as defined by the relevant PSD regulations, of one or more of the following:

$NO_x$, $SO_2$, and/or PM.

120.    Since December 15, 1999, Defendant has owned and operated Joliet Unit 6,

without having or seeking a PSD permit covering the major modifications identified in the

preceding paragraph.

121.    Defendant has not complied with the PSD requirements in the Illinois SIP with

respect to the major modifications at Joliet Unit 6.  Among other things, Defendant has failed to

- 32 -

obtain a PSD permit as required by the Illinois SIP prior to operation of the major modifications at Joliet Unit 6. As a result, Defendant has failed to comply with the PSD requirements, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Joliet Unit 6.

122.    Defendant has violated, and continues to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), at Joliet Unit 6. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

123.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each such violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### ELEVENTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Joliet Unit 6)

124.    Paragraphs 1-63 and 119-123 are realleged and incorporated herein by reference.

125.    As a qualifying modified source under 35 IAC § 212.122, Joliet Unit 6 is subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions,

Defendant emitted, and continues to emit, visible emissions from Joliet Unit 6 that exceed the opacity limits in Section 212.122 of the Illinois SIP.

126.    In addition, Joliet Unit 6 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources.  As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Joliet Unit 6 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Joliet Unit 6.

127.    In the alternative, as a qualifying source under 35 IAC § 212.123, Joliet Unit 6 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Joliet Unit 6 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

128.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 125 and 127, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Joliet Unit 6.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

129.    Defendant has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Joliet Unit 6.  Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act,

- 34 -

42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act,

415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the

Act will continue.

130.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### TWELFTH  CLAIM FOR RELIEF

(Title V Violations at Joliet Unit 6)

131.    Paragraphs 1-63 and 119-130 are realleged and incorporated herein by reference.

132.    As set forth above, on December 15, 1999, Defendant commenced operation of

Joliet Unit 6 with one or more major modifications, as defined under the PSD regulations and

incorporated into the Illinois SIP. As a result, these modifications triggered the requirements to,

among other things, obtain a PSD permit establishing emissions limitations that meet BACT and

operate in compliance with BACT. Defendant failed to satisfy these requirements. Additionally,

as described above, Defendant has violated, and, upon information and belief, continues to be in

violation of, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC

§ 212.204 or, in the alternative, Section 212.123, at Joliet Unit 6.

133.    Defendant has failed to submit a complete application for a Title V operating

permit for Joliet Unit 6 that identifies all applicable requirements, accurately certifies compliance

with such requirements, contains a compliance plan for all applicable requirements for which the

source was not in compliance (including the requirement to meet BACT pursuant to a BACT

determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and

other specific information that may be necessary to implement and enforce the applicable

requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such

requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5,

and the Illinois CAAPP, 415 ILCS 5/39.5(5).

134.     Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5 at Joliet Unit 6.  Unless restrained by an order of this Court, these and

similar violations will continue.

135.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### THIRTEENTH CLAIM FOR RELIEF

(PSD Violations at Joliet Unit 7)

136.     Paragraphs 1-63 are realleged and incorporated herein by reference.

137.     In or about March 1994, former owner and operator ComEd commenced

construction of one or more major modifications, as defined in the Act and the Illinois SIP, at the

Joliet Station without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Joliet Unit 7, including, but not necessarily limited to, replacing boiler components. These modifications were described in the NOV issued to Defendant on July 31, 2007. These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following: $NO_x$, $SO_2$, and/or PM.

138.    Since December 15, 1999, Defendant has owned and operated Joliet Unit 7 without having or seeking a PSD permit covering the major modifications identified in the preceding paragraph.

139.    Defendant has not complied with the PSD requirements in the Illinois SIP with respect to the major modifications at Joliet Unit 7. Among other things, Defendant has failed to obtain a PSD permit as required by the Illinois SIP prior to operation of the major modifications at Joliet Unit 7. As a result, Defendant has failed to comply with the PSD requirements, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Joliet Unit 7.

140.    Defendant has violated, and continues to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), at Joliet Unit 7. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

141.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each such violation occurring before January 31, 1997; $27,500 per day for each such violation

occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or

after March 15, 2004; and $37,500 per day for each such violation occurring on or after January

12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.

§ 2461, as amended by 31 U.S.C. § 3701.

## FOURTEENTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Joliet Unit 7)

142.    Paragraphs 1-63 and 137-141 are realleged and incorporated herein by reference.

143.    As a qualifying modified source under 35 IAC § 212.122, Joliet Unit 7 is subject

to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31,

2002 and, upon information and belief, continuing until the present, on numerous occasions,

Defendant emitted, and continues to emit, visible emissions from Joliet Unit 7 that exceed the

opacity limits in Section 212.122 of the Illinois SIP.

144.    In addition, Joliet Unit 7 is a qualifying source under Illinois SIP provision

35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC

§ 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Joliet Unit 7

shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at

Joliet Unit 7.

145.    In the alternative, as a qualifying source under 35 IAC § 212.123, Joliet Unit 7 is

subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from Joliet Unit 7 that

exceed the opacity limits in Section 212.123 of the Illinois SIP.

146.   U.S. EPA has found, based upon visible emissions referenced in paragraphs 143 and 145, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Joliet Unit 7.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.122 or, in the alternative, Section 212.123.

147.   Defendant has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Joliet Unit 7.  Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

148.   As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTEENTH  CLAIM FOR RELIEF

(Title V Violations at Joliet Unit 7)

149.   Paragraphs 1-63 and 137-148 are realleged and incorporated herein by reference.

150.    As set forth above, on December 15, 1999, Defendant commenced operation of
Joliet Unit 7 with one or more major modifications, as defined under the PSD regulations and
incorporated into the Illinois SIP.  As a result, these modifications triggered the requirements to,
among other things, obtain a PSD permit establishing emissions limitations that meet BACT and
operate in compliance with BACT.  Defendant failed to satisfy these requirements.  Additionally,
as described above, Defendant has violated, and, upon information and belief, continues to be in
violation of, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC
§ 212.204 or, in the alternative, Section 212.123, at Joliet Unit 7.

151.    Defendant has failed to submit a complete application for a Title V operating
permit for Joliet Unit 7 that identifies all applicable requirements, accurately certifies compliance
with such requirements, contains a compliance plan for all applicable requirements for which the
source was not in compliance (including the requirement to meet BACT pursuant to a BACT
determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and
other specific information that may be necessary to implement and enforce the applicable
requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such
requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5,
and the Illinois CAAPP, 415 ILCS 5/39.5(5).

152.    Defendant's conduct has violated and continues to violate Sections 502(a) and
503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois
CAAPP, 415 ILCS 5/39.5 at Joliet Unit 7.  Unless restrained by an order of this Court, these and
similar violations will continue.

153.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### SIXTEENTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Joliet Unit 8)

154.    Paragraphs 1-63 are realleged and incorporated herein by reference.

155.    As a qualifying source under 35 IAC § 212.123, Joliet Unit 8 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant has emitted, and continues to emit, visible emissions from Joliet Unit 8 that exceed the opacity limits in Section 212.123.

156.    U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Joliet Unit 8.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in violation of Section 212.123.

157.    Defendant has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Joliet Unit 8.  This provision is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as

a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order of

this Court, these and similar violations of the Act will continue.

158.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SEVENTEENTH CLAIM FOR RELIEF

### (Title V Violations at Joliet Unit 8)

159.    Paragraphs 1-63 and 155-158 are realleged and incorporated herein by reference.

160.    As set forth above, Defendant has violated, and, upon information and belief,

continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at

Joliet Unit 8.

161.    Defendant has failed to submit a complete application for a Title V operating

permit for Joliet Unit 8 that identifies all applicable requirements, accurately certifies compliance

with such requirements, contains a compliance plan for all applicable requirements for which the

source was not in compliance (including the requirement to meet opacity limitations under the

Illinois SIP), and other specific information that may be necessary to implement and enforce the

applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability

of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R.

§ 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

162.   Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Joliet Unit 8.  Unless restrained by an order of this Court, these and

similar violations will continue.

163.   As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## EIGHTEENTH CLAIM FOR RELIEF

(PSD Violations at Powerton Unit 5)

164.   Paragraphs 1-63 are realleged and incorporated herein by reference.

165.   In or about June 1995, former owner and operator ComEd commenced

construction of one or more major modifications, as defined in the Act and the Illinois SIP, at the

Powerton Station without applying for or receiving a PSD permit.  These modifications included

one or more physical changes or changes in the method of operation at Powerton Unit 5,

including, but not necessarily limited to, replacing boiler components.  These modifications were

described in the NOV issued to Defendant on July 31, 2007.  These modifications resulted in

significant net emissions increases, as defined by the relevant PSD regulations, of one or more of

the following: $NO_x$, $SO_2$, and/or PM.

