# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>MIDWEST GENERATION, LLC,  )<br>)<br>Defendant.  )  | Case No. 1:09-cv-05277 |

## BRIEF IN SUPPORT OF MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24 and 42 U.S.C. § 7604(b)(1)(B), Citizens Against Ruining the Environment, the Environmental Law and Policy Center, the Natural Resources Defense Council, Inc., Respiratory Health Association of Metropolitan Chicago, and the Sierra Club (collectively, "Citizen Groups") respectfully move for leave to intervene in the above-captioned proceeding alleging violations of the Clean Air Act ("CAA" or "Act"). On August 27, 2009, the United States Attorney General, acting at the request of the U.S. Environmental Protection Agency ("U.S. EPA"), and the Illinois Attorney General filed a complaint alleging violations of opacity limits and Prevention of Significant Deterioration ("PSD") provisions of the CAA at Midwest Generation's coal-fired power plants in Illinois under 42 U.S.C. §§ 7413(b), 7477. Section 304(b)(1)(B) of the Act provides a statutory right of intervention to any person where the U.S. EPA or the State has commenced and is diligently prosecuting an enforcement action regarding violations that citizens could otherwise pursue

under Section 304(a)(1). 42 U.S.C. § 7604(b)(1)(B). Because the CAA establishes a statutory right to intervene and the present motion was timely filed, intervention must be granted. *See* Fed. R. Civ. P. 24(a)(1). In the alternative, the Court should grant the Citizen Groups permissive intervention under Rule 24(b).

### I.     Factual Background

The Citizen Groups are public interest, non-profit environmental and public health organizations, each of which has members who live, work, or recreate near Midwest Generation's coal plants and who are adversely impacted by illegal air pollution from those plants.

CARE is an incorporated, non-profit community organization with members in the Lockport area, including Will County. CARE was organized for the purpose of preserving and protecting the state's land, air, water, and other natural resources, and protecting the organization's members and other residents of the state from threats of pollution.

The Environmental Law and Policy Center ("ELPC") is a regional, non-profit public interest environmental legal advocacy and eco-business innovation organization. ELPC's purposes include protecting the environment and natural resources in the Midwest and enhancing the health and quality of life of persons living in Illinois, Indiana, Iowa, Michigan, Minnesota, North Dakota, Ohio, South Dakota, and Wisconsin.

The Natural Resources Defense Council ("NRDC") is a national, non-profit, environmental organization with more than 420,000 members nationwide, including 19,454 members in Illinois, 7,454 members in Cook County, 1,212 members in Lake County, 561 members in Will County, and 107 members in Tazewell County. NRDC is dedicated to the

protection of the environment and public health, and as part of its mission, has actively supported effective enforcement of the CAA and other environmental statutes on behalf of its members for over 30 years.

The Respiratory Health Association of Metropolitan Chicago ("RHAMC") is an incorporated, not-for-profit organization located in Chicago, Illinois. RHAMC fights lung disease and promotes healthy lungs by supporting research, advocacy, and educational efforts on behalf of individuals and families affected by lung cancer, asthma, COPD (chronic bronchitis and emphysema), and other lung diseases.

Sierra Club is the nation's oldest and largest grassroots environmental organization. Sierra Club is an incorporated, not-for-profit organization. Sierra Club's mission is to preserve, protect, and enhance the natural environment. Sierra Club has 641,000 members, including approximately 23,000 members in Illinois, with 10,758 members in Cook County, 1,827 in Lake County, 131 in Tazewell County, and 568 in Will County. Sierra Club's Beyond Coal Campaign is working to retire old coal plants that are the worst contributors to health-harming soot and smog pollution and replace them with clean energy solutions.

