**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and the STATE OF ILLINOIS,<br><br>    Plaintiffs,<br><br>    v.<br><br>MIDWEST GENERATION, LLC,<br><br>    Defendant. | No. 09-cv-05277<br><br>Judge John W. Darrah<br><br>Magistrate Judge Maria Valdez |

**MIDWEST GENERATION, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS**
**<u>PARTIAL MOTION TO DISMISS</u>**

James M. Jones (*pro hac vice*)
  jmjones@jonesday.com
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania  15219-2514
Telephone:  (412) 391-3939
Facsimile:  (412) 394-7959

Daniel E. Reidy (IL Bar No. 2306948)
  dereidy@jonesday.com
Brian J. Murray (IL Bar No. 6272767)
  bjmurray@jonesday.com
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601-1692
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Kevin P. Holewinksi (*pro hac vice*)
  kpholewinski@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Midwest Generation, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..........................................................................................................................1

BACKGROUND .............................................................................................................................2

     A.    The Clean Air Act Framework. ...................................................................................2

          1.    The Clean Air Act Creates A Federal / State Partnership To Attain And Maintain Clean Air. ...................................................................................2

          2.    The PSD Program. .............................................................................................3

     B.    Midwest Gen's Efforts To Reduce Emissions From the Illinois Plants. .................4

     C.    This Lawsuit And The PSD Claims. ...........................................................................5

APPLICABLE STANDARD ..........................................................................................................6

ARGUMENT ...................................................................................................................................6

I.     PLAINTIFFS' PSD COUNTS FAIL TO STATE A CLAIM. ...........................................7

     A.    The CAA's PSD Provisions Establish Preconstruction Permit Obligations; They Do Not Impose Liability For Subsequent Operations Without A Permit. ......7

     B.    Midwest Gen Cannot Be Liable For Preconstruction Violations Which Occurred At Facilities That It Did Not Own Or Operate. ....................................11

          1.    Midwest Gen Is Not Liable Under The PSD Provisions For Modifications Allegedly Made By ComEd. ..............................................11

          2.    Midwest Gen Is Not Responsible For Even Allegedly "Continuing Violations" Initiated By Non-Party ComEd. ..............................................12

II.    PLAINTIFFS' REQUEST FOR CIVIL PENALTIES ARISING OUT OF THE ALLEGED PSD VIOLATIONS IS TIME-BARRED. ......................................................14

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

Page

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)..................................................................................................6

*Barnhart v. Sigmon Coal Co.,*
    534 U.S. 438 (2002)...................................................................................................10

*Bethlehem Steel Corp. v. EPA,*
    638 F.2d 994 (7th Cir. 1980) .....................................................................................3

*CleanCOALition v. TXU Power,*
    536 F.3d 469 (5th Cir. 2008) ...................................................................................11

*First Nat'l Bank of Chicago v. Standard Bank & Trust,*
    172 F.3d 472 (7th Cir. 1999) .....................................................................................9

*Kauthar SDN BHD v. Sternberg,*
    149 F.3d 659 (7th Cir. 1998) .....................................................................................6

*Lamie v. U.S. Trustee,*
    540 U.S. 526 (2004)....................................................................................................8

*Middleton v. City of Chicago,*
    578 F.3d 655 (7th Cir. 2009) .....................................................................................8

*Nat'l Parks Conservation Assoc., Inc. v. Tenn. Valley Auth.,*
    480 F.3d 410 (6th Cir. 2007) ...................................................................................11

*Nat'l Parks & Conservation Assoc., Inc. v. Tenn. Valley Auth.,*
    502 F.3d 1316 (11th Cir. 2007) ..........................................................................10, 15

*New Jersey v. Reliant Energy Mid-Atl. Power Holdings, LLC,*
    No. 07-CV-5298, 2009 WL 3234438
    (E.D. Pa. Sept. 30, 2009) .........................................................................................12

*New York v. Am. Elec. Power Serv. Corp.,*
    No. 2:04 CV 1098, 2006 WL 1331543
    (S.D. Ohio Mar. 21, 2006) .......................................................................................11

*New York v. Niagra Mohawk Power Corp.,*
    263 F. Supp. 2d 650 (W.D.N.Y. 2003) ...................................................7, 12, 14, 15

# TABLE OF AUTHORITIES
## (continued)

Page

*Pennsylvania v. Allegheny Energy Inc.*,
No. 2:05-CV-885, 2006 WL 1520650
(W.D. Pa. May 30, 2006) ...............................................................11

*Sierra Club v. Franklin County Power of Ill., LLC*,
546 F.3d 918 (7th Cir. 2008) ............................................................8

*Sierra Club v. Otter Tail Corp.*,
608 F. Supp. 2d 1120 (D.S.D. 2009) ............................................11, 15

*Train v. NRDC*,
421 U.S. 60 (1975)..........................................................................3

*United States v. Brotech Corp.*,
No. Civ. A. 00-2428, 2000 WL 1368023
(E.D. Pa. Sept. 19, 2000) ...........................................................11, 15

*United States v. Campbell Soup Co.*,
No. CIV-S-95-1854, 1997 WL 258894
(E.D. Cal. Mar. 11, 1997) ..............................................................11

*United States v. Cinergy Corp.*,
397 F. Supp. 2d 1025 (S.D. Ind. 2005) ..........................................11, 15

*United States v. Ill. Power Co.*,
245 F. Supp. 2d 951 (S.D. Ill. 2003)......................................8, 10, 14, 15

*United States v. La.-Pac. Corp.*,
682 F. Supp. 1122 (D. Colo. 1987)....................................................11

*United States v. Lewis*,
411 F.3d 838 (7th Cir. 2005) ...........................................................15

*United States v. Murphy Oil USA, Inc.*,
143 F. Supp. 2d 1054 (W.D. Wis. 2001) ........................................11, 15

*United States v. S. Ind. Gas & Elec. Co.*,
No. IP 99-1692-C-M/F, 2002 WL 1760752
(S.D. Ind. July 26, 2002)................................................................15

*United States v. Westvaco Corp.*,
144 F. Supp. 2d 439 (D. Md. 2001) ..................................................15

*Wis. Elec. Power Co. v. Reilly*,
893 F.2d 901 (7th Cir. 1990) .............................................................4

# TABLE OF AUTHORITIES
## (continued)

Page

## STATUTES & RULES

28 U.S.C. § 2462 ................................................................................................7, 14

40 C.F.R. § 51.166 ...........................................................................................13, 14

40 C.F.R. § 52.21 ............................................................................................ *passim*

40 C.F.R. § 52.23 ....................................................................................................6

40 C.F.R. § 52.738 ..................................................................................................3

40 C.F.R. Part 50 ....................................................................................................3

42 U.S.C. § 7409 ....................................................................................................3

42 U.S.C. § 7410 ....................................................................................................3

42 U.S.C. § 7411 ....................................................................................................4

42 U.S.C. § 7413 .................................................................................................7, 9

42 U.S.C. § 7414 ....................................................................................................5

42 U.S.C. § 7471 ....................................................................................................3

42 U.S.C. § 7475 ............................................................................................ *passim*

42 U.S.C. § 7477 ....................................................................................................9

42 U.S.C. § 7479 ....................................................................................................4

42 U.S.C. § 7661a .................................................................................................10

42 U.S.C. §§ 7661–7661f ........................................................................................9

46 Fed. Reg. 9580 (Jan. 29, 1981) ...........................................................................3

Fed. R. Civ. P. 12(b)(6) ...........................................................................................6

Ill. Admin. Code tit. 35, §§ 225.291–225.299 ..........................................................5

Ill. Admin. Code tit. 35, ch. 225 App. A....................................................................5

## OTHER AUTHORITIES

H.R. Rep. No. 101-490(I) (1990),
    *reprinted in* 1990 WL 258792 ..........................................................................9

## TABLE OF AUTHORITIES
### (continued)

**Page**

H.R. Rep. No. 95-294 (1977),
*reprinted in* 1977 U.S.C.C.A.N. 1264 ........................................................................................4

S. Rep. No. 101-228 (1989),
*reprinted in* 1990 U.S.C.C.A.N. 3385 ........................................................................................9

## INTRODUCTION

Midwest Generation, LLC ("Midwest Gen") operates electricity-generating facilities, including six coal-fired power plants in Illinois.  Midwest Gen acquired these plants in 1999 from Commonwealth Edison Company ("ComEd").  Two of the plants are located in Chicago. The others are in Joliet, Pekin, Waukegan, and Romeoville.  (Dkt. No. 1 ("Compl.") ¶ 2.)  From these plants, Midwest Gen generates electricity for sale in the wholesale markets.

Soon after acquiring these plants, Midwest Gen acted to reduce emissions.  Midwest Gen then opened discussions concerning even more extensive reductions with the Illinois Environmental Protection Agency ("IL EPA").  Ultimately, Midwest Gen agreed to cut emissions to some of the lowest system-wide rates in the country.  The agreement was embodied in the Combined Pollutant Standard ("CPS"), a rule which is already part of Illinois law.  Once approved by the U.S. Environmental Protection Agency ("US EPA"), it would become federally enforceable under the Clean Air Act, 42 U.S.C. §§ 7401-7671q ("CAA").

Nonetheless, the U.S. Department of Justice ("DOJ") and the State of Illinois (collectively, "Plaintiffs") have sued Midwest Gen, trying to regulate through this enforcement action the same emissions from the same plants. [1]  The Complaint, which requests sweeping injunctive relief and civil penalties, asserts three kinds of claims:  (1) claims asserting violations of the Prevention of Significant Deterioration ("PSD") provisions of the CAA, as a result of alleged "major modifications" at the plants undertaken by ComEd a decade or more ago; (2) claims pertaining to opacity and particulate matter emissions limitations under Illinois law; and (3) claims under Title V of the CAA.

---

[1] Various environmental groups (collectively the "Intervenors") have also sought leave to intervene in this case to assert certain "opacity and particulate matter" claims only.  (Dkt. No. 13.)  This motion does not address their claims.

This motion challenges only the PSD claims, Counts 1, 4, 7, 10, 13, 18, 21, 24, 27, and

36.  These claims relate to ten alleged modifications at the Illinois plants, which ComEd began

before Midwest Gen acquired the plants.  The claims should be dismissed for two reasons:

- *First*, any PSD violation by a prior owner creates no PSD violation by a subsequent owner like Midwest Gen.  The PSD claims here are based on alleged construction activities undertaken at the Illinois plants when ComEd owned and operated the plants.  Because a PSD violation occurs when an owner/operator begins construction without satisfying preconstruction requirements, each of the referenced counts, other than Count 36, fails to state a claim against Midwest Gen.

- *Second*, even if Midwest Gen could be liable for the asserted PSD violations (and it cannot), *all* of these claims are untimely insofar as they seek civil penalties.  The limitations period for these claims is five years.  But the Complaint itself pleads that all of the alleged modifications began well more than five years before this suit was filed in August 2009.  And again, a PSD violation occurs when a party begins construction without satisfying preconstruction requirements, a one-time, preconstruction event.  Accordingly, the PSD civil penalty claims must be dismissed as time-barred.[2]

## BACKGROUND

A.      **The Clean Air Act Framework**

1.      **The Clean Air Act Creates A Federal / State Partnership To Attain And Maintain Clean Air.**

The Illinois plants that Midwest Gen acquired from ComEd fall within the regulatory

jurisdiction of the IL EPA which, under the CAA, has primary authority for attaining and

---

[2] Count 18 alleges that ComEd modified Powerton Unit 5 (Compl. ¶ 165), but then goes on to fault Midwest Gen for failing to obtain a PSD permit "prior to commencing construction and operation of the major modifications at Powerton Unit 5." (*Id.* ¶ 167).  This appears to be a typographical or other clerical error, as it is inconsistent with the Complaint's previous allegation that ComEd commenced the construction in 1995, well before Midwest Gen acquired the facility in late 1999.  (*See id.* ¶ 2.)  So in this motion, Midwest Gen challenges Count 18 both because Midwest Gen is merely a subsequent owner and on statute of limitations grounds.

Count 36 incorrectly alleges that Midwest Gen modified Will County Unit 4 starting in February 2000.  (*Id.* ¶ 267.)  These alleged modifications actually began much earlier in 1999, before Midwest Gen acquired the plant—an evidentiary showing that could easily be made, from documents already in Plaintiffs' possession, if Plaintiffs continue to press the point.  But to avoid a dispute over any factual issues at this juncture (even those that are readily resolvable), in this motion Midwest Gen challenges Count 36 only as to statute of limitations in this motion.

maintaining air quality goals in the State of Illinois.  The US EPA has promulgated National

Ambient Air Quality Standards (NAAQS) under the CAA for six pollutants:  ground-level

ozone, lead, sulfur dioxide, carbon monoxide, nitrogen dioxide, and particulate matter.  42

U.S.C. § 7409; *see generally* 40 C.F.R. Part 50.  Under the CAA, the US EPA determines

whether areas of a state comply with the NAAQS for those pollutants.

The CAA then directs the states to adopt State Implementation Plans ("SIPs") to achieve

and maintain NAAQS.  *Id.* § 7410(a).  These SIPs, which must be adopted only after a public

hearing, are submitted to the US EPA for approval or disapproval.  *Id.* § 7410(a), (k).  The CAA

vests "primary" SIP enforcement authority in state or local governments, and also gives the

US EPA a secondary role.  *Bethlehem Steel Corp. v. EPA*, 638 F.2d 994, 996-97 (7th Cir. 1980);

*Train v. NRDC*, 421 U.S. 60, 79 (1975) (US EPA "is relegated by the [CAA] to a secondary role

in the process of determining and enforcing the specific, source-by-source emission limitations

which are necessary if the national standards it has set are to be met.").

## 2.    The PSD Program

One initiative that the CAA directs states to implement to attain and maintain NAAQS is

the New Source Review ("NSR") program.  This program includes a component called PSD,

enacted in 1977.  The PSD program addresses the impact on ambient air quality from new

construction of, and modification to, large pollutant-emitting facilities in areas that have attained

NAAQS.  *Id.* §§ 7470-7492.  The CAA requires states to include PSD programs in their SIPs,

which are subject to US EPA approval.  *Id.* § 7471.  Because Illinois did not promulgate its own

state PSD regulations, the federal PSD regulations have been incorporated into Illinois's SIP

through federal rulemaking.  *See* 40 C.F.R. §§ 52.21, 52.738.  The US EPA, however, has

delegated to Illinois the authority to implement the PSD program in Illinois, including the review

of PSD permit applications and issuance of PSD permits.  46 Fed. Reg. 9580 (Jan. 29, 1981).

"Congress chose not to subject existing plants" to the PSD requirements, as it "recognized that '[b]uilding control technology into new plants at time of construction will plainly be less costly then [*sic*] requiring retrofit when pollution control ceilings are reached.'" *Wis. Elec. Power Co. v. Reilly*, 893 F.2d 901, 909 (7th Cir. 1990) (quoting H.R. Rep. No. 95-294, *as reprinted in* 1977 U.S.C.C.A.N. 1264).   Accordingly, the permit program does not apply to existing sources like the Illinois plants unless and until they undergo such a major "modification" that they should be considered to be like "new" sources.  The PSD regulations in force in Illinois thus state that "any owner or operator of a source or modification subject to this section who commences construction . . . without applying for and receiving [a PSD preconstruction permit] shall be subject to appropriate enforcement action."  40 C.F.R. § 52.21(r)(1)[3] (implementing 42 U.S.C. § 7475(a) ("[n]o major emitting facility . . . may be constructed" or modified without satisfying conditions)); *see also* 42 U.S.C. § 7479(2)(C) ("construction" includes "modification" as defined at 42 U.S.C. § 7411(a)).

Under these rules, an owner "proposing" to "construct" or "modify" must (1) obtain a preconstruction permit containing emissions limits based on the "best available control technology" ("BACT") for each regulated pollutant; and (2) conduct such preconstruction "monitoring as may be necessary to determine the effect which emissions" attributable to the modification would have on ambient air quality.  42 U.S.C. § 7475(a); 40 C.F.R. § 52.21(j)-(r).[4]

### B.   Midwest Gen's Efforts To Reduce Emissions From The Illinois Plants

After acquiring the six Illinois plants in 1999, Midwest Gen installed technology to

---

[3] The version of 40 C.F.R. § 52.21 in effect in at the times relevant to the modifications alleged in the PSD counts is attached as Exhibit A.

[4] BACT is determined on a case-by-case basis following submission of a permit application proposing BACT and issuance of a permit establishing BACT limitations.  Until such a determination is made, no BACT limitations exist for a plant.  40 C.F.R. § 52.21(b)(1) & (j).

reduce dramatically certain emissions.  Midwest Gen subsequently opened discussions with the

IL EPA concerning additional steps it could take to meet new CAA standards, further reducing

its emissions.[5]  In December 2006, Midwest Gen and the IL EPA concluded an agreement under

which Midwest Gen agreed to shrink significantly emissions of pollutants at the Illinois plants,

including mercury, NOx, and $SO_2$, on a system-wide basis, for years to come.  This agreement,

now embodied in the CPS and part of Illinois law, was submitted to the US EPA for approval

and implementation into the Illinois SIP.  *See* ILL. ADMIN. CODE tit. 35, §§ 225.291-225.299; *id.*

ch. 225 App. A.  That approval would make it federally enforceable under the CAA.

### C.    This Lawsuit And The PSD Claims

The US EPA has not approved the CPS.  Instead, just as Midwest Gen's negotiations

with the IL EPA were concluded, the US EPA opened up a new front seeking to impose its own

view of CAA compliance.  In August 2007, the US EPA issued notices of violation ("NOV")

under the CAA to both ComEd and Midwest Gen.  The NOVs alleged that certain projects the

US EPA had been investigating—which were performed by ComEd at the Illinois plants while

ComEd owned them, and before Midwest Gen acquired them—violated PSD.  (Compl. ¶ 7.)

After the US EPA had years of one-way discovery of Midwest Gen,[6] Plaintiffs filed this

suit on August 26, 2009, approximately *nine years* after the last alleged modification at the

Illinois plants occurred.  Plaintiffs assert that each of these alleged modifications triggered a duty

to satisfy PSD preconstruction requirements, and that the failure to satisfy these conditions has

led to actionable pollution.  (*Id.* at ¶¶ 2, 65, 83, 101, 119, 137, 165, 183, 201, 219, 267.)  While

the Complaint itself thus pleads that ComEd (not Midwest Gen) made nine of the ten alleged

---

[5] The IL EPA had similar discussions with other Illinois power generators, as the agency was considering how to implement, through its SIP powers, more stringent CAA standards.

[6] The US EPA served information requests on Midwest Gen pursuant to § 114 of the CAA, 42 U.S.C. § 7414, as far back as 2003.

modifications to the Illinois plants at issue here, without obtaining required PSD preconstruction permits, it nonetheless claims that Midwest Gen is liable for those alleged violations.  (*See id.*)  In its PSD counts, the Complaint seeks to impose an operating regime different from the one the IL EPA thought satisfactory when approving the CPS.  (*Id.* ¶ 55 & pp. 72-74 (prayer).)  It also seeks civil penalties of up to $37,500 per day, totaling perhaps hundreds of millions dollars.  (*Id.*)

## APPLICABLE STANDARD

Rule 12(b)(6) permits dismissal of a claim when the complaint "fail[s] to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations omitted).  Rule 12(b)(6) dismissal is also appropriate for a statute of limitations defense where the complaint shows that a claim is time barred.  *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir. 1998).

## ARGUMENT

While each of the claims in the Complaint is without merit, this motion challenges only the PSD claims.  These claims should be dismissed under Rule 12(b)(6) for two reasons.  *First*, nine of the ten PSD claims against Midwest Gen do not state a claim for relief.  (Compl. ¶¶ 65, 83, 101, 119, 137, 165, 183, 201, 219.)[7]  Unlike Midwest Gen's agreement with the IL EPA, which could create federally enforceable operating requirements for the Illinois plants if incorporated into the Illinois SIP, 40 C.F.R. § 52.23, the PSD preconstruction permit regulations prohibit only the *construction* or *modification* of a plant by its owner or operator.  40 C.F.R. § 52.21.  Because PSD preconstruction obligations can be violated only at the time of

---

[7] This is also true for the tenth modification claim; although Plaintiffs have incorrectly alleged that "modification" began in 2000, the relevant project actually commenced in 1999, before Midwest Gen acquired the plants.  (*See* Compl. ¶ 267); *supra* n.2.  If Plaintiffs persist in their mistaken timing allegations on this count, the Court should allow Midwest Gen to bring an early summary judgment motion directed to these allegations.

construction, this distinction—between construction or modification by an owner or operator on one hand, and operation by a subsequent owner or operator on the other—is "critical." *See New York v. Niagara Mohawk Power Corp.*, 263 F. Supp. 2d 650, 656 (W.D.N.Y. 2003) (dismissing PSD claims against power plant operators who did not modify or construct). And because the Complaint concedes that ComEd (not Midwest Gen) performed these nine alleged modifications, the PSD claims fail to state a claim for relief under 42 U.S.C. § 7413(b).

*Second*, even if the PSD claims could be properly laid against Midwest Gen (and they cannot), all are untimely to the extent they seek civil penalties. Such penalty claims are subject to a five-year statute of limitations. *See* 28 U.S.C. § 2462. Because the Complaint itself pleads that all of the alleged modifications took place well more than five years before this suit was filed in August 2009—and because, again, a PSD violation occurs when a party begins construction without satisfying preconstruction requirements, which is a one-time event and not a continuing violation—the PSD civil penalty claims must also be dismissed as time-barred.

## I.  PLAINTIFFS' PSD COUNTS FAIL TO STATE A CLAIM.

The CAA, as implemented through the PSD regulations in force in Illinois (40 C.F.R. § 52.21), gives rise to liability only when an owner or operator violates a specific prohibition of the regulations. Nothing in the CAA or those regulations imposes restrictions on Midwest Gen related to ComEd's alleged failure to obtain preconstruction permits for modifications that ComEd undertook. Accordingly, the nine PSD claims at issue in this motion must be dismissed.

### A.  The CAA's PSD Provisions Establish Preconstruction Permit Obligations; They Do Not Impose Liability For Subsequent Operations Without A Permit.

The Complaint recognizes that Midwest Gen did not perform nine of the ten alleged PSD modifications. But it nonetheless seeks to impose liability on Midwest Gen for these alleged modifications based solely on the allegation that Midwest Gen "owned and operated" the

relevant plants after acquiring them from ComEd.  (Compl. ¶¶ 66, 84, 102, 120, 138, 166, 184, 202, 220.)  These counts reflect a fundamental misapprehension of the PSD provisions and implementing rules.  Those provisions establish (in the words of the Seventh Circuit) that:  "the last possible moment at which a [PSD preconstruction] violation occurs is 'when the actual construction is commenced, and not at some later point in time.'"  *Sierra Club v. Franklin County Power of Ill., LLC*, 546 F.3d 918, 928 (7th Cir. 2008) (quoting *United States v. Ill. Power Co.*, 245 F. Supp. 2d 951, 957 (S.D. Ill. 2003)), *cert denied*, 129 S. Ct. 2866 (2009).

The Supreme Court and the Seventh Circuit have repeatedly admonished that when a "statute's language is plain," courts must "enforce it according to its terms."  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *see also Middleton v. City of Chicago*, 578 F.3d 655, 658 (7th Cir. 2009).  Nothing more is required here.  Title 42, Section 7475 (which sets forth the PSD requirements that regulations make enforceable) is entitled "Preconstruction Requirements."  It sets out PSD obligations in terms that unmistakably reflect requirements which must be satisfied before commencing construction.  It provides that "[n]o major emitting facility . . . *may be constructed* in any area to which this part applies" unless (1) "a permit has been issued for such proposed facility,"  (2) "the proposed permit has been subject to a review," and (3) "the owner or operator of such facility demonstrates" that emissions will not contribute to air pollution standards defined elsewhere and compliance with other regulatory requirements.  42 U.S.C. § 7475(a)(1)-(3).  The remaining subparagraphs also indicate that the "proposed facility" must apply the "best available control technology," and require the constructing owner/operator to "agree to conduct" monitoring before a permit will be issued.  *Id.* § 7475(a)(4)-(7).  These provisions thus prohibit an owner/operator from performing construction in derogation of these rules.  They do not forbid operating without a required preconstruction permit.

The US EPA's promulgated regulations in effect at the time ComEd made the alleged modifications (*see* Ex. A), which are "subject to the same well-known maxims of construction as legislative statutes," confirm this reading of the statute. *First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 476 (7th Cir. 1999). The regulations merely prohibit an owner from "begin[ning] actual *construction* without a permit." 40 C.F.R. § 52.21(i)(1) (emphasis added).[8] They do not prohibit a subsequent owner from operating a plant without such a permit.

The CAA's statutory enforcement provisions underscore the point. By statute, to enforce the PSD preconstruction requirements, US EPA may bring an action against an owner or operator that "has violated" a PSD requirement in a SIP, 42 U.S.C. § 7413(b), or may "take such measures . . . as necessary *to prevent* the construction or modification" of a source subject to PSD. 42 U.S.C. § 7477 (emphasis added). By contrast, these enforcement provisions do not prohibit, or provide an enforcement mechanism for, subsequent *operation* of a plant that should have obtained a preconstruction permit.[9] Separate CAA provisions deal with permits governing operations. *Compare* 42 U.S.C. §§ 7475(a)(1) (addressing construction permits) *with* §§ 7661-7661f (addressing operating permits). These operating permit sections (not at issue here) make it "unlawful" to "*operate* . . . a major source . . . except in compliance with a permit issued by a permitting authority under this subchapter," and expressly distinguish between operating and

---

[8] There is no prohibition on later owning or operating a facility without a required PSD preconstruction permit establishing a BACT emission limitation for a facility. The regulations prohibit only construction without a permit, or operating in a manner inconsistent with an issued PSD permit or the application for that permit. Where no subject PSD permit has been sought or issued for a facility, no BACT limitation applies to that facility. 40 C.F.R. § 52.21(b)(12), (j), & (r).

[9] This is confirmed by the relevant legislative history, which also demonstrates an intent to limit CAA § 167 (42 U.S.C. § 7477) to construction and modification activity. In 1990, Congress rejected an amendment to Section 167 that would have added "the terms 'operation' and 'modification' to the phrase 'construction of a major emitting facility.'" S. Rep. 101-228, at 376. Instead, Congress adopted an amendment that added the term "modification," but did not add the term "operation." H. Rep. 101-490(I), *reprinted in* 1990 WL 258792, at *178; *see also* 42 U.S.C. § 7477. Congress's conscious decision to exclude the word "operation" from § 167 demonstrates an intent to limit § 167 to construction activities.

construction permits.  *See* 42 U.S.C. § 7661a(a) (emphasis added); *id.* ("Nothing in [the CAA's operating-permit provisions] shall be construed to alter the applicable requirements of this chapter that a permit be obtained before construction or modification.").  The lack of an enforcement mechanism in the PSD provisions for operating a facility without a preconstruction permit—contrasted with the specific inclusion of an enforcement provision for operating violations in § 7661a—underscores that PSD preconstruction permit violations occur only at the time of construction.  Where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely . . . ."  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002).

Accordingly, the PSD provisions at issue here apply only to owners or operators undertaking the construction or modification of plants—which, for nine of the ten PSD counts, it is undisputed Midwest Gen did not do.  For instance, in *United States v. Illinois Power Co.*, 245 F. Supp. 2d at 957-958, the court concluded that the *very same* PSD regulations at issue here create a discrete violation at the time of construction, and do not create liability for operation after construction.  The court first looked to the statutory structure, noting "that the [CAA] provides separate requirements for preconstruction permits and operating permits."  *Id.* at 957.  The court also found the CAA's language instructive, as "*all* of the requirements enumerated in § 7475[] must be undertaken *prior* to the construction or modification of the facility."  *Id.*  As such, it found that the PSD statute "cannot reasonably be construed to mean that building or altering a machine without a permit is a violation that continues as long as the machine exists or is operated."  *Id.*  Similarly, the Eleventh Circuit read the PSD preconstruction provisions as creating a discrete violation, not a continuing violation of the CAA.  *Nat'l Parks & Conservation Assoc., Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1322-23 (11th Cir. 2007).  That court, too,

based its reading on the text of the CAA as well as the CAA's distinction between construction

and operation.  *Id.*  This approach is supported by a "long line of district court cases" which hold

that "violations of the preconstruction permitting requirements occur at the time of construction."

*CleanCOALition v. TXU Power*, 536 F.3d 469, 478 (5th Cir.) (collecting cases), *cert denied*, 129

S. Ct. 648 (2008).[10]  Thus, the PSD preconstruction permit requirements are violated, or not,

only when construction or modification occurs.

### B.    Midwest Gen Cannot Be Liable For Preconstruction Violations Which Occurred At Facilities That It Did Not Own Or Operate.

#### 1.    Midwest Gen Is Not Liable Under The PSD Provisions For Modifications Allegedly Made By ComEd.

While the PSD claims allege violations of 42 U.S.C. § 7475(a) and 40 C.F.R. § 52.21, the

Complaint concedes that, for nine of them, it was "*ComEd* [that] commenced construction of one

or more major modifications, as defined in the Act and the Illinois SIP, . . . without applying for

or receiving a PSD permit."  (*See* Compl. ¶¶ 65, 83, 101, 119, 137, 165, 183, 201, 219 (emphasis

added); *see also id.* ¶ 267 (incorrectly alleging that Midwest Gen made the alleged modification).

This admission is fatal.  Any violation of the PSD preconstruction requirements must involve

---

[10] *See, e.g.*, *Sierra Club v. Otter Tail Corp.*, 608 F. Supp. 2d 1120, 1127 (D.S.D. 2009); *Pennsylvania v. Allegheny Energy Inc.*, No. 2:05-CV-885, 2006 WL 1520650 (W.D. Pa. May 30, 2006) (adopting magistrate report and recommendation, *Pennsylvania v. Allegheny Energy Inc.*, No. 2:05-CV-885, 2006 WL 1509061, at *4 (W.D. Pa. Apr. 19, 2006)); *New York v. Am. Elec. Power Serv. Corp.*, No. 2:04 CV 1098, 2006 WL 1331543, at *7 (S.D. Ohio Mar. 21, 2006); *United States v. Cinergy Corp.*, 397 F. Supp. 2d 1025, 1030 (S.D. Ind. 2005); *United States v. Murphy Oil USA, Inc.*, 143 F. Supp. 2d 1054, 1083-84 (W.D. Wis. 2001); *United States v. Brotech Corp.*, No. Civ.A. 00-2428, 2000 WL 1368023, at *3 (E.D. Pa. Sept. 19, 2000); *cf. United States v. Campbell Soup Co.*, No. CIV-S-95-1854 DFL, 1997 WL 258894, at *1-2 (E.D. Cal. Mar. 11, 1997) (NNSR violations); *United States v. La.-Pac. Corp.*, 682 F. Supp. 1122, 1130 (D. Colo. 1987).  By contrast, the only court of appeals to hold that a PSD preconstruction requirement imposed continuing obligations did so based on the language of a unique *state* PSD provision that, by its own text, imposed a continuing obligation to obtain appropriate construction permits, even after starting without one.  *Nat'l Parks Conservation Assoc., Inc. v. Tenn. Val. Auth.*, 480 F.3d 410, 413, 419 (6th Cir. 2007) (noting unique Tennessee requirements).  But in that case, a state PSD requirement controlled, with language that (unlike the federal standard incorporated into the Illinois SIP for PSD here) arguably imposed a continuing obligation on an owner or operator who undertakes unlawful construction.

constructing without a permit or operation in violation of an issued permit.  No rule in the Illinois

SIP provides that, where one owner/operator unlawfully constructs or modifies a facility, a

subsequent owner of that factility violates the PSD rules by operating it later.

*New York v. Niagara Mohawk Power Corp.* is directly on point.  There, the State of New

York sued the original and subsequent owners of two power plants, alleging that both violated

PSD preconstruction conditions.  263 F. Supp. 2d at 654-55.  The court held that, "[b]y its plain

terms, 42 U.S.C. § 7475(a) does not impose liability on any person other than the one who fails

to comply with its requirements."  *Id.* at 668.  "Preconstruction obligations," the court reasoned,

"are imposed only upon the person who actually seeks to construct or modify a facility within the

meaning of the [CAA]."  *Id.* at 668-69.  The court found it "simply counterintuitive to construe

the [CAA] in such a way as to impose liability for failure to follow the [CAA's] preconstruction

requirements on a person for whom compliance would have been impossible."  *Id.* at 669.  Thus,

because the subsequent owner "had neither the obligation nor the ability to comply with the

mandates of 42 U.S.C. § 7475(a)," the court dismissed the PSD claims against it.  *Id.*[11]  The

result here should be no different.

### 2. Midwest Gen Is Not Responsible For Even Allegedly "Continuing Violations" Initiated By Non-Party ComEd.

Plaintiffs will likely assert (notwithstanding the plain statutory and regulatory text and the

case law against them) that failure to comply with PSD preconstruction requirements is a

"continuing violation."  Not so.  But even if that were right, it would not save the PSD claims

against *Midwest Gen* regarding facilities that *ComEd* allegedly modified.  At the very least, the

---

[11] Only one district court has suggested that the PSD preconstruction provisions impose liability for subsequent operations by a successor owner who did not make any modifications itself.  *See New Jersey v. Reliant Energy Mid-Atl. Power Holdings, LLC*, No. 07-CV-5298, 2009 WL 3234438, at *15-16 (E.D. Pa. Sept. 30, 2009).  Though the decision's reasoning is somewhat opaque, the court appears to have incorrectly read the PSD provisions as prohibiting *operations* without a preconstruction permit, despite the fact that their plain text only prohibits construction without a permit.

law makes clear that even if an operator of a plant could be liable for "continuing violations" arising out of the failure to obtain a pre-modification permit, it is only the "operator" who made the modification—and therefore violated a regulatory prohibition—that could be liable.

The Illinois PSD rules do not provide for liability for a *subsequent* owner/operator even if they could be fairly said to contemplate a "continuing" violation by the owner/operator that violated a prohibition on construction. The rules impose only three obligations:

> (1) "any owner or operator of a source or modification subject to this section who commences construction . . . without applying for and receiving approval hereunder, shall be subject to appropriate enforcement action,"
>
> (2) the "owner or operator of a proposed source or modification" must apply for a permit and submit "all information necessary to perform any analysis or make any determination required under this section," and
>
> (3) the "owner or operator" of a facility that has been issued a permit must "construct[ ] or operate[ ] a source or modification . . . in accordance with the application submitted pursuant to this section [and] . . . with the terms of any approval to construct. . . ."

40 C.F.R. §§ 52.21(r)(1), 52.21(n). The rules govern only "owners or operators" who "commence[d]" a "proposed" modification. They apply only to the "owner or operator" who modified—not one who later acquired the plant. So, even if ComEd violated the rules by modifying without a PSD permit, and that violation continued after completion of the alleged modification (again, the PSD rules do create no such continuing violation), that "continuing violation" ceased when ComEd was no longer the owner/operator. Midwest Gen's operation of the facilities violated no prohibition of the PSD rules.

None of this is to say that there is no way to address any air quality deterioration arising from a plant modification by a prior owner. Federal regulations provide for the development of revisions to the Illinois PSD program when necessary to prevent significant deterioration of air quality. *See* 40 C.F.R. § 51.166(a)(3). These regulations require the State to propose a revision

to the Illinois SIP if the current plan is "substantially inadequate to prevent significant deterioration," which revision must then be approved by the US EPA.  And if the US EPA disapproves, then the US EPA is itself required to revise the Illinois SIP to impose requirements necessary to "prevent significant deterioration" of air quality.  *See id.*  Thus, to the extent ComEd's modifications to the Illinois plants created a need to reduce emissions even more than Midwest Gen has already reduced them, this administrative process is available to address the ongoing operations of the Illinois plants.[12]  The answer is not, as Plaintiffs are trying to do, to try to rewrite the PSD preconstruction permit rules to contain operating prohibitions never adopted by the US EPA so as to penalize Midwest Gen for a prior owner's alleged unlawful construction.

## II.     PLAINTIFFS' REQUEST FOR CIVIL PENALTIES ARISING OUT OF THE ALLEGED PSD VIOLATIONS IS TIME-BARRED.

All of Plaintiffs' PSD civil penalty claims, for each of the ten PSD counts, should be dismissed for the independent reason that they are time-barred.  The CAA "specifies no period during which claims of violation may be brought.  Thus, the general federal statute of limitations, 28 U.S.C. § 2462, is applicable to the [CAA]."  *Ill. Power Co.*, 245 F. Supp. 2d at 954.  This general statute of limitations provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued."  28 U.S.C. § 2462.  As set out above, any PSD violation occurred on the date the alleged modification began.  Again, *Niagara Mohawk* is instructive.  The court there held that "a violation of [the PSD provisions] is singular in nature, and does not constitute an ongoing violation" because "[o]nce the construction or modification is complete, the window in which to apply for and obtain a preconstruction

_____

[12] In this case, even if ComEd unlawfully modified the Illinois plants at issue—and even if such alleged modifications otherwise cause significant deterioration of air quality (and neither is true)—the significant emission reductions required by the CPS agreement would mitigate any such impact.

permit"—which is what the PSD provisions require—"is gone."  263 F. Supp. 2d at 661.  Indeed, the court recognized that if liability were premised on a "continuing violation" theory—that is, if "every day that a facility operates without a preconstruction permit, the limitations period begins anew"—it would result in "a *de facto* elimination of any statute of limitation, for the limitation period would never begin to accrue as long as the facility remained in operation."  *Id.*  That result cannot be squared with the "plain language of the [CAA] and its implementing regulations," which make clear that PSD violations can only occur before construction begin.  *Id.*[13]

Here, the Complaint expressly claims that all of the alleged modifications commenced before February 2000.  Accordingly, each of the PSD civil penalty claims is at least nine years old—well outside the statute of limitations.  Where, as here, the complaint itself "set[s] forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations," dismissal is appropriate.  *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).  All of the claims for civil penalties for alleged PSD violations should therefore be dismissed as untimely.

## <u>CONCLUSION</u>

Midwest Gen's Partial Motion to Dismiss should be granted.  Counts 1, 4, 7, 10, 13, 18, 21, 24, 27 should be dismissed in their entirety.  Those counts, and Count 36, should also be dismissed to the extent they seek civil penalties.

---

[13] *See also Nat'l Parks & Conservation Assoc., Inc.*, 502 F.3d at 1323-26 (holding that the plaintiff's PSD claims were barred by the five-year statute of limitations); *Otter Tail Corp.*, 608 F. Supp. 2d at 1127 (same); *Cinergy Corp.*, 397 F. Supp. 2d at 1030 (same); *Ill. Power Co.*, 245 F. Supp. 2d at 957-58 (same); *United States v. S. Ind. Gas & Elec. Co.*, No. IP 99-1692-C-M/F, 2002 WL 1760752, at *8 (S.D. Ind. July 26, 2002) (same); *United States v. Westvaco Corp.*, 144 F. Supp. 2d 439, 444-45 (D. Md. 2001) (same); *Brotech*, 2000 WL 1368023, at *3-4 (same); *Murphy Oil*, 143 F. Supp. 2d at 1083-84 ("I am persuaded that the statute of limitations for a violation of the preconstruction permit requirements under 42 U.S.C. § 7475 begins to run at the time of construction and does not continue through the operational life of the modified source.").

Dated:  December 16, 2009                       Respectfully submitted,

                                        /s/ Brian J. Murray
                                        Daniel E. Reidy (IL Bar No. 2306948)
                      dereidy@jonesday.com
          Brian J. Murray (IL Bar No. 6272767)
              bjmurray@jonesday.com
          JONES DAY
          77 West Wacker Drive, Suite 3500
          Chicago, Illinois  60601-1692
          Telephone:  (312) 782-3939
          Facsimile:   (312) 782-8585

          James M. Jones (*pro hac vice*)
            jmjones@jonesday.com
          JONES DAY
          500 Grant Street, Suite 4500
          Pittsburgh, Pennsylvania  15219-2514
          Telephone:  (412) 391-3939
          Facsimile:  (412) 394-7959

          Kevin P. Holewinksi (*pro hac vice*)
            kpholewinski@jonesday.com
          JONES DAY
          51 Louisiana Avenue, N.W.
          Washington, D.C.  20001-2113
          Telephone:  (202) 879-3939
          Facsimile:  (202) 626-1700

          *Counsel for Defendant Midwest Generation, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2009, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following at their e-mail address on file with the Court:

Keith Harley
Chicago Legal Clinic
205 W. Monroe, Floor 4
Chicago, IL 60606
(312) 726-2938

*Attorneys for Citizens Against Ruining the Environment and The Sierra Club*

Shannon Fisk
Natural Resources Defense Council
2 N. Riverside Plaza, Suite 2250
Chicago, IL 60606
(312) 651-7904

*Attorneys for the Natural Resources Defense Council, Inc.*

Faith E. Bugel
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1300
Chicago, IL 60601-2110
(312) 673-6500

*Attorneys for The Environmental Law and Policy Center and Respiratory Health Association of Metropolitan Chicago*

John C. Cruden
Jennifer A. Lukas-Jackson
Environmental Enforcement Section
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-2332

Patrick J. Fitzgerald
Jonathan Haile
Office of the United States Attorney
Northern District of Illinois
219 S. Dearborn St., Fifth Floor
Chicago, IL  60604

*Attorneys for the United States*

Matthew J. Dunn
Chief, Environmental Enforcement/
Asbestos Litigation Division
Assistant Attorney General
69 W. Washington St., 18th Floor
Chicago, IL 60602
(312) 814-2521

*Attorneys for the State of Illinois*

Dated:  December 16, 2009

/s/ Brian J. Murray
Brian J. Murray