## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | Judge John W. Darrah Magistrate Judge Maria Valdez |
| CITIZENS AGAINST RUINING THE ENVIRONMENT, THE ENVIRONMENTAL LAW AND POLICY CENTER, NATURAL RESOURCES DEFENSE COUNCIL, RESPIRATORY HEALTH ASSOCIATION OF METROPOLITAN CHICAGO, and SIERRA CLUB, | ) ) ) ) ) ) ) ) | **Civil Action 1:09-cv-05277** |
| Intervenor-Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) | |
| MIDWEST GENERATION, LLC, | ) ) | |
| Defendants. | ) ) | |

## INTRODUCTION

1.     Intervenor-Plaintiffs, a coalition of public health, community, and environmental protection organizations (collectively, the "Citizen Plaintiffs"), bring this complaint against Midwest Generation, LLC, for emitting particulate matter ("PM") pollution from its coal-fired power plants in violation of the Clean Air Act ("CAA" or "the Act").  Midwest Generation's illegal PM pollution has harmed and – without judicial intervention – will continue to harm the public health, environment, and economy of the communities affected by this pollution.

**JURISDICTION, VENUE, AND NOTICE**

2.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 7413(b) and

7477, and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      This Court has jurisdiction over the Citizen Plaintiffs' claims pursuant to 42

U.S.C. § 7604(b)(1)(B).

4.      Venue is proper in this judicial district because Midwest Generation resides in this

district, has its principal place of business in this district, the violations are occurring in this

district, and five of the six plants at issue are located in this district.  *See* 28 U.S.C. §§ 1391(b),

1391(c), 1395(a); 42 U.S.C. § 7413(b).

5.      The Citizen Plaintiffs' complaint is brought pursuant to 42 U.S.C. §

7604(b)(1)(B), which provides a right of intervention when, as here, the United States

Environmental Protection Agency ("U.S. EPA") or a State has commenced a CAA enforcement

action.

6.      On July 28, 2009, the Citizen Plaintiffs provided written notice to Midwest

Generation, U.S. EPA, the State of Illinois ("Illinois"), and other necessary parties that Midwest

Generation was violating requirements of the CAA and Illinois's State Implementation Plan

("SIP").  *See* Ex. 1 (copy of Citizen Plaintiffs' 60-day Notice of Intent to Sue letter).  The Citizen

Plaintiffs alleged, among other things, violations of the Illinois SIP's visible air pollutant

("opacity") standards.

7.      On August 27, 2009, U.S. EPA and Illinois (the "Government Plaintiffs") brought

a civil action against Midwest Generation alleging numerous violations of the CAA and the

Illinois SIP.  *See generally* Complaint, *United States v. Midwest Generation, LLC*, Case No. 09-

5277, Dkt. No. 1 (hereafter "Govt. Complaint").  The Government Plaintiffs alleged, among other

things, that Midwest Generation had violated, and continues to violate, the opacity standards of the Illinois SIP.

8.    Because the Government Plaintiffs brought an enforcement action against Midwest Generation, the CAA precludes the Citizen Plaintiffs from filing an independent suit against Midwest Generation regarding these opacity violations.  42 U.S.C. § 7604(b)(1)(B).  The Citizen Plaintiffs are, however, entitled to intervene in this action.  *Id.*

## PARTIES

9.    Defendant Midwest Generation, LLC, is a Delaware corporation registered to do business in Illinois.  Its principal place of business is One Financial Plaza, Suite 3500, 440 South LaSalle Street, Chicago, Illinois 60605.  Midwest Generation is a corporation and is therefore a "person" within the meaning of 42 U.S.C. § 7602(e).

10.    At all times relevant to this complaint, Midwest Generation has been the owner and operator of six coal-fired power plants in Illinois:

> a.    The **Crawford Station**, located at 3501 South Pulaski Road, Chicago, Cook County, Illinois.  This facility includes the following coal-fired boilers: Units 7 and 8.

> b.    The **Fisk Station**, located at 1111 West Cermak Road, Chicago, Cook County, Illinois.  This facility includes the following coal-fired boiler: Unit 19.

    c.   The **Joliet Station**, located at 1800 Channahon Road, Joliet, Will County, Illinois. This facility includes the following coal-fired boilers: Units 6, 7, and 8.

    d.   The **Powerton Station**, located at 13082 East Manito Road, Pekin, Tazewell County, Illinois. This facility includes the following coal-fired boilers: Units 5 and 6.

    e.   The **Waukegan Station**, located at 401 East Greenwood Avenue, Waukegan, Lake County, Illinois. This facility includes the following coal-fired boilers: Units 7 and 8.

    f.   The **Will County Station**, located at 529 East 135th, Romeoville, Will County, Illinois. This facility includes the following coal-fired boilers: Units 1, 2, 3, and 4.

    g.   The stations and units described in subparagraphs (a)-(f) above are hereinafter referred to collectively as Midwest Generation's "coal-fired units."

11.    The Government Plaintiffs in this action include the United States of America, by authority of the Attorney General of the United States, acting at the request of the U.S. EPA Administrator; and the State of Illinois, by and through Lisa Madigan, Attorney General for the State of Illinois.

12.    The Citizen Plaintiffs in this action are Citizens Against Ruining the Environment ("CARE"), the Environmental Law and Policy Center ("ELPC"), Natural Resources Defense Council ("NRDC"), Respiratory Health Association of Metropolitan Chicago ("RHAMC"), and Sierra Club.

4

13.     CARE is located at 230 E. 6th Street, Lockport, IL 60441.  CARE is an incorporated, non-profit community organization with members in the Lockport area, including Will County.  CARE was organized for the purpose of preserving and protecting the state's land, air, water, and other natural resources, and protecting the organization's members and other residents of the state from threats of pollution.

14.     ELPC is an Illinois not-for-profit corporation with its principal office located at 35 East Wacker Drive, Suite 1300, Chicago, IL 60601.  ELPC's purposes include protecting the environment and natural resources in the Midwest and enhancing the health and quality of life of persons living in Illinois, Indiana, Iowa, Michigan, Minnesota, North Dakota, Ohio, South Dakota, and Wisconsin.

15.     The Natural Resources Defense Council ("NRDC") is a national, non-profit, environmental organization with more than 420,000 members nationwide, including 19,454 members in Illinois, 7,454 members in Cook County, 1,212 members in Lake County, 561 members in Will County, and 107 members in Tazewell County.  NRDC's headquarters are located at 40 West 20th Street, New York City, New York 10011, and its Midwest Office is located at 2 North Riverside Plaza, Suite 2250, Chicago, Illinois 60606.  NRDC is dedicated to the protection of the environment and public health, and as part of its mission, has actively supported effective enforcement of the CAA and other environmental statutes on behalf of its members for over 30 years.

16.     RHAMC is an incorporated, not-for-profit organization located at 1440 W. Washington Blvd., Chicago, IL 60607.  RHAMC fights lung disease and promotes healthy lungs by supporting research, advocacy, and educational efforts on behalf of individuals and families

affected by lung cancer, asthma, COPD (chronic bronchitis and emphysema), and other lung diseases.

17.     Sierra Club is the nation's oldest and largest grassroots environmental organization.  Sierra Club is an incorporated, not-for-profit organization.  Its headquarters is located at 85 Second Street, 2nd Floor, San Francisco, CA, 94105 and its Illinois Chapter office is located at 70 E. Lake St., Suite 1500, Chicago, IL, 60601.  Sierra Club's mission is to preserve, protect, and enhance the natural environment.  Sierra Club has 641,000 members, including approximately 23,000 members in Illinois, with 10,758 members in Cook County, 1,827 in Lake County, 131 in Tazewell County, and 568 in Will County.  Sierra Club's Beyond Coal Campaign is working to retire old coal plants that are the worst contributors to health-harming soot and smog pollution and replace them with clean energy solutions.

18.     The Citizen Plaintiffs each have members and supporters who live, work, and recreate around Midwest Generation's coal-fired power plants, and consequently breathe, use, and enjoy the ambient air in those areas.  Their members' use and enjoyment of the air is impaired by PM pollution and its impact on public health and visibility.  Midwest Generation's coal-fired power plants emit PM and other pollutants that exacerbate air pollution in the areas around and downwind of those plants.  This pollution from Midwest Generation's coal-fired units harms the health, recreational, and aesthetic interests of the Citizen Plaintiffs' members.

## LEGAL FRAMEWORK

### *The Clean Air Act*

19.    Congress enacted the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  42 U.S.C. § 7401(b)(1).

20.    Pursuant to the Act, the U.S. EPA Administrator has established primary and secondary National Ambient Air Quality Standards ("NAAQS") for seven "criteria pollutants." *See* 42 U.S.C. § 7409(a) (requiring the Administrator to promulgate NAAQS); 40 C.F.R. Part 50 (listing NAAQS).  The primary NAAQS must protect the public health with an adequate margin of safety, and the secondary NAAQS must protect the public welfare from any known or anticipated adverse effects associated with the air pollutant.  42 U.S.C. § 7609(b).

21.    $PM_{10}$ (particulate matter with a diameter less than or equal to 10 microns) and $PM_{2.5}$ (particulate matter with a diameter less than or equal to 2.5 microns) are among the seven criteria pollutants for which NAAQS have been promulgated.

22.    Under the Act, each state must designate areas within it based on their compliance with the NAAQS.  These designations are subject to U.S. EPA approval.  For each criteria pollutant, areas must be designated as either in "attainment," "nonattainment," or "unclassifiable."  42 U.S.C. § 7407(d).  The latter classification is used for areas that cannot be designated due to insufficient data.

23.    Midwest Generation's Powerton plant is located in an area designated as attainment for $PM_{10}$ and $PM_{2.5}$.  The Crawford, Fisk, Joliet, Waukegan, and Will County plants are located in areas designated as attainment for $PM_{10}$.  But since April 5, 2005, the Crawford,

Fisk, Joliet, Waukegan, and Will County plants have been located in areas designated as

nonattainment for $PM_{2.5}$.  *See* 70 Fed. Reg. 944 (Jan. 5, 2005).

### *The Illinois SIP*

24.     In order to ensure compliance with the NAAQS, the CAA requires each state to

prepare a State Implementation Plan ("SIP") for U.S. EPA approval.  42 U.S.C. § 7410(a).  The

provisions of a SIP are federally enforceable.  *See General Motors Corp. v. United States*, 496

U.S. 530, 533-34 (1990); *BCCA Appeal Group v. United States EPA*, 355 F.3d 817, 826 (5th Cir.

2003).

25.     Among the provisions of Illinois's SIP are those governing the opacity of

emissions.  Opacity, the percentage of light blocked by emissions, is used as a measure of PM

pollution.

26.     U.S. EPA approved the Illinois SIP's opacity standards on December 29, 1992.

*See* 57 Fed. Reg. 61834 (Dec. 29, 1992).  (Unless otherwise stated, citations to Chapter 35 of the

Illinois Administrative Code are referring to the provisions incorporated into the Illinois SIP.)

27.     The Illinois SIP includes two separate opacity standards, set forth at 35 IAC §§

212.122, 212.123 (July 13, 1988), which are described below:

28.     For any fuel combustion emission source with a heat input greater than 250

million Btu per hour (mmbtu/hr) for which construction or modification commenced on or after

April 14, 1972, the Illinois SIP prohibits emissions with an opacity greater than 20%.  35 IAC §

212.122(a); *see also* 35 IAC § 201.102 (Illinois SIP definitions of "new emission source,"

"construction," and "modification").  The SIP includes several exceptions to this standard,

including allowing emissions of up to 40% opacity for a period or periods totaling three minutes

in any one-hour period, so long as certain conditions are met. *See* 35 IAC § 212.122(b) (describing the three-minute exception).

29.     For all emission sources other than those described in section 212.122, the Illinois SIP prohibits emissions with an opacity greater than 30%. 35 IAC § 212.123(a). The SIP includes several exceptions to this standard, including allowing emissions of up to 60% opacity for a period or periods totaling eight minutes in any one-hour period, so long as certain conditions are met. *See* 35 IAC § 212.123(b) (describing the eight-minute exception).

30.     Because the 20% opacity standard of section 212.122 is more stringent than the 30% opacity standard of section 212.123, and because section 212.122's exceptions are narrower, if an emission source violated the opacity standards of section 212.123, that source would also necessarily violate the opacity standards of section 212.122.

### *Operating Permits*

31.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including SIP requirements, are collected in one place.

32.     A "major source" for purposes of Title V includes a source with a potential to emit greater than 100 tons per year of any criteria pollutant. 42 U.S.C. § 7661(2).

33.     Pursuant to 42 U.S.C. § 7661a(b), U.S. EPA has promulgated regulations implementing Title V, which are codified at 40 C.F.R. Part 70. *See* 57 Fed. Reg. 32250 (July 21, 1992).

34.     U.S. EPA approved Illinois's Title V program, the Clean Air Act Permit Program ("CAAPP"), on December 4, 2001. *See* 66 Fed. Reg. 62946. The CAAPP is codified at 415

ILCS 5/39.5. Although the CAAPP is not part of the Illinois SIP, it is a federally enforceable program.

35.    Under the CAA and the CAAPP, it is unlawful for any person to operate a major source except in compliance with a Title V operating permit. 42 U.S.C. § 7661a(a); 415 ILCS 5/39.5.

36.    The CAA and the CAAPP require Title V permits to include enforceable emission limitations and such other conditions as are necessary to assure compliance with the CAA and the SIP, including any applicable opacity and PM limitations. 42 U.S.C. § 7661c(a); 40 C.F.R. § 70.6(a)(1); 415 ILCS 5/39.5(7)(a).

37.    Before it enacted the CAAPP, Illinois had a state operating permit program. Under that program, the owners or operators of emission sources were required to obtain operating permits and were prohibited from operating those sources in violation of the permit conditions. This state operating permit program, which was incorporated into the Illinois SIP, was later amended by the CAAPP.

38.    Because the state operating permit program is part of the Illinois SIP, the provisions of state operating permits are federally enforceable. 40 C.F.R. § 52.737; *see generally* 57 Fed. Reg. 59928 (Dec. 17, 1992).

### *Monitoring, Recordkeeping, and Reporting Requirements*

39.     Under the CAA's implementing regulations, "affected units" under the Acid Rain Program are subject to the continuous emission monitoring requirements of 40 C.F.R. Part 75.  40 C.F.R. §§ 75.1, .2.

40.     An "affected unit" includes "[a] unit that is listed in table 2 or 3 of [40 C.F.R. § 73.10] and any other existing utility unit, except a unit under paragraph (b) of this section."  40 C.F.R. § 72.6(a)(2).

41.     All of the Midwest Generation's coal-fired units are listed in table 2 of 40 C.F.R. § 73.10, and are therefore subject to the continuous monitoring requirements of 40 C.F.R. Part 75.

42.     Under these regulations, the owner or operator of an affected unit must "install, certify, operate, and maintain . . . a continuous opacity monitoring system with the automated data acquisition and handling system for measuring and recording the opacity of emissions (in percent opacity) discharged to the atmosphere, except as provided in §§ 75.14 and 75.18."  40 C.F.R. § 75.10(a)(4).  40 C.F.R. § 75.14(a) states, *inter alia*, that an owner or operator "shall meet the general operating provisions in §75.10 . . . for a continuous opacity monitoring system for each affected coal-fired or oil-fired unit," subject to certain exceptions.  40 C.F.R. § 75.18 provides special rules for monitoring opacity from common and bypass stacks.  In addition to the foregoing requirements, 40 C.F.R. § 75.21(b) requires continuous opacity monitoring systems to be operated, calibrated, and maintained in conformance with SIP requirements.

43.     The continuous monitoring regulations also require the owner or operator of an affected source to maintain records of opacity data and to report excess emissions of opacity to the applicable State or local pollution control agency (in this case, the Illinois EPA).  40 C.F.R. §§ 75.57(f), 75.65.

44.     The Illinois SIP similarly directs owners and operators of large coal-fired generating units to install, operate, calibrate, and maintain continuous opacity monitoring equipment.  35 IAC § 201.401(a) (Nov. 26, 1991).  The SIP also requires quarterly reporting of opacity exceedances.  35 IAC § 201.405(a), (c), (e) (Dec. 5, 1989).

45.     The state operating permits that have been issued for Midwest Generation's coal-fired units impose similar recordkeeping and reporting requirements.  *See, e.g.*, Illinois EPA, Crawford 7 Operating Permit, Special Condition 11(a) (Oct. 15, 2001) (requiring Midwest Generation to submit quarterly excess opacity reports).

### *Enforcement Provisions*

46.     U.S. EPA, States, and citizens may prosecute actions to require compliance with an emission standard or limitation, or a state or federal order relating to an emissions standard or limitation.  *See generally* 42 U.S.C. § 7604; *see also id.* § 7413 (federal enforcement provisions).

47.     An "emission standard or limitation" is defined to include SIP requirements, a standard of performance, any emission limitation, or any permit term or condition.  42 U.S.C. § 7604(f).

48.     The CAA authorizes injunctive relief and civil penalties of up to $27,500 per day for violations occurring between January 30, 1997, and March 15, 2004; $32,500 per day for violations occurring between March 15, 2004, and January 12, 2009; and $37,500 per day for violations occurring after January 12, 2009.  *See* 42 U.S.C. § 7413(b); 28 U.S.C. § 2461; 31 U.S.C. § 3701; 40 C.F.R. Part 19.

49. The CAA's implementing regulations provide that the failure to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, renders that person in violation of the applicable SIP, and subject to an enforcement action under 42 U.S.C. § 7413. *See* 40 C.F.R. § 52.23.

## FACTUAL BACKGROUND

### *Midwest Generation's Permitting History*

50. At all times relevant to this action, the Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County Stations each constituted a "major source" within the meaning of Title V of Illinois's CAAPP. Accordingly, Midwest Generation was required to obtain Title V operating permits for each of these six facilities.

51. On September 29, 2005, the Illinois EPA issued final Title V permits for the Crawford, Fisk, Joliet, Powerton, and Will County Stations. On February 7, 2006, the Illinois EPA issued a final Title V permit for the Waukegan Station. Midwest Generation subsequently appealed those permits, and in February 2006 the Illinois Pollution Control Board stayed the Title V permits pending the outcome of Midwest Generation's appeals. *See, e.g.*, *Midwest Generation, LLC, Fisk Generating Station v. Illinois EPA*, PCB 06-57 (Feb. 16, 2006). To date, Midwest Generation's appeals have not been resolved.

### *Particulate Matter Pollution*

52. Each of Midwest Generation's coal-fired units emits PM pollution.

53. PM pollution causes a variety of adverse health effects, including premature death, heart attacks, strokes, infant mortality, and asthma attacks. *See, e.g.*, *North Carolina v. TVA*, 593 F. Supp. 2d 812, 822 (W.D.N.C. 2009) (finding, in a tort case involving coal-fired power plants, that "at a minimum, there is an increased risk of incidences of premature mortality in the general

public associated with $PM_{2.5}$ exposure, even for levels at or below the NAAQS standard"); 71 Fed. Reg. 2620, 2635 (Jan. 17, 2006) (U.S. EPA unable to find evidence of a threshold level of $PM_{2.5}$ under which death and disease associated with $PM_{2.5}$ would not occur).

54.     In addition to its public health impacts, PM pollution impairs visibility and thus decreases people's enjoyment of natural scenery.

### *Midwest Generation's Opacity Violations*

*(a) Relationship Between the Government Complaint and the Citizen Plaintiffs' Allegations*

55.     As emission sources within the State of Illinois, each of Midwest Generation's coal-fired units is subject – at a minimum – to the 30% opacity standard set forth at 35 IAC § 212.123.

56.     Additionally, because each of Midwest Generation's coal-fired units has an actual heat input greater than 250 mmbtu/hr, these coal-fired units would be subject to a 20% opacity standard if their construction or modification commenced on or after April 14, 1972.  *See* 35 IAC § 212.122(a).

57.     The Government Plaintiffs have alleged that all of Midwest Generation's coal-fired units, except for Joliet Unit 8 and Will County Units 1, 2, 3, are subject to the 20% opacity standard set forth at 35 IAC § 212.122.  *See, e.g.*, Govt. Complaint ¶ 71.  At present, the Citizen Plaintiffs are alleging that Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7 are subject to this 20% opacity standard.  (Alternatively, Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7 are subject to the 30% standard set forth in 35 IAC § 212.123, and the Citizen Plaintiffs are alleging violations of that standard.)  The Citizen Plaintiffs are not currently alleging that Midwest Generation's other coal-fired units are subject to the 20% opacity standard.

58.     For all of the coal-fired units other than Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7, the Citizen Plaintiffs are only alleging violations of the 30% standard set forth in 35 IAC § 212.123.  Since the requirements of section 212.122 are more stringent than those of section 212.123, any emissions that violated the 30% standard of section 212.123 would also necessarily violate the 20% standard of section 212.122.  *See supra* ¶ 30.  Therefore, if the 20% standard of 35 IAC § 212.122 applies to Midwest Generation's other coal-fired units, the opacity violations alleged in this Complaint would simply represent a subset of Midwest Generation's total opacity violations.

59.     By alleging violations of the 30% standard set forth at 35 IAC § 212.123, the Citizen Plaintiffs do not dispute the Government Plaintiffs' allegation that Powerton Units 5 and 6, Waukegan Units 7 and 8, and Will County Unit 4 are subject to the 20% standard.  The Citizen Plaintiffs' allegations are, in fact, consistent with the alternative claims stated in the Government Plaintiffs' complaint.  *See* Govt. Complaint ¶¶ 173-75, 191-93, 209-11, 227-29, 274-76.

60.     At present, the Citizen Plaintiffs have not yet acquired the information necessary to assess whether Midwest Generation's coal-fired units (other than Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7) are subject to the 20% opacity standard.  Although Sierra Club has tried repeatedly to obtain this information through Freedom of Information Act ("FOIA") requests, it has been unsuccessful in doing so.

61.     Specifically, on February 12, 2004, Sierra Club requested, pursuant to the Illinois FOIA, 5 ILCS 140, copies of documents in the possession of Illinois EPA that were acquired from Midwest Generation pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, and are directly relevant to this case.  On April 19, 2004, Midwest Generation filed an action in the Illinois Pollution Control Board seeking trade secret protection for many of the requested documents.  To

15

date, Sierra Club has received neither the withheld information, nor a final determination by the

Illinois Pollution Control Board that its request is being denied on the basis

of Midwest Generation's trade secret protection claims.

62.     Likewise, on April 2, 2004, and again on October 10, 2005, Sierra Club requested,

pursuant to the federal FOIA, 5 U.S.C § 552, copies of documents that U.S. EPA had acquired

from Midwest Generation pursuant to Section 114 of the CAA, 42 U.S.C. § 7414.  These

requested documents are directly relevant to this case.  On December 22, 2005, U.S. EPA

declined to provide many of the requested records to Sierra Club until it evaluated Midwest

Generation's confidential business information claims.  To date, Sierra Club has received neither

the withheld information, nor a final determination from U.S. EPA that its request is being denied

on the basis of Midwest Generation's confidential business information claims.

63.     If the Citizen Plaintiffs had access to the documents being withheld by U.S. EPA

and Illinois, they could assess whether the coal-fired units at Powerton, Waukegan, and Will

County are subject to the 20% opacity standard.  The Citizen Plaintiffs believe that they are

entitled to review these withheld documents.  The Citizen Plaintiffs further believe that Midwest

Generation's concerns regarding confidential business information can be resolved through an

appropriate protective order in this action.

*(b) Midwest Generation's History of Violations*

64.     At all times relevant to this complaint, each of Midwest Generation's coal-fired units has been equipped with a continuous opacity monitoring system.

65.     As required by the Illinois SIP and 40 C.F.R. § 75.65, Midwest Generation has submitted quarterly reports to the Illinois EPA that include information about opacity violations at the coal-fired units.

66.     Each of Midwest Generation's coal-fired units has repeatedly violated the 30% opacity standard.  Since at least October 1, 2004, Midwest Generation's quarterly reports have documented numerous opacity violations at each of the coal-fired units.  Each of these incidents constitutes a violation of the Illinois SIP and the CAA.

67.     Many of these violations – variously designated as "excess emissions," "opacity exceedance events," "exceedance events," "opacity exceedances," or "excursions" – were identified in Exhibit A of the Citizen Plaintiffs' 60-day Notice of Intent letter, which was sent to Midwest Generation on July 28, 2009.  *See supra* ¶ 6.

68.     Midwest Generation will continue to violate the 30% opacity standard unless enjoined by a court.

69.     Additionally, on information and belief, Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7 have also violated the 20% opacity standard of 35 IAC § 212.122.  Midwest Generation will continue to violate the 20% opacity standard at these coal-fired units unless enjoined by a court.

## COUNT I
### (Opacity Violations at Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7)

70.     The Citizen Plaintiffs restate and incorporate the foregoing allegations.

71.     On information and belief, Crawford Unit 7 is a fuel combustion emission source with a heat input greater than 250 mmbtu/hr for which modification commenced after April 14, 1972.  *See* 35 IAC § 201.102 (defining "modification").  As a modified source, Crawford Unit 7 is subject to the 20% opacity standard set forth at 35 IAC § 212.122(a).

72.     On information and belief, Crawford Unit 8 is a fuel combustion emission source with a heat input greater than 250 mmbtu/hr for which modification commenced after April 14, 1972.  *See* 35 IAC § 201.102.  As a modified source, Crawford Unit 8 is subject to the 20% opacity standard set forth at 35 IAC § 212.122(a).

73.     On information and belief, Fisk Unit 19 is a fuel combustion emission source with a heat input greater than 250 mmbtu/hr for which modification commenced after April 14, 1972.  *See* 35 IAC § 201.102.  As a modified source, Fisk Unit 19 is subject to the 20% opacity standard set forth at 35 IAC § 212.122(a).

74.     On information and belief, Joliet Unit 6 is a fuel combustion emission source with a heat input greater than 250 mmbtu/hr for which modification commenced after April 14, 1972.  *See* 35 IAC § 201.102.  As a modified source, Joliet Unit 6 is subject to the 20% opacity standard set forth at 35 IAC § 212.122(a).

75.     On information and belief, Joliet Unit 7 is a fuel combustion emission source with a heat input greater than 250 mmbtu/hr for which modification commenced after April 14, 1972.  *See* 35 IAC § 201.102.  As a modified source, Joliet Unit 7 is subject to the 20% opacity standard set forth at 35 IAC § 212.122(a).

76.     Since at least October 1, 2004, and continuing until the present, Midwest Generation has repeatedly violated the 20% opacity standard of 35 IAC § 212.122(a) at Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7.  Each of these violations constitutes an independent violation of the CAA and Illinois SIP.  Midwest Generation will continue violating the 20% opacity standard at these coal-fired units unless enjoined by this Court.

77.     In the alternative, Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7 are emission sources subject to the 30% opacity standard set forth at 35 IAC § 212.123.  Since at least October 1, 2004, and continuing until the present, Midwest Generation has repeatedly violated the 30% opacity standard of 35 IAC § 212.123(a) at Crawford Units 7 and 8, Fisk Unit 19, and Joliet Units 6 and 7.  Each of these violations constitutes an independent violation of the CAA and Illinois SIP.  Midwest Generation will continue violating the 30% opacity standard at these coal-fired units unless enjoined by this Court.

## COUNT II
### (Opacity Violations at Midwest Generation's Other Coal-Fired Units)

78.     The Citizen Plaintiffs restate and incorporate the foregoing allegations.

79.     Under the Illinois SIP, all emission sources are, at a minimum, subject to the 30% opacity standard set forth at 35 IAC § 212.123.  Although some sources are subject to a more stringent 20% standard under 35 IAC §§ 212.122, emissions that violate the opacity standards of 35 IAC § 212.123 would necessarily violate the opacity standards of 35 IAC § 212.122.

80.     Accordingly, each of Midwest Generation's coal-fired units is at least subject to a 30% opacity standard.

81.     Since at least October 1, 2004, and continuing until the present, Midwest Generation has repeatedly violated the 30% opacity standard at Joliet Unit 8, Powerton Units 5

and 6, Waukegan Units 7 and 8, and Will County Units 1, 2, 3, and 4.  Each of these violations

constitutes an independent violation of the CAA and Illinois SIP.

82.     Midwest Generation will continue violating the 30% opacity standard at these

coal-fired units unless enjoined by this Court.

## RELIEF REQUESTED

WHEREFORE, the Citizen Plaintiffs request the following relief:

1.     A declaration that Midwest Generation has operated and continues to operate

its coal-fired units in violation of the opacity requirements of the Illinois SIP.

2.     An order directing Midwest Generation to operate its coal-fired units in

compliance with the opacity requirements of the Illinois SIP and to take the necessary measures

to ensure that it will operate in compliance with the opacity requirements.

3.     An assessment of civil penalties of up to $37,500 per day for each violation of

the Illinois SIP's opacity requirements that has occurred within five years of the filing of this

complaint.

4.     An order directing Midwest Generation to take action to remediate its past

illegal air pollution.

5.     An order directing Midwest Generation to pay up to $100,000 for beneficial

mitigation projects, as provided for by 42 U.S.C. § 7604(g)(2), consistent with the purposes of the

CAA.

6.     An order directing Midwest Generation to pay the Citizen Plaintiffs their costs

of litigation, including reasonable attorneys' and expert witness fees; and

7.     Such other relief as the Court deems just and proper.

20

Dated: January 21, 2010

Respectfully submitted,

/s/ Faith E. Bugel

Faith E. Bugel, IL Bar # 6255685
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1300
Chicago, IL  60601-2110
(312) 673-6500
(312) 795-3730 (facsimile)
fbugel@elpc.org

Michael C. Soules, MN Bar # 0387936
Environmental Law & Policy Center
2801 21st Avenue South, Suite 132H
Minneapolis, MN 55407
(989) 600-2659

*Attorneys for Respiratory Health Association
of Metropolitan Chicago and Environmental
Law & Policy Center*

Keith Harley, IL Bar # 6198207
Chicago Legal Clinic
 205 W. Monroe, Floor 4
Chicago, IL  60606
(312) 726-2938

*Attorney for Citizens Against Ruining the
Environment and Sierra Club*

Shannon Fisk, IL Bar # 6269746
Natural Resources Defense Council
2 N. Riverside Plaza, Suite 2250
Chicago, IL 60606
(312) 651-7904

**ELECTRONICALLY FILED**

*Attorney for Natural Resources Defense
Council*

21

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on January 21, 2010, a copy of the foregoing Complaint was filed electronically with the Clerk of Court using CM/ECF, which will send notification of such filings to the following Counsel of Record:

*Attorneys for the United States*

Jennifer Lukas-Jackson
Kristin M. Furrie
U.S. Department of Justice
ENRD Mailroom 2121
601 D St. NW
Washington, DC 20004
(202) 305-2332
jennifer.lukas-jackson@usdoj.gov
kristin.furrie@usdoj.gov

Jonathan C. Haile
United States Attorney's Office (NDIL)
219 South Dearborn Street
Suite 500
Chicago, IL 60604
(312) 353-5300
jonathan.haile@usdoj.gov

*Attorneys for the State of Illinois*

Rose-Marie Cazeau
Stephen J. Sylvester
Matthew J. Dunn
Paula B. Wheeler
Susan Hedman
Illinois Attorney General's Office
State of Illinois
69 W. Washington St., 18th Floor
Chicago, IL 60602
(312) 814-2521
rcazeau@atg.state.il.us
ssylvester@atg.state.il.us
mdunn@atg.state.il.us
pwheeler@atg.state.il.us
shedman@atg.stat.il.us

*Attorneys for Midwest Generation, LLC*

Daniel E. Reidy
Brian J. Murray
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601-1692
(312) 782-3939
dereidy@jonesday.com
bjmurray@jonesday.com

James M. Jones
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219-2514
(412) 391-3939
jmjones@jonesday.com

Kevin P. Holewinksi
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3939
kpholewinski@jonesday.com

/s/ Faith E. Bugel
Faith E. Bugel