- 43 -

166.    Since December 15, 1999, Defendant has owned and operated Powerton Unit 5 without having or seeking a PSD permit covering the major modifications identified in the preceding paragraph.

167.    Defendant has not complied with the PSD requirements in the Illinois SIP with respect to the major modifications at Powerton Unit 5.  Among other things, Defendant has failed to obtain a PSD permit as required by the Illinois SIP, prior to commencing construction and operation of the major modifications at Powerton Unit 5.  As a result, Defendant has failed to comply with the PSD requirements, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Powerton Unit 5.

168.    Defendant has violated, and continues to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), at Powerton Unit 5.  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

169.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each such violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## NINETEENTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Powerton Unit 5)

170.     Paragraphs 1-63 and 165-169 are realleged and incorporated herein by reference.

171.     As a qualifying modified source under 35 IAC § 212.122, Powerton Unit 5 is subject to the 20 percent opacity limit contained in 35 IAC § 212.122.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from the shared stack of Powerton Units 5 and 6 that exceed the opacity limits in Section 212.122 of the Illinois SIP.

172.     In addition, Powerton Unit 5 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources.  As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Powerton Unit 5 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Powerton Unit 5.

173.     In the alternative, as a qualifying source under 35 IAC § 212.123, Powerton Unit 5 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from the shared stack of Powerton Units 5 and 6 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

174.     U.S. EPA has found, based upon visible emissions referenced in paragraphs 171 and 173, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123 at

- 45 -

Powerton Unit 5. Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

175.    Defendant has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Powerton Unit 5.   Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

176.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### TWENTIETH  CLAIM FOR RELIEF

(Title V Violations at Powerton Unit 5)

177.    Paragraphs 1-63 and 164-176 are realleged and incorporated herein by reference.

178.    As set forth above, on December 15, 1999, Defendant commenced operation of Powerton Unit 5 with one or more major modifications, as defined under the PSD regulations and incorporated into the Illinois SIP. As a result, these modifications triggered the requirements

- 46 -

to, among other things, obtain a PSD permit establishing emissions limitations that meet BACT and operate in compliance with BACT.  Defendant failed to satisfy these requirements. Additionally, as described above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Powerton Unit 5.

179.    Defendant has failed to submit a complete application for a Title V operating permit for Powerton Unit 5 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

180.    Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Powerton Unit 5.  Unless restrained by an order of this Court, these and similar violations will continue.

181.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

- 47 -

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

<u>**TWENTY-FIRST CLAIM FOR RELIEF**</u>

(PSD Violations at Powerton Unit 6)

182.    Paragraphs 1-63 are realleged and incorporated herein by reference.

183.    In or about May 1996, former owner and operator ComEd commenced

construction of one or more major modifications, as defined in the Act and the Illinois SIP, at the

Powerton Station without applying for or receiving a PSD permit.   These modifications included

one or more physical changes or changes in the method of operation at Powerton Unit 6,

including, but not necessarily limited to, replacing boiler components.   These modifications were

described in the NOV issued to Defendant on July 31, 2007.   These modifications resulted in

significant net emissions increases, as defined by the relevant PSD regulations, of one or more of

the following:  $NO_x$, $SO_2$, and/or PM.

184.    Since December 15, 1999, Defendant has owned and operated Powerton Unit 6

without having or seeking a PSD permit covering the major modifications identified in the

preceding paragraph.

185.    Defendant has not complied with the PSD requirements in the Illinois SIP with

respect to the major modifications at Powerton Unit 6.   Among other things, Defendant has failed

to obtain a PSD permit as required by the Illinois SIP prior to operation of the major

modifications at Powerton Unit 6.   As a result, Defendant has failed to comply with the PSD

requirements of the Act, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for

control of $NO_x$, $SO_2$, and/or PM, at Powerton Unit 6.

186. Defendant has violated, and continues to violate, Section 165(a) of the Act,

42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois

Act, 415 ILCS 5/9.1(d), at Powerton Unit 6. Unless restrained by an order of this Court, these

and similar violations of the Act will continue.

187. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for

each such violation occurring before January 31, 1997; $27,500 per day for each such violation

occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or

after March 15, 2004; and $37,500 per day for each such violation occurring on or after January

12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.

§ 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-SECOND CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Powerton Unit 6)

188. Paragraphs 1-63, 183-187 are realleged and incorporated herein by reference.

189. As qualifying modified source under 35 IAC § 212.122, Powerton Unit 6 is

subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from the shared stack of

Powerton Units 5 and 6 that exceed the opacity limits in Section 212.122 of the Illinois SIP.

190. In addition, Powerton Unit 6 is a qualifying source under Illinois SIP provision

35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC

§ 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Powerton

- 49 -

Unit 6 shall constitute a violation of the applicable PM limitations contained in 35 IAC

§ 212.204 at Powerton Unit 6.

191.    In the alternative, as qualifying source under 35 IAC § 212.123, Powerton Unit 6

is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from the shared stack of

Powerton Units 5 and 6 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

192.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 189

and 191, that the Defendant has been, and, upon information and belief, continues to be, in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at

Powerton Unit 6.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA

notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

193.    Defendant has violated, and continues to violate, the 20 percent opacity limitation

under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative,

the 30 percent opacity limitation under 35 IAC § 212.123, at Powerton Unit 6.   Each of these

provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act,

415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the

Act will continue.

194.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**TWENTY-THIRD  CLAIM FOR RELIEF**

(Title V Violations at Powerton Unit 6)

195.    Paragraphs 1-63 and 183-194 are realleged and incorporated herein by reference.

196.    As set forth above, on December 15, 1999, Defendant commenced operation of

Powerton Unit 6 with one or more major modifications, as defined under the PSD regulations

and incorporated into the Illinois SIP.  As a result, these modifications triggered the requirements

to, among other things, obtain a PSD permit establishing emissions limitations that meet BACT

and operate in compliance with BACT.  Defendant failed to satisfy these requirements.

Additionally, as described above, Defendant has violated, and, upon information and belief,

continues to be in violation of, opacity and PM limitations under the Illinois SIP, 35 IAC

§ 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Powerton Unit 6.

197.    Defendant has failed to submit a complete application for a Title V operating

permit for Powerton Unit 6 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance (including the requirement to meet BACT pursuant

to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois

SIP), and other specific information that may be necessary to implement and enforce the

applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability

- 51 -

of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

198.   Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Powerton Unit 6.  Unless restrained by an order of this Court, these and similar violations will continue.

199.   As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-FOURTH CLAIM FOR RELIEF

(PSD Violations at Waukegan Unit 7)

200.   Paragraphs 1-63 are realleged and incorporated herein by reference.

201.   In or about June 1996, former owner and operator ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Waukegan Unit 7 without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Waukegan Unit 7, including, but not necessarily limited to, replacing boiler components.  These modifications were described in the NOV issued to Defendant on July 31, 2007.  These modifications resulted in

significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following: $NO_x$, $SO_2$, and/or PM.

202.    Since December 15, 1999, Defendant has owned and operated Waukegan Unit 7 without having or seeking a PSD permit covering the major modifications identified in the preceding paragraph.

203.    Defendant has not complied with the PSD requirements in the Illinois SIP with respect to the major modifications at Waukegan Unit 7.  Among other things, Defendant has failed to obtain a PSD permit as required by the Illinois SIP prior to operation of the major modifications at Waukegan Unit 7.  As a result, Defendant has failed to comply with the PSD requirements, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Waukegan Unit 7.

204.    Defendant has violated, and continues to violate, Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), at Waukegan Unit 7.  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

205.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each such violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-FIFTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Waukegan Unit 7)

206.    Paragraphs 1-63 and 201-205 are realleged and incorporated herein by reference.

207.    As a qualifying modified source under 35 IAC § 212.122, Waukegan Unit 7 is subject to the 20 percent opacity limit contained in 35 IAC § 212.122.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Waukegan Unit 7 that exceed the opacity limits in Section 212.122 of the Illinois SIP.

208.    In addition, Waukegan Unit 7 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources.  As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Waukegan Unit 7 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Waukegan Unit 7.

209.    In the alternative, as a qualifying source under 35 IAC § 212.123, Waukegan Unit 7 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Waukegan Unit 7 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

210.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 207 and 209, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Waukegan Unit 7.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA

- 54 -

notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

211.    Defendant has violated, and continues to violate, the 20 percent opacity limitation

under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative,

the 30 percent opacity limitation under 35 IAC § 212.123, at Waukegan Unit 7.   Each of these

provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act,

415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the

Act will continue.

212.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-SIXTH CLAIM FOR RELIEF

(Title V Violations at Waukegan Unit 7)

213.    Paragraphs 1-63 and 201-212 are realleged and incorporated herein by reference.

214.     As set forth above, on December 15, 1999, Defendant commenced operation of

Waukegan Unit 7 with one or more major modifications, as defined under the PSD regulations

and incorporated into the Illinois SIP.  As a result, these modifications triggered the requirements

to, among other things, obtain a PSD permit establishing emissions limitations that meet BACT

and operate in compliance with BACT. Defendant failed to satisfy these requirements.

Additionally, as described above, Defendant has violated, and, upon information and belief,

continues to be in violation of, opacity and PM limitations under the Illinois SIP, 35 IAC

§ 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Waukegan Unit 7.

215.     Defendant has failed to submit a complete application for a Title V operating

permit for Waukegan Unit 7 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance (including the requirement to meet BACT pursuant

to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois

SIP), and other specific information that may be necessary to implement and enforce the

applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability

of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R.

§ 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

216.     Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Waukegan Unit 7. Unless restrained by an order of this Court,

these and similar violations will continue.

217.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-SEVENTH CLAIM FOR RELIEF

(PSD Violations at Waukegan Unit 8)

218.     Paragraphs 1-63 are realleged and incorporated herein by reference.

219.     In or about January 1996, former owner and operator ComEd commenced

construction of one or more major modifications, as defined in the Act and the Illinois SIP, at

Waukegan Unit 8 without applying for or receiving a PSD permit.  These modifications included

one or more physical changes or changes in the method of operation at Waukegan Unit 8,

including, but not necessarily limited to, replacing boiler components.  These modifications were

described in the NOV issued to Defendant on July 31, 2007.  These modifications resulted in

significant net emissions increases, as defined by the relevant PSD regulations, of one or more of

the following:  $NO_x$, $SO_2$, and/or PM.

220.     Since December 15,1999, Defendant has owned and operated Waukegan Unit 8

without having or seeking a PSD permit covering the major modifications identified in the

preceding paragraph.

221.     Defendant has not complied with the PSD requirements in the Illinois SIP with

respect to the major modifications at Waukegan Unit 8.  Among other things, Defendant has

failed to obtain a PSD permit as required by the Illinois SIP prior to operation of the major

modifications at Waukegan Unit 8.  As a result, Defendant has failed to comply with the PSD

requirements, 40 C.F.R. § 52.21(j)-(o), including the requirements to apply BACT for control of

$NO_x$, $SO_2$, and/or PM, at Waukegan Unit 8.

- 57 -

222.    Defendant has violated, and continues to violate, Section 165(a) of the Act,

42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois

Act, 415 ILCS 5/9.1(d), at Waukegan Unit 8.  Unless restrained by an order of this Court, these

and similar violations of the Act will continue.

223.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for

each such violation occurring before January 31, 1997; $27,500 per day for each such violation

occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or

after March 15, 2004; and $37,500 per day for each such violation occurring on or after January

12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.

§ 2461, as amended by 31 U.S.C. § 3701.

### TWENTY-EIGHTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Waukegan Unit 8)

224.    Paragraphs 1-63 and 219-223 are realleged and incorporated herein by reference.

225.    As a qualifying modified source under 35 IAC § 212.122, Waukegan Unit 8 is

subject to the 20 percent opacity limit contained in 35 IAC § 212.122.  From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from Waukegan Unit 8

that exceed the opacity limits in Section 212.122 of the Illinois SIP.

226.    In addition, Waukegan Unit 8 is a qualifying source under Illinois SIP provision

35 IAC § 212.204 governing PM limitations for such sources.  As provided in 35 IAC

§ 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Waukegan

Unit 8 shall constitute a violation of the applicable PM limitations contained in 35 IAC

§ 212.204 at Waukegan Unit 8.

227.    In the alternative, as a qualifying source under 35 IAC § 212.123, Waukegan Unit

8 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from Waukegan Unit 8

that exceed the opacity limits in Section 212.123 of the Illinois SIP.

228.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 225

and 227, that the Defendant has been, and, upon information and belief, continues to be, in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at

Waukegan Unit 8.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA

notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

229.    Defendant has violated, and continues to violate, the 20 percent opacity limitation

under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative,

the 30 percent opacity limitation under 35 IAC § 212.123, at Waukegan Unit 8.   Each of these

provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act,

415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the

Act will continue.

230.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

- 59 -

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-NINTH  CLAIM FOR RELIEF

(Title V Violations at Waukegan Unit 8)

231.     Paragraphs 1-63 and 219-230 are realleged and incorporated herein by reference.

232.     As set forth above, on December 15, 1999, Defendant commenced operation of

Waukegan Unit 8 with one or more major modifications, as defined under the PSD regulations

and incorporated into the Illinois SIP.  As a result, these modifications triggered the requirements

to, among other things, obtain a PSD permit establishing emissions limitations that meet BACT

and operate in compliance with BACT.  Defendant failed to satisfy these requirements.

Additionally, as described above, Defendant has violated, and, upon information and belief,

continues to be in violation of, opacity and PM limitations under the Illinois SIP, 35 IAC

§ 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Waukegan Unit 8.

233.     Defendant has failed to submit a complete application for a Title V operating

permit for Waukegan Unit 8 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance (including the requirement to meet BACT pursuant

to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois

SIP), and other specific information that may be necessary to implement and enforce the

applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability

- 60 -

of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R.

§ 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

234.   Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Waukegan Unit 8.  Unless restrained by an order of this Court,

these and similar violations will continue.

235.   As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRTIETH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Will County Unit 1)

236.   Paragraphs 1-63 are realleged and incorporated herein by reference.

237.   As a qualifying source under 35 IAC § 212.123, Will County Unit 1 is subject to

the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31,

2002 and, upon information and belief, continuing until the present, on numerous occasions,

Defendant emitted, and continues to emit, visible emissions from Will County Unit 1 that exceed

the opacity limits in Section 212.123.

238.   U.S. EPA has found, based upon visible emissions referenced in the preceding

paragraph, that the Defendant has been, and, upon information and belief, continues to be, in

violation of 35 IAC § 212.123 at Will County Unit 1.  Pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA

had found the Defendant to be in violation of 35 IAC § 212.123.

239.    Defendant has violated, and continues to violate, the 30 percent opacity limitation

under 35 IAC § 212.123 at Will County Unit 1.  This provision is a federally enforceable Illinois

SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable

as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order

of this Court, these and similar violations of the Act will continue.

240.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRTY-FIRST  CLAIM FOR RELIEF

(Title V Violations at Will County Unit 1)

241.    Paragraphs 1-63 and 237-240 are realleged and incorporated herein by reference.

242.    As set forth above, Defendant has violated, and, upon information and belief,

continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at

Will County Unit 1.

243.    Defendant has failed to submit a complete application for a Title V operating

permit for Will County Unit 1 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance (including the requirement to meet opacity

limitations under the Illinois SIP), and other specific information that may be necessary to

implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to

determine the applicability of such requirements, as required by Section 503(c) of the Act,

42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

244.    Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Will County Unit 1.  Unless restrained by an order of this Court,

these and similar violations will continue.

245.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRTY-SECOND CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Will County Unit 2)

246.    Paragraphs 1-63 are realleged and incorporated herein by reference.

247.    As a qualifying source under 35 IAC § 212.123, Will County Unit 2 is subject to

the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31,

2002 and, upon information and belief, continuing until the present, on numerous occasions,

Defendant emitted, and continues to emit, visible emissions from Will County Unit 2 that exceed the opacity limits in Section 212.123.

248.    U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Will County Unit 2.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in violation of Section 212.123.

249.    Defendant has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Will County Unit 2.  This provision is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

250.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### THIRTY-THIRD CLAIM FOR RELIEF

(Title V Violations at Will County Unit 2)

251.    Paragraphs 1-63 and 247-250 are realleged and incorporated herein by reference.

- 64 -

252.    As set forth above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Will County Unit 2.

253.    Defendant has failed to submit a complete application for a Title V operating permit for Will County Unit 2 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet opacity limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

254.    Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Will County Unit 2. Unless restrained by an order of this Court, these and similar violations will continue.

255.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRTY-FOURTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Will County Unit 3)

256.     Paragraphs 1-63 are realleged and incorporated herein by reference.

257.     As a qualifying source under 35 IAC § 212.123, Will County Unit 3 is subject to

the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31,

2002 and, upon information and belief, continuing until the present, on numerous occasions,

Defendant emitted, and continues to emit, visible emissions from Will County Unit 3 that exceed

the opacity limits in Section 212.123 of the Illinois SIP.

258.     U.S. EPA has found, based upon visible emissions referenced in the preceding

paragraph, that the Defendant has been, and, upon information and belief, continues to be, in

violation of 35 IAC § 212.123 at Will County Unit 3.  Pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a)(1), U.S. EPA notified the Defendant and Illinois by the NOV that U.S. EPA

had found the Defendant to be in violation of 35 IAC § 212.123.

259.     Defendant has violated, and continues to violate, the 30 percent opacity limitation

under 35 IAC § 212.123 at Will County Unit 3.  This provision is a federally enforceable Illinois

SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable

as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order

of this Court, these and similar violations of the Act will continue.

260.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRTY-FIFTH CLAIM FOR RELIEF

(Title V Violations at Will County Unit 3)

261.    Paragraphs 1-63 and 256-260 are realleged and incorporated herein by reference.

262.    As set forth above, Defendant has violated, and, upon information and belief,

continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at

Will County Unit 3.

263.    Defendant has failed to submit a complete application for a Title V operating

permit for Will County Unit 3 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance (including the requirement to meet opacity

limitations under the Illinois SIP), and other specific information that may be necessary to

implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to

determine the applicability of such requirements, as required by Section 503(c) of the Act,

42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

264.    Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Will County Unit 3. Unless restrained by an order of this Court,

these and similar violations will continue.

265.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### THIRTY-SIXTH CLAIM FOR RELIEF

(PSD Violations at Will County Unit 4)

266.    Paragraphs 1-63 are realleged and incorporated herein by reference.

267.    In or about February 2000, Defendant commenced construction of one or more

major modifications, as defined in the Act and the Illinois SIP, at Will County Unit 4 without

applying for or receiving a PSD permit.  These modifications included one or more physical

changes or changes in the method of operation at Will County Unit 4, including, but not

necessarily limited to, replacing boiler components.  These modification were described in the

NOV issued to Defendant on July 31, 2007.  These modifications resulted in significant net

emissions increases, as defined by the relevant PSD regulations, of one or more of the following:

$NO_x$, $SO_2$, and/or PM.

268.    Defendant has not complied with the PSD requirements in the Illinois SIP with

respect to the major modifications at Will County Unit 4.  Among other things, Defendant has

failed to apply for and obtain a PSD permit as required by the Illinois SIP prior to commencing

construction and operation of the major modifications at Will County Unit 4.  Defendant did not

undergo a BACT determination in connection with these major modifications.  Defendant failed

to install BACT for control of $NO_x$, $SO_2$, and/or PM, pursuant to such determination, at Will

County Unit 4.

269.   Defendant has violated and continues to violate Section 165(a) of the Act,

42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1(d) of the Illinois

Act, 415 ILCS 5/9.1(d), at Will County Unit 4. Unless restrained by an order of this Court, these

and similar violations of the Act will continue.

270.   As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### THIRTY-SEVENTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Will County Unit 4)

271.   Paragraphs 1-63 and 267-270 are realleged and incorporated herein by reference.

272.   As a qualifying modified source under 35 IAC § 212.122, Will County Unit 4 is

subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Defendant emitted, and continues to emit, visible emissions from Will County Unit 4

that exceed the opacity limits in Section 212.122 of the Illinois SIP.

273.   In addition, Will County Unit 4 is a qualifying source under Illinois SIP provision

35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC

§ 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Will County

Unit 4 shall constitute a violation of the applicable PM limitations contained in 35 IAC

§ 212.204 at Will County Unit 4.

274.    In the alternative, as a qualifying source under 35 IAC § 212.123, Will County

Unit 4 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From

approximately October 31, 2002 and, upon information and belief, continuing until the present,

on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Will

County Unit 4 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

275.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 272

and 274, that the Defendant has been, and, upon information and belief, continues to be, in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at

Will County Unit 4.  Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), U.S. EPA

notified the Defendant and Illinois by the NOV that U.S. EPA had found the Defendant to be in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

276.    Defendant has violated, and continues to violate, the 20 percent opacity limitation

under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative,

the 30 percent opacity limitation under 35 IAC § 212.123, at Will County Unit 4.  Each of these

provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act,

415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the

Act will continue.

277.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### THIRTY-EIGHTH CLAIM FOR RELIEF

(Title V Violations at Will County Unit 4)

278.    Paragraphs 1-63 and 267-277 are realleged and incorporated herein by reference.

279.    As set forth above, on December 15, 1999, Defendant commenced operation of

Will County Unit 4 with one or more major modifications, as defined under the PSD regulations

and incorporated into the Illinois SIP. As a result, these modifications triggered the

requirements to, among other things, obtain a PSD permit establishing emissions limitations that

meet BACT and operate in compliance with BACT. Defendant failed to satisfy these

requirements. Additionally, as described above, Defendant has violated, and, upon information

and belief, continues to be in violation of, opacity and PM limitations under the Illinois SIP,

35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Will County

Unit 4.

280.    Defendant has failed to submit a complete application for a Title V operating

permit for Will County Unit 4 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance (including the requirement to meet BACT pursuant

to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois

SIP), and other specific information that may be necessary to implement and enforce the

- 71 -

applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

281.    Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Will County Unit 4. Unless restrained by an order of this Court, these and similar violations will continue.

282.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations set forth above, the United States and the State of Illinois request that this Court:

1.    Permanently enjoin Defendant from operating any of the plants subject to this action, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2    Order Defendant to apply for new source review permits under Parts C and/or D of Title I of the Clean Air Act, as appropriate, that conform with the permitting requirements in

effect at the time of the permitting action, for each pollutant in violation of the new source review requirements of the Clean Air Act.

3.     Order Defendant to remedy its past violations by, among other things, requiring Defendant to install and operate the best available control technology or lowest achievable emission rate, as appropriate, at the units subject to this action, for each pollutant in violation of the new source review requirements of the Clean Air Act;

4.     Order Defendant to apply and/or amend applications for permits that are in conformity with the requirements of the Illinois SIP opacity and PM limitations and the Title V program;

5.     Order Defendant to achieve, maintain, and demonstrate compliance with the CAA and applicable requirements established thereunder, including provisions of the Illinois SIP described above;

6.     Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred that would require it to meet the requirements of PSD or Nonattainment NSR, as appropriate, and report the results of these audits to the United States and the State of Illinois;

7.     Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

8.     Assess a civil penalty against Defendant of up to $25,000 per day for each violation of the Clean Air Act and applicable regulations occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day

for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009;

9.    Award Plaintiffs their costs of this action; and,

10.   Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

Dated:  August 26, 2009

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division

JENNIFER A. LUKAS-JACKSON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Phone:  (202) 305-2332
Facsimile:  (202) 514-8395

OF COUNSEL
SUSAN TENNENBAUM
EATON WEILER
Assistant Regional Counsels
Office of Regional Counsel (C-14J)
U.S. EPA, Region V
77 W. Jackson Blvd.
Chicago, IL  60604-3590

PATRICK J. FITZGERALD
United States Attorney for the
Northern District of Illinois

JONATHAN HAILE
Assistant United States Attorney
Northern District of Illinois
219 S. Dearborn St., Fifth Floor
Chicago, IL  60604

- 74 -

*Signature Page for the State of Illinois, United States of America and the State of Illinois v. Midwest Generation, LLC (N.D. Ill.).*

STATE OF ILLINOIS

LISA MADIGAN
Attorney General

By: *Matthew J. Dunn*

MATTHEW J. DUNN, Chief
Environmental Enforcement/
   Asbestos Litigation Division
Assistant Attorney General
69 W. Washington St., 18th Floor
Chicago, IL  60602

OF COUNSEL:
ROSEMARIE CAZEAU, Bureau Chief
PAULA BECKER-WHEELER
Assistant Attorneys General
69 W. Washington St., 18th Floor
Chicago, IL  60602

SUSAN HEDMAN
Environmental Counsel
Assistant Attorney General
69 W. Washington St., 18th Floor
Chicago, IL  60602