The Citizen Groups have a long history of working to require emission reductions and enforce violations of the CAA at Midwest Generation's coal plants in Illinois. Previously, many of the Citizen Groups worked with Illinois officials to require emission reductions from these coal plants under the federal Clean Air Mercury Rule and Clean Air Interstate Rule. In addition, a number of the Citizen Groups unsuccessfully sued to enforce NSR violations at Midwest Generation's coal plants through proceedings related to the renewal of CAA Title V permits for the plants. In August 2007, the Citizen Groups sent Midwest Generation a letter informing the company of the Citizen Groups' plans to sue the company over NSR violations. On July 28,

2009, the Citizen Groups sent a 60-day notice letter, pursuant to Section 304(b)(1)(A) of the Act, informing Midwest Generation of their intent to sue the company for violations of the opacity limits found in the Illinois SIP.

On July 31, 2007, U.S. EPA issued a Notice and Finding of Violation to Midwest Generation based, in part, on self-reported exceedances of the opacity requirements in the Illinois SIP at the company's Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County coal plants, and of the CAA's NSR requirements at those same plants. On August 27, 2009, pursuant to their authority under Sections 113(b) and 167 of the CAA, the U.S. EPA and the State of Illinois filed suit on both the NSR and opacity violations at Midwest Generation's coal plants. The Citizen Groups now seek intervention regarding the opacity violations so that they can fully represent their members' interests in this proceeding.[1]

## II.     Legal Standards

Federal Rule of Civil Procedure 24 provides three separate paths for parties to intervene in a pending case, at least two of which are applicable here. First, Rule 24(a)(1) provides that, "[o]n timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Here, such unconditional right is provided by Section 304(b)(1)(B) of the CAA, which provides that where "the Administrator [of the U.S. EPA] or [a] State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard,

---

[1] Because NSR violations involve the construction of a modified major emitting facility without a permit, the Citizen Groups are authorized by the Clean Air Act to bring their own lawsuit regarding those violations rather than being limited to intervening in the suit already filed by the United States. 42 U.S.C. § 7604(a)(3). While the Citizen Groups are not filing an NSR lawsuit against Midwest Generation at this time, they reserve their right to do so in the future.

limitation, or order . . . any person may intervene as a matter of right." 42 U.S.C. § 7604(b)(1)(B); *see Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) (noting that the "citizen suit provision of the Clean Air Act provides a right to intervene to enforce the law").

Second, Rule 24(b)(1)(B) allows permissive intervention for any party that "has a claim or defense that shares with the main action a common question of law or fact." "Permissive intervention is within the discretion of the district court where the applicant's claim and the main action share common issues of law or fact and where there is independent jurisdiction." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 775 (7th Cir. 2007).

Regardless of the path by which intervention is sought, the Seventh Circuit Court of Appeals has also held that intervention may be granted only if the intervening party would also have Article III standing to bring its own lawsuit. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 171 F.3d 1083, 1089 (7th Cir. 1999); *Planned Parenthood of Wis. v. Doyle*, 162 F.3d 463, 465 (7th Cir. 1998); *Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 507 (7th Cir. 1996).

### III.   Argument

#### A.   Intervention Must be Granted Pursuant to Rule 24(a)(1) and Section 304(b)(1)(B) of the Clean Air Act.

As outlined above, intervention must be granted as a matter of right under Rule 24(a)(1) when it is authorized by a federal statute and a timely motion is made by an entity that would have Article III standing to bring its own lawsuit. These requirements are readily met here.

### i. Intervention is Authorized by a Federal Statute.

Section 304(b)(1)(A) of the CAA provides the Administrator of the U.S. EPA with a right of first refusal for enforcement actions that could be brought by citizens under Section 304(a)(1) of the Act. *See George E. Warren Corp. v. EPA*, 159 F.3d 616, 621 (D.C. Cir. 1998). Pursuant to this authority, the United States, on behalf of U.S. EPA, and the State of Illinois filed a complaint against Midwest Generation on August 27, 2009, alleging numerous CAA violations, including violations of the opacity limits at the Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County facilities. Section 304(b)(1)(B) makes clear that where U.S. EPA exercises its authority to take over an enforcement action under the CAA, and "has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order . . . any person may intervene as a matter of right." 42 U.S.C. § 7604(b)(1)(B); *see Student Pub. Interest Research Group of N.J., Inc. v. Fritzsche, Dodge & Olcott, Inc.*, 759 F.2d 1131, 1136 (3d Cir. 1985) (holding that "citizens may intervene as a matter of right in an agency suit in federal court to enforce the Clean Air Act"). Intervention as a matter of right is therefore authorized by federal statute and must be granted pursuant to Rule 24(a)(1) upon timely motion.

### ii. The Citizen Groups' Intervention Motion is Timely.

The Citizen Groups' motion to intervene also satisfies the timeliness requirement for intervention. The reason for requiring promptness in intervention is "to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Lefkovitz v. Wagner*, 395 F.3d 773, 778 (7th Cir. 2005) (quoting *United States v. South Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)). In determining whether a motion to intervene is timely, the Court considers four factors: "(1) the length of time the intervenor knew or should have known of his interest in

the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (internal quotations and alterations removed). Rather than focusing on the time that elapsed between notice of the need to file and filing, the Court considers the "relative prejudice" to the parties caused by any delay. *Id.* While a prospective intervenor must "move promptly to intervene," the Seventh Circuit has made clear that a party need not intervene the very moment intervention becomes available. *See Aurora Loan Servs. v. Craddieth*, 442 F.3d 1018, 1027 (7th Cir. 2006) ("We don't want a rule that would require a potential intervenor to intervene at the drop of a hat; that would just clog the district courts with motions to intervene.").

The United States and the State of Illinois filed their complaint in this action on August 27, 2009. There have been no further proceedings in the case and the initial status conference is scheduled for October 29, 2009. Consequently, this motion is timely and the granting of intervention to the Citizen Groups would not derail the lawsuit or cause prejudice to any of the parties. *See Aurora Loan Servs.*, 442 F.3d at 1027 (absent prejudice to any party, six-week delay not untimely as a matter of law).[2]

---

[2] Indeed, the cases in which intervention has been deemed untimely have usually involved motions filed long after the case was initiated, *see, e.g.*, *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949-50 (7th Cir. 2000) (five-year delay); or filed only after the case was already settled, *see, e.g.*, *Heartwood*, 316 F.3d at 700-01 (motion filed two weeks after settlement was reached and nearly eleven months after lawsuit was filed); *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1017-19 (7th Cir. 2002) (motion filed ten months after court approved settlement and nine years after litigation commenced).

### iii. The Citizen Groups Have Article III Standing to Challenge Midwest Generation's Clean Air Act Violations.

Intervention must also be granted because the Citizen Groups have Article III standing in this action. An organization has standing to sue if: (1) at least one of its members would otherwise have standing; (2) the interests at stake in the litigation are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires an individual member's participation in the lawsuit. *Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 924 (7th Cir. 2008) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). Individual members of the Citizen Groups would otherwise have standing if they suffer an "injury in fact" that is both (a) concrete and particularized and (b) actual or imminent; the injury is fairly traceable to the challenged action; and a favorable decision would likely redress the injury. *Franklin County Power*, 546 F.3d at 925 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

There can be no reasonable dispute that members of the Citizen Groups suffer an "injury in fact" from the excess emissions of Midwest Generation's coal plants. As outlined in Section I above, each of the Citizen Groups has members who live, work, or recreate near one or more of Midwest Generation's coal plants that have violated applicable opacity limits on a regular basis. Opacity violations represent the emission of excessive amounts of particulate matter ("PM"), a pollutant that causes a variety of adverse health effects, including premature death, heart attacks, strokes, infant mortality, and asthma attacks. *See, e.g.*, *North Carolina v. Tenn. Valley Auth.*, 593 F.Supp.2d 812, 822 (W.D.N.C. 2009) (finding, in a tort case involving coal-fired power plants, that "at a minimum, there is an increased risk of incidences of premature mortality in the general public associated with $PM_{2.5}$ exposure, even for levels at or below the NAAQS

standard"); U.S. EPA, *National Ambient Air Quality Standards for Particulate Matter*, 71 Fed. Reg. 2620, 2635 (Jan. 17, 2006) (U.S. EPA unable to find evidence of a threshold level of $PM_{2.5}$ under which death and disease associated with $PM_{2.5}$ would not occur). The Citizen Groups' members' who live, work, or recreate near or downwind of Midwest Generation's coal plants are exposed to excess PM emissions resulting from the opacity violations at those plants and subject to the increased risk of adverse health impacts posed by such emissions.

In addition, particulate matter impairs visibility and negatively impacts vegetation and ecosystems. 71 Fed. Reg. at 61145. As such, the Citizen Groups' members' recreational and aesthetic use and enjoyment of natural areas near and downwind from Midwest Generation's coal plants are adversely impacted by excess PM emissions from those plants.

Such exposure to harmful air pollutants has been repeatedly held to constitute injury in fact for purposes of standing. In the context of an environmental enforcement action, injury may include harm to a member's health, aesthetic values, recreational activities, economic well-being, or ecological concerns. *See Laidlaw*, 528 U.S. at 181-183. "[T]he injury-in-fact necessary for standing need not be large, an identifiable trifle will suffice." *Franklin County Power*, 546 F.3d at 925 (internal quotations omitted). And as the Seventh Circuit found in another case involving excess emissions from a coal plant, "likely exposure to pollutants is certainly something more than an identifiable trifle, even if the ambient level of air quality does not exceed certain national limits." *Id.* (internal quotations and alterations omitted).

In addition, the health and other injuries resulting from these excess emissions are "fairly traceable" to the Defendant. "[T]he cases are clear that, particularly at the pleading stage, the 'fairly traceable' standard is not equivalent to a requirement of tort causation." *Connecticut v. Am. Elec. Power Co.*, Nos. 05-5104-cv, 05-5119-cv, slip op. at 58-59 (2d Cir. Sept. 21, 2009)

(citing *Natural Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n.7 (4th Cir. 1992)); *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006)).  Rather, the "fairly traceable" requirement is met where plaintiffs alleged that defendants' actions "contribute to" an increased risk of harm to the environment or human health.  *See Am. Elec. Power Co.*, Nos. 05-5104-cv, 05-5119-cv, slip op. at 57-58; *see also Nw. Envtl. Def. Ctr. v. Owens Corning Corp.*, 434 F. Supp. 2d 957, 967 (D. Or. 2006) ("It is sufficient for Plaintiffs to assert that emissions from Defendant's facility will contribute to the pollution that threatens Plaintiffs' interests.").  At the pleading stage, the "ultimate magnitude" of plaintiffs' harm attributable to defendant's actions need not be precisely known.  *Franklin County Power*, 546 F.3d at 927.  The Citizen Groups' allegations of harm readily meet this standard.  And, lastly, harms to local residents from Defendant's emissions violations would be redressed by a court order enforcing the opacity limits because such an order would reduce or eliminate excess emissions from Midwest Generation's coal plants.  *See id.* at 927-28.  Consequently, the Citizen Groups each have members who have standing individually to bring this action.

Further, the purpose of this action, prosecuting violations of emissions limits established by the CAA, is germane to the Citizen Groups' missions.  As explained in Section I above, the Citizen Groups are non-profit public interest organizations that were formed to protect the environment and public health from air pollution and other threats.  Therefore, it is wholly germane to the missions of all of the Citizen Groups to represent their members in Clean Air Act litigation aimed at protecting air quality and ensuring attendant public health benefits.  *See, e.g.*, *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1345 (11th Cir. 2005) (finding that "an order that requires [defendant's coal] plant to comply with [] opacity regulation[s] furthers [the plaintiff environmental] organizations' stated purposes"); *Mo. Coal. for Env't v. FERC*, 544 F.3d

955, 957 (8th Cir. 2008) (holding that "a potentially increased risk of environmental harm is germane to [environmental organization's] mission to preserve and enhance the physical environment").

Finally, it is not necessary that individual members of the Citizen Groups participate in this lawsuit. Courts have held that associational standing is appropriate where the relief requested is "a declaration, injunction, or some other form of prospective relief" rather than an award for money damages requiring individuated proof of damages. *Warth v. Seldin*, 422 U.S. 490, 515 (1975); *Self-Ins. Inst. of Am., Inc. v. Korioth*, 993 F.2d 479, 485 (5th Cir. 1993); *Associated Gen. Contractors of Calif., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991); *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 54 (D.C. Cir. 1991); *see also Sanner v. Bd. of Trade of City of Chi.,* 62 F.3d 918 (7th Cir. 1995). The Supreme Court has also made clear that organizations possess standing to seek civil penalties for ongoing violations of environmental laws. *Laidlaw*, 528 U.S. at 185. Here, the relief sought by Citizen Groups – declaratory and injunctive relief to abate opacity violations occurring at Midwest Generation facilities and civil penalties for these violations – does not require the participation of any individual members and, therefore, associational standing is appropriate.

Because intervention as a matter of right is authorized by a federal statute, the Citizen Groups have sought intervention in a timely manner, and the elements of Article III standing are satisfied, the Citizen Groups are entitled to intervene in this proceeding pursuant to Rule 24(a)(1).

**B.     Alternatively, Intervention Should Be Granted Pursuant to Rule 24(b).**

In the event that this Court denies intervention as a matter of right to the Citizen Groups, the Court should grant permissive intervention. Under Rule 24(b)(1)(B), "[o]n timely motion,

the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." "Permissive intervention is within the discretion of the district court where the applicant's claim and the main action share common issues of law or fact and where there is independent jurisdiction." *Ligas*, 478 F.3d at 775. The common issues of law and fact standard is satisfied here because the Citizen Groups are alleging the same type of opacity violations at Midwest Generation's coal plants as are alleged in the complaint filed by the U.S. EPA and State of Illinois. Further, Citizen Groups possess independent authority to bring this enforcement action. Section 304(a)(1) of the CAA authorizes "any person" to initiate a civil action on his own behalf against any alleged violator of "an emission standard or limitation under this chapter." 42 U.S.C. § 7604(a)(1). Indeed, the authority of U.S. EPA and States to overfile an enforcement action proposed or brought by citizen groups is precisely why Section 304(b)(1)(B) guarantees intervention as a matter of right to citizens in these enforcement actions.

Because intervention in this case is timely and would not prejudice the parties, the Court should exercise its discretion and grant intervention under Rule 24(b).

**IV. Conclusion**

For the foregoing reasons, the Court should grant the Citizen Groups intervention as a matter of right, or in the alternative, allow the Citizen Groups to permissively intervene in this proceeding.

Dated: October 9th, 2009                    Respectfully submitted,

                                                    /s/ Keith Harley

Faith E. Bugel, IL Bar # 6255685
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1300
Chicago, IL 60601-2110
(312) 673-6500
(312) 795-3730 (facsimile)
fbugel@elpc.org
*Attorney for Respiratory Health Association of Metropolitan Chicago and Environmental Law & Policy Center*

Keith Harley, IL Bar # 6198207
Chicago Legal Clinic
205 W. Monroe, Floor 4
Chicago, IL 60606
(312) 726-2938
*Attorney for Citizens Against Ruining the Environment and Sierra Club*

Shannon Fisk, IL Bar # 6269746*
Natural Resources Defense Council
2 N. Riverside Plaza, Suite 2250
Chicago, IL 60606
(312) 651-7904
* Application for admission to the Northern District of Illinois bar forthcoming
*Attorney for Natural Resources Defense Council*

***ELECTRONICALLY FILED***