## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS, <br><br> Plaintiffs, <br><br> and <br><br> Citizens Against Ruining the Environment, the Environmental Law and Policy Center, Natural Resources Defense Council, the Respiratory Health Association of Metropolitan Chicago, and Sierra Club, <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> MIDWEST GENERATION, LLC, <br><br> Defendant | **Case No. 1:09-cv-05277** <br> Judge John W. Darrah <br> Magistrate Judge Maria Valdez <br><br><br><br> **FIRST AMENDED** <br> **COMPLAINT IN INTERVENTION** |

## <u>INTRODUCTION</u>

Intervenor-Plaintiffs, a coalition of public health, community, and environmental protection organizations (collectively, the "Citizen Plaintiffs"), bring this complaint against Midwest Generation, LLC, for violations of: (1) the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7470-92; (2) visible air pollutant ("opacity") and particulate matter ("PM") limitations under the State Implementation Plan ("SIP") adopted by Illinois and approved by the United States Environmental Protection Agency ("U.S. EPA") pursuant to Section 110 of the Act, 42 U.S.C. § 7410; and (3) Title V of the Act, 42 U.S.C. § 7661-7661(f), the Title V regulations at 40 C.F.R. Part 70, and the Illinois Environmental Protection Act, 415 Illinois Codified Statutes ("ILCS"),

5/1 et seq., including the Title V permit program, 5/39.5. Midwest Generation's illegal activities have harmed and – without judicial intervention – will continue to harm the public health, environment, and economy of the communities affected by this pollution.

## JURISDICTION, VENUE, AND NOTICE

1.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 7413(b) and 7477, and 28 U.S.C. §§ 1331, 1345, and 1355.

2.     This Court has jurisdiction over the Citizen Plaintiffs' claims pursuant to 42 U.S.C. § 7604(b)(1)(B).

3.     Venue is proper in this judicial district because Midwest Generation has its principal place of business in this district. *See* 28 U.S.C. §§ 1391(b), 1391(c), 1395(a); 42 U.S.C. § 7413(b).

4.     The Citizen Plaintiffs bring this Complaint pursuant to 42 U.S.C. § 7604(b)(1)(B), which provides a right of intervention when the U.S. EPA or a State has commenced a CAA enforcement action. Because the U.S. EPA and the State of Illinois (collectively, "Government Plaintiffs") brought an enforcement action against Midwest Generation, the CAA precluded the Citizen Plaintiffs from filing an independent suit against Midwest Generation. 42 U.S.C. § 7604(b)(1)(B). The Citizen Plaintiffs are, however, entitled to intervene as a matter of right in this action. *Id.*

5.     On July 31, 2007, the U.S. EPA issued a Notice and Finding of Violation ("NOV") to Midwest Generation, with a copy to the Illinois EPA, in accordance with Section 113(a)(1) and (b)(1) of the Act, 42 U.S.C. §§ 7413(a)(1)(b)(1). The NOV alleged, among other things, violations of: (1) the Act's PSD program, 42 U.S.C. §§ 7470 – 7492, and its implementing regulations; (2) standards for opacity and PM under the federally approved Illinois SIP provisions,

35 IAC §§ 212.122, 212.123, and 212.204; and (3) Title V of the Act, 42 U.S.C. §§ 7661 – 7661f

at Midwest Generation's Crawford, Fisk, Joliet, Powerton, Waukegan and Will County facilities.

6.    On July 28, 2009, the Citizen Plaintiffs provided written notice to Midwest

Generation, the U.S. EPA, the State of Illinois ("Illinois"), and other necessary parties that

Midwest Generation was violating requirements of the CAA and Illinois's State Implementation

Plan ("SIP"). *See* Ex. 1 to Dkt. No. 13.

7.    On August 27, 2009, the Government Plaintiffs brought a civil action against

Midwest Generation alleging numerous violations of the CAA and the Illinois SIP. *See generally*

Complaint, *United States v. Midwest Generation, LLC*, Case No. 09-5277, Dkt. No. 1 (hereafter

"Govt. Complaint").

8.    On October 9, 2009, the Citizen Plaintiffs filed a Motion to Intervene and a

Complaint in Intervention alleging numerous violations of the CAA and the Illinois SIP. *See*

Complaint in Intervention, Dkt. No. 13.

9.    On December 16, 2009, Midwest Generation filed a Partial Motion to Dismiss the

Government's Complaint. Midwest Generation asked the Court to dismiss all counts of the

Governments' Complaint related to alleged PSD violations except those related to Will County

Station Unit 4. Midwest Generation's Motion did not address the claims made in the Citizen

Plaintiff's Complaint in Intervention. *See* Defendant's Partial Motion to Dismiss and

Memorandum in Support, Dkt. Nos. 31 - 32.

10.    On January 19, 2010, the Citizen Plaintiffs were granted leave to intervene.

11.    On March 9, 2010, Midwest Generation's Partial Motion to Dismiss was granted.

## PARTIES

12.     Defendant Midwest Generation LLC is a wholesale power seller and a Delaware corporation registered to do business in Illinois. Its principal place of business is located at One Financial Place, 440 S. LaSalle St., Ste. 3500, Chicago, IL 60605. Midwest Generation is the owner and operator of the electric generating units located at the following six power plants:

(i) the Crawford Station, a coal-fired electricity generating power plant located at 3501 South Pulaski Road in Chicago, Illinois ("Crawford");

(ii) the Fisk Station, a coal-fired electricity generating power plant located at 1111 West Cermak Road in Chicago, Illinois ("Fisk");

(iii) the Joliet Station, a coal-fired electricity generating power plant located at 1800 Channahon Road in Joliet, Illinois ("Joliet");

(iv) the Powerton Station, a coal-fired electricity generating power plant located at 13082 East Manito Road in Pekin, Illinois ("Powerton");

(v) the Waukegan Station, a coal-fired electricity generating power plant located at 401 East Greenwood Avenue in Waukegan, Illinois ("Waukegan"); and,

(vi) the Will County Station, a coal-fired electricity generating power plant located at 529 East 135th Street in Romeoville, Illinois ("Will County").

13.     The Government Plaintiffs in this action include the United States of America, by authority of the Attorney General of the United States, acting at the request of the U.S. EPA Administrator; and the State of Illinois, by and through Lisa Madigan, Attorney General for the State of Illinois.

14.     The Citizen Plaintiffs in this action are Citizens Against Ruining the Environment ("CARE"), the Environmental Law and Policy Center ("ELPC"), Natural Resources Defense

Council ("NRDC"), Respiratory Health Association of Metropolitan Chicago ("RHAMC"), and Sierra Club.

15.     CARE is located at 230 E. 6th Street, Lockport, IL 60441.   CARE is an incorporated, not-for-profit community organization with members in the Lockport area, including Will County. CARE was organized for the purpose of preserving and protecting Illinois's land, air, water, and other natural resources, and protecting the organization's members and other residents of the state from threats of pollution.

16.     ELPC is an Illinois not-for-profit corporation with its principal office located at 35 East Wacker Drive, Suite 1300, Chicago, IL 60601. ELPC's purposes include protecting the environment and natural resources in the Midwest and enhancing the health and quality of life of persons living in Illinois, Indiana, Iowa, Michigan, Minnesota, North Dakota, Ohio, South Dakota, and Wisconsin.

17.     The NRDC is a national, not-for-profit, environmental organization with more than 420,000 members nationwide, including 19,454 members in Illinois, 7,454 members in Cook County, 1,212 members in Lake County, 561 members in Will County, and 107 members in Tazewell County. NRDC's headquarters is located at 40 West 20th Street, New York City, New York 10011, and its Midwest Office is located at 2 North Riverside Plaza, Suite 2250, Chicago, Illinois 60606. NRDC is dedicated to the protection of the environment and public health, and as part of its mission, has actively supported effective enforcement of the CAA and other environmental statutes on behalf of its members for over 30 years.

18.     RHAMC is an incorporated, not-for-profit organization located at 1440 W. Washington Blvd., Chicago, IL 60607. RHAMC fights lung disease and promotes healthy lungs by supporting research, advocacy, and educational efforts on behalf of individuals and families

affected by lung cancer, asthma, COPD (chronic bronchitis and emphysema), and other lung diseases.

19.     Sierra Club is the nation's oldest and largest grassroots environmental organization. Sierra Club is an incorporated, not-for-profit organization. Its headquarters is located at 85 Second Street, 2nd Floor, San Francisco, CA, 94105 and its Illinois Chapter office is located at 70 E. Lake St., Suite 1500, Chicago, IL, 60601. Sierra Club's mission is to preserve, protect, and enhance the natural environment. Sierra Club has 641,000 members, including approximately 23,000 members in Illinois, with 10,758 members in Cook County, 1,827 in Lake County, 131 in Tazewell County, and 568 in Will County. Sierra Club's Beyond Coal Campaign is working to retire old coal plants that are the worst contributors to health-harming soot and smog pollution and replace them with clean energy solutions.

20.     The Citizen Plaintiffs each have members and supporters who live, work, and recreate near Midwest Generation's coal-fired power plants, and consequently breathe, use, and enjoy the ambient air in those areas. Their members' use and enjoyment of the air is impaired by pollution in excess of legal limitations and the impact of that air pollution on public health and visibility. Midwest Generation's coal-fired power plants emit PM and other pollutants that exacerbate air pollution in the areas around and downwind of those plants. This pollution from Midwest Generation's coal-fired units harms the health, recreational, and aesthetic interests of the Citizen Plaintiffs' members.

## STATUTORY FRAMEWORK

21.     Congress enacted the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

6

22.     Pursuant to Section 109 of the Act, the U.S. EPA Administrator has established

primary and secondary National Ambient Air Quality Standards ("NAAQS") for seven "criteria

pollutants." *See* 42 U.S.C. § 7409(a) (requiring the Administrator to promulgate NAAQS); 40

C.F.R. Part 50 (listing NAAQS). The primary NAAQS must protect the public health with an

adequate margin of safety, and the secondary NAAQS must protect the public welfare from any

known or anticipated adverse effects associated with the air pollutant. 42 U.S.C. § 7609(b).

23.     Particulate matter with a diameter less than or equal to 10 microns ("$PM_{10}$"),

particulate matter with a diameter less than or equal to 2.5 microns ("$PM_{2.5}$"), nitrogen oxides

("$NO_X$"), and sulfur dioxide ("$SO_2$") are among the seven criteria pollutants for which NAAQS

have been promulgated.  *See* 42 U.S.C. § 7409(a); 40 C.F.R. Part 50 (listing NAAQS).

24.     Under the Act, each state must designate areas within it based on their compliance

with the NAAQS. These designations are subject to U.S. EPA approval. For each criteria pollutant,

areas must be designated as either in "attainment," "nonattainment," or "unclassifiable." 42 U.S.C.

§ 7407(d). The latter classification is used for areas that cannot be designated due to insufficient

data.

25.     In order to ensure compliance with the NAAQS, the CAA requires each state to

prepare a State Implementation Plan ("SIP") for U.S. EPA approval.  42 U.S.C. § 7410(a).  The

provisions of a SIP are federally enforceable.  42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.  *See*

*General Motors Corp. v. United States*, 496 U.S. 530, 533-34 (1990); *BCCA Appeal Group v.*

*United States EPA*, 355 F. 3d 817, 826 (5th Cir. 2003).

<u>The Prevention of Significant Deterioration Requirements</u>

26.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth the requirements

for the Prevention of Significant Deterioration ("PSD") of air quality in those areas designed as

either in attainment or unclassifiable for the purpose of maintaining the NAAQS. These requirements are designed to protect the public's health and welfare, assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and provide that any consequences of such a decision occur after public participation in the decision-making process. These provisions are referred to collectively as the "PSD program."

27.     Pursuant to Section 110 of the Act, 42 U.S.C. §7410, each state must adopt and submit to the U.S. EPA for approval a State Implementation Plan ("SIP") that includes regulations to prevent the significant deterioration of air quality under Section 161-165 of the Act, 42 U.S.C. §§ 7471-7475.

28.     Pursuant to Section 302(q) of the Act, 42 U.S.C. § 7602(q), an applicable implementation plan is the SIP, or most recent revision thereof, which has been approved by the U.S. EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410, or promulgated by the U.S. EPA pursuant to Section 110(c) of the Act, 42 U.S.C. § 7410(c), and which implements the relevant requirements of the Act.

29.     A state may comply with Section 161 of the Act, 42 U.S.C. § 7471, by submitting its PSD regulations to U.S. EPA for approval as part of its SIP. Those regulations must be at least as stringent as those set forth at 40 C.F.R. § 51.166. If a state does not have a PSD program that has been approved by the U.S. EPA and incorporated into the SIP, then the federal PSD regulations set forth at 40 C.F.R. § 52.21 may be incorporated by reference into the SIP. 40 C.F.R. § 52.21(a).

30.     U.S. EPA determined, on August 7, 1980, that the Illinois SIP did not meet the requirements of Section 161 of the Act, 42 U.S.C. § 7471, and incorporated the federal PSD regulations at 40 C.F.R. § 52.21(b) - (w) into the Illinois SIP. 40 C.F.R. § 52.738; 45 Fed. Reg.

52841 (August 7, 1980), as amended at 46 Fed. Reg. 9584. All citations to the PSD regulations herein refer to the provisions of 40 C.F.R. § 52.21 incorporated into and part of the Illinois SIP as applicable at the time of the alleged violations. The U.S. EPA has delegated to Illinois the authority to review and process PSD permit applications. 46 Fed. Reg. 9580.

31.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), prohibits the construction and operation of a "major emitting facility" in an area designated as attainment, unless a permit has been issued that comports with the requirements of Section 165 and the facility employs BACT for each pollutant subject to regulation under the Act that is emitted from the facility. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric power plants of more than two hundred and fifty million British thermal units ("Btus") per hour heat input and that emit or have the potential to emit one hundred tons per year or more of any pollutant to be "major emitting facilities."

32.     Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(c), defines "construction" as including "modification" (as defined in Section 111(a) of the Act). "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

33.     Section 169(3) of the Act, 42 U.S.C. § 7479(3), defines BACT, in pertinent part, as "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility."

34.     As set forth at 40 C.F.R. § 52.21(i), any major stationary source in an attainment or unclassifiable area that intends to construct a major modification must first obtain a PSD permit.

35.     Under the PSD program, a "major stationary source" is defined to include fossil-fueled steam electric generating power plants of more than 250 million Btus per hour heat input that emit, or have the potential to emit, one hundred tons per year or more of any regulated air pollutant. 40 C.F.R. § 52.21(b)(1)(i)(a).

36.     "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as "any physical change or change in the method of operation of a major stationary source that would result in a significant net emission increase of any pollutant subject to regulation under the Act."

37.     "Net emissions increase" means "the amount by which the sum of the following exceeds zero: (a) [a]ny increase in actual emissions (as defined by 40 C.F.R. § 52.21(b)(21)) from a particular physical change or change in the method of operation at a stationary source; and (b) [a]ny other increases and decreases in actual emissions (as defined by 40 C.F.R. § 52.21(b)(21)) at the source that are contemporaneous with the particular change and are otherwise creditable." 40 C.F.R. § 52.21(b)(3)(i). A "significant" net emissions increase means an increase in the rate of emissions that equals or exceeds any of the following: 40 tons per year of $SO_2$; 40 tons per year of $NO_X$; or 25 tons per year of PM. 40 C.F.R. § 52.21(b)(23)(i). Effective July 15, 2008, $SO_2$ is regulated as a precursor to $PM_{2.5}$, and $NO_X$ is regulated as a presumed precursor to $PM_{2.5}$. 73 Fed. Reg. 28321, 28327-28 (May 16, 2008).

38.     As set forth at 42 U.S.C. § 7475(a)(4) and 40 C.F.R. § 52.210), a source that undergoes a major modification in an attainment or unclassifiable area must install and operate BACT, as defined in 40 C.F.R. § 52.21 (b)(12) and 42 U.S.C. § 7479(3).

39.     Any application for a PSD permit must be accompanied by an analysis of ambient air quality in the area. 40 C.F.R. § 52.21(m).

40.     The PSD program also requires any person who elects to modify a major source in an attainment area to demonstrate, before construction begins, that the construction will not cause or contribute to air pollution that is in violation of any national ambient air quality standard or the maximum allowable increase in emissions of that pollutant. 40 C.F.R. § 52.21(k).

41.     In addition, the owner or operator of a proposed source or modification must submit all additional information about the source, the modification and the air quality impact of the modification as requested by the U.S. EPA under 40 C.F.R. § 52.21(n).

42.     Though PSD is a preconstruction permitting program, the Clean Air Act and the implementing regulations codified at 40 C.F.R. § 52.21 establish requirements for the lawful operation of the source following a modification.

<u>The Nonattainment New Source Review Requirements</u>

43.     Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth provisions for New Source Review ("NSR") requirements for areas designated as being in nonattainment with the NAAQS standards. These provisions are referred to collectively as the "Nonattainment NSR program." The Nonattainment NSR program is intended to reduce emissions of air pollutants in areas that have not attained the NAAQS, so that the areas make progress toward meeting the NAAQS.

44.     Under Section 172(c)(5) of the Nonattainment NSR provisions of the Act, 42 U.S.C. § 7502(c)(5), each state is required to adopt Nonattainment NSR SIP rules that include provisions requiring permits to conform to the requirements of Section 173 of the Act, 42 U.S.C. § 7503, for the construction and operation of modified major stationary sources within

nonattainment areas. Section 173 of the Act, in turn, sets forth a series of minimum requirements for the issuance of permits for major modifications to major stationary sources within nonattainment areas. 42 U.S.C. § 7503.

45.    Section 173(a) of the Act, 42 U.S.C. 7503(a), provides that construction and operating permits may be issued, if, among other things:"(a) sufficient offsetting emission reductions have been obtained to reduce existing emissions to the point where reasonable further progress towards meeting the national ambient air quality standards is maintained; and (b) the pollution controls to be employed will reduce emissions to the "lowest achievable emission rate."

46.    Section 182(t) of the Act, 42 U.S.C. § 7511a(t), enacted as part of the Clean Air Act Amendments of 1990, sets forth additional requirements effective November 15, 1992, regarding the construction and operation of new or modified major stationary sources of $NO_X$ located within nonattainment areas for ozone. CAA Section 182(t) defines $NO_X$ as a pollutant that must be treated as a contributor to the criteria pollutant ozone in an ozone nonattainment area. 42 U.S.C. § 7511a(t). For the purposes of CAA Section 182, a "major stationary source" of $NO_X$ is one that emits or has the potential to emit 100 tons per year or more of a regulated pollutant. 40 C.F.R. § 52.21 (b)(1)i). A "significant" net emissions increase of $NO_X$ is one that would result in increased emissions of 40 tons per year or more. 42 U.S.C. § 7511a; 40 C.F.R. § 52.21(b)(23)(i).

Title V

47.    Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD and SIP requirements, are collected in one place.

48.     A "major source" for purposes of Title V is defined, among other things, as a source with a potential to emit greater than 100 tons per year of any criteria pollutant. 42 U.S.C. § 7661(2).

49.     Pursuant to CAA Section 502(b), 42 U.S.C. § 7661a(b), U.S. EPA promulgated regulations implementing Title V regulations which are codified at 40 C.F.R. Part 70. 57 Fed. Reg. 32,250 (July 21, 1992).

50.     Illinois's Title V operating permit program was granted interim approval by the U.S. EPA on March 7, 1995 (60 Fed. Reg. 12478) and final approval by the U.S. EPA on December 4, 2001 (66 Fed. Reg. 62946). Illinois's Title V permit program, the Clean Air Act Permit Program ("Illinois CAAPP"), is codified at 415 ILCS 5/39.5. The CAAPP is not part of the Illinois SIP, but is a federally enforceable program.

51.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Illinois CAAPP, 415 ILCS 5/39.5, have at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

52.     Section 503(c) of the Act, 42 U.S.C. § 7661b(c), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and the Illinois CAAPP, 415 ILCS 5/39.5, have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and includes, among other things: the citations and descriptions of all requirements applicable to the source (including any requirement to meet BACT pursuant to PSD and to comply with the SIP opacity and PM limitations); a description of, and compliance plan for, requirements for which the source is not in compliance; and a certification by a responsible official of the truth, accuracy, and completeness of the application.

53.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.6(a)(1), and the Illinois CAAPP, 415 ILCS 5/39.5(7)(a) and (c), have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the CAA and the requirements of the applicable SIP, including any applicable PSD requirement to comply with BACT and any applicable opacity and PM limitations.

<u>Monitoring, Recordkeeping and Reporting Requirements Under the CAA</u>

54.     Under the CAA's implementing regulations, "affected units" under the Acid Rain Program are subject to the continuous emission monitoring requirements of 40 C.F.R. Part 75.  40 C.F.R. §§ 75.1, 2.

55.     An "affected unit" includes "[a]unit that is listed in table 2 or 3 of [40 C.F.R. § 73.10] and any other existing utility unit, except a unit under paragraph (b) of this section."  40 C.F.R. § 72.6(a)(2).

56.     Under these regulations, the owner or operator of an affected unit must "install, certify, operate, and maintain a continuous opacity monitoring system with the automated data acquisition and handling system for measuring and recording the opacity of emissions (in percent opacity) discharged to the atmosphere, except as provided in §§ 75.14 and 75.18."  40 C.F.R. § 75.10(a)(4).  40 C.F.R. § 75.14(a) states, *inter alia*, that an owner or operator "shall meet the general operating provisions in § 75.10 . . . for a continuous opacity monitoring system for each affected coal-fired or oil-fired unit," subject to certain exceptions.  40 C.F.R. § 75.18 provides special rules for monitoring opacity from common and bypass stacks.  In addition to the foregoing requirements, 40 C.F.R. § 75.21(b) requires continuous opacity monitoring systems to be operated, calibrated, and maintained in conformance with SIP requirements.

57.     The continuous monitoring regulations also require the owner or operator of an affected source to maintain records of opacity data and to report excess emissions of opacity to the applicable State or local pollution control agency (in this case, the Illinois EPA).  40 C.F.R. §§ 75.57(f), 75.65.

58.     The Illinois SIP similarly directs owners and operators of large coal-fired generating units to install, operate, calibrate and maintain continuous opacity monitoring equipment.  35 IAC § 201.401(a).  The SIP also requires quarterly reporting of opacity exceedances.  35 IAC § 201.405(a), (c), (e).

### The Illinois SIP Construction and Operating Permit Program

59.     Prior to the approval of the Illinois CAAPP, the Illinois regulations contained a general state construction and operating permit program that required, among other things, that "air contaminant sources" obtain operating permits and prohibited the operation of such sources in violation of these permits. This program was approved by the U.S. EPA as part of the Illinois SIP. This program was later amended by the Illinois CAAPP, 415 ILCS 5/39.5, as described above.

### Limitations on Opacity and Particulate Matter Pollution in the Illinois SIP

60.     Among the provisions of Illinois' SIP are those governing the opacity of emissions.  Opacity, the percentage of light blocked by emissions, is used as a measure of PM pollution

61.     U.S. EPA approved the Illinois SIP's opacity standards on December 29, 1992.  *See* 57 Fed. Reg. 61834 (Dec. 29, 1992).  (Unless otherwise stated, citations to Chapter 35 of the Illinois Administrative Code are referring to provisions incorporated into the Illinois SIP.)

62.     The Illinois SIP codifies visible emissions standards at 35 Illinois Administrative Code ("IAC") §§ 212.122 and 212.123. 57 Fed. Reg. 61834, 61837 (December 29, 1992). Section

212.122 prohibits emissions with an opacity greater than 20 percent from any fuel combustion emission source that has a heat input of greater than 250 million Btus per hour for which construction or modification commenced on or after April 14, 1972. 35 IAC § 212.122. There are several exceptions to 35 IAC § 212.122, including allowing opacity up to 40 percent for a period or periods aggregating three minutes in any 60 minute period, provided other conditions are satisfied. 35 IAC § 212.122(b).

63.     A "modification" is defined under 35 IAC § 201.102 as "any physical change in, or change in the method of operations of, an emission source or of air pollution control equipment which increases the amount of any specified air contaminant emitted by such source or equipment..."

64.     For all emissions sources other than those described in Section 212.122, the Illinois SIP prohibits emissions with an opacity greater than 30 percent. 35 IAC § 212.123. There are also several exceptions to this rule, including allowing opacity up to 60 percent for a period or periods aggregating eight minutes in any 60 minute period, provided other conditions are satisfied. 35 IAC § 212.123(b).

65.     The Illinois SIP directs owners and operators of large coal-fired generating units to install, operate, calibrate, and maintain continuous opacity monitoring equipment. 35 IAC § 201.405(a). The SIP also requires quarterly reporting of opacity exceedances. 35 IAC §§ 201.405(a),(c), and (e).

66.     Violations of the opacity limitations of 35 IAC §§ 212.122 and 123 can be determined by either visual observations or use of a calibrated smoke monitor or evaluation device approved by Illinois EPA. 35 IAC § 212.125.

16

67.     Illinois SIP provision 35 IAC § 212.204 limits PM emissions to 0.1 lb. per million

Btus in any one hour for fuel combustion emissions units that burn solid fuel exclusively and for

which modification was commenced after April 14, 1972. 58 Fed. Reg. 54294 (October 21, 1993).

For sources subject to this provision, an exceedance of the opacity limits at 35 IAC § 212.122

constitutes a separate violation of the particulate emission limit at 35 IAC § 212.204. 35 IAC §

212.124(d)(2)(A); 57 Fed. Reg. 61837.

## CLEAN AIR ACT AND ILLINOIS ACT ENFORCEMENT PROVISIONS

68.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide

that the Administrator may bring a civil action in accordance with Section 113(b) of the Act

whenever, on the basis of any information available, the Administrator finds that any person has

violated or is in violation of any other requirement or prohibition of, among other things: (1) the

PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); (2) the federally enforceable

provisions of the Illinois SIP or any permit issued there under; and (3) Title V of the Act, 42

U.S.C. §§ 7661-766lf, or any rule or permit issued there under.

69.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to

initiate a judicial enforcement action for a permanent or temporary injunction and/or for a civil

penalty of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per

day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring after March 15, 2004; and $37,500 per day for each such violation occurring

after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990,

28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has

violated, or is in violation of, the requirements or prohibitions described in Paragraph 68.

70.     Sections 111, 112, 165, and 173 of the CAA, and the federal regulations adopted pursuant thereto, are enforceable by Illinois pursuant to Section 9.1 (d) of the Illinois Environmental Protection Act ("Illinois Act"), 415 ILCS 5/9.1(d). Pursuant to Section 42 of the Illinois Act, 415 ILCS 5/42, Illinois may commence a civil action for injunctive relief and civil penalties.

71.     40 C.F.R. § 52.23 provides, among other things, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to Section 113 of the Act, 42 U.S.C. § 7413.

72.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an action for injunctive relief, as necessary, to prevent the construction, modification, or operation of a major emitting facility that does not conform to the PSD requirements in Part C of the Act.

## **DEFENDANT'S COAL-FIRED GENERATING UNITS**

73.     At all times pertinent to this civil action, Defendant owned and operated:

A) the Crawford Station, located in Chicago, Illinois. The Crawford Station operates two coal-fired generating units, including Crawford Unit 7 and Crawford Unit 8.

B) the Fisk Station, located in Chicago, Illinois. The Fisk Station operates one coal-fired generating unit, including Fisk Unit 19.

C) the Joliet Station, located in Joliet, Illinois. The Joliet Station operates three coal-fired generating units, including, Joliet Unit 6, Joliet Unit 7, and Joliet Unit 8.

D) the Powerton Station, located in Pekin, Illinois. The Powerton Station operates two coal-fired generating units, including Powerton Unit 5 and Powerton Unit 6.

E) the Waukegan Station, located in Waukegan, Illinois. The Waukegan Station operates two coal-fired generating units, including Waukegan Unit 7 and Waukegan Unit 8.

F) the Will County Station, located in Romeoville, Illinois. The Will County Station operates four coal-fired generating units, including Will County Unit 1, Will County Unit 2, Will County Unit 3, and Will County Unit 4.

74.     At all times pertinent to this civil action, the Crawford Station, Crawford Unit 7, Crawford Unit 8, the Fisk Station, Fisk Unit 19, the Joliet Station, Joliet Unit 6, Joliet Unit 7, Joliet Unit 8, the Powerton Station, Powerton Unit 5, Powerton Unit 6, the Waukegan Station, Waukegan Unit 7, Waukegan Unit 8, the Will County Station, Will County Unit 1, Will County Unit 2, Will County Unit 3, and Will County Unit 4, were each a "major emitting facility" and a "major stationary source," within the meaning of the Act and the PSD regulations in the Illinois SIP for $NO_X$, $SO_2$, and/or PM.

75.     Each of Midwest Generation's coal-fired units emits PM pollution.

76.     PM pollution causes a variety of adverse health effects, including premature death, heart attacks, strokes, infant mortality, and asthma attacks. *See e.g., North Carolina v. TVA,* 593 F. Supp. 2d 812, 822 (W.D.N.C. 2009) (finding, in a tort case involving coal-fired power plants, that "at a minimum, there is an increased risk of incidences of premature mortality in the general public associated with $PM_{2.5}$ exposure, even for levels at or below the NAAQS standard"); 71 Fed. Reg. 2620, 2635 (Jan. 17, 2006) (U.S. EPA unable to find evidence of a threshold level of $PM_{2.5}$ under which death and disease associated with $PM_{2.5}$ would not occur.)

77.     In addition to its public health impacts, PM pollution impairs visibility and thus decreases people's enjoyment of natural scenery.

78.     Each of Midwest Generation's coal-fired units emits $NO_X$ pollution.

79. $NO_X$ emissions contribute to acid rain and are associated with smog creation. Smog is ground level ozone which is formed when nitrogen oxides and volatile organic compounds mix at ground level. Respiration of ozone may result in damage to lung tissue and reduction of lung function. *See* 73 Fed. Reg. 16438 (March 27, 2008); 75 Fed. Reg. 6474 (Feb. 9, 2010).

80. Each of Midwest Generation's coal-fired units emits $SO_2$ pollution.

81. $SO_2$ causes a variety of health and environmental impacts, including causing temporary breathing difficulty for asthmatics. In addition, $SO_2$ contributes to acid rain, plant damage and structure degeneration. Long-term exposure to $SO_2$ may lead to respiratory infection and aggravate heart disease. *See PPG Industries Inc. v. Costle*, 659 F. 2d 1239, 1241 (D.C. Cir. 1981).

82. Each stack servicing each unit is equipped with continuous opacity monitoring equipment systems that continuously monitor opacity.

83. As required by the Illinois SIP and 40 C.F.R. § 75.65, Midwest Generation has submitted quarterly reports to the Illinois EPA that include information about opacity emissions at its coal-fired units.

84. At all times relevant to this action, the Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County power plants each constituted a "major source" within the meaning of Title V of Illinois's CAAPP. Accordingly, Midwest Generation was required to obtain Title V operating permits for each of these six facilities.

85. On September 29, 2005, the Illinois EPA issued final Title V permits for the Crawford, Fisk, Joliet, Powerton, and Will County power plants. On February 7, 2006, the Illinois EPA issued a final Title V permit for the Waukegan power plant. Midwest Generation

subsequently appealed those permits, and in February 2006 the Illinois Pollution Control Board

stayed the Title V permits pending the outcome of Midwest Generation's appeals. *See, e.g.*,

*Midwest Generation, LLC, Fisk Generating Station v. Illinois EPA*, PCB 06-57 (Feb. 16, 2006). To

date, Midwest Generation's appeals have not been resolved.

## FIRST CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Crawford Unit 7)

86.     Paragraphs 1-85 are realleged and incorporated herein by reference.

87.     As a qualifying source under 35 IAC § 212.123, Crawford Unit 7 is subject to the

30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002

and, upon information and belief, continuing until the present, on numerous occasions, Defendant

emitted, and continues to emit, visible emissions from Crawford Unit 7 that exceed the opacity

limits in Section 212.123 of the Illinois SIP.

88.     The U.S. EPA has found, based upon visible emissions referenced in the

preceding paragraph, that the Defendant has been, and, upon information and belief, continues to

be, in violation of 35 IAC § 212.123, at Crawford Unit 7.  Pursuant to Section 113(a) of the Act,

42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by NOV that the U.S.

EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a)

of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and

Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation

of 35 IAC § 212.123.

89.     Defendant has violated, and continues to violate the 30 percent opacity limitation

under 35 IAC § 212.123 at Crawford Unit 7. Each of these provisions is a federally enforceable

Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also

enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

90.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SECOND CLAIM FOR RELIEF

### (Title V Violations at Crawford Unit 7)

91.     Paragraphs 1-85 and 86-90 are realleged and incorporated herein by reference.

92.     As described above, Defendant has violated, and, upon information and belief, continues to be, in violation of opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Crawford Unit 7.

93.     Defendant has failed to submit a complete application for a Title V operating permit for Crawford Unit 7 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

94.     Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Crawford Unit 7. Unless restrained by an order of this Court, these and similar violations will continue.

95.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRD CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Crawford Unit 8)

96.     Paragraphs 1-85 are realleged and incorporated herein by reference.

97.     As a qualifying source under 35 IAC § 212.123, Crawford Unit 8 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Crawford Unit 8 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

98.     The U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Crawford Unit 8.  Pursuant to Section 113(a) of the Act, 42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by  NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a) of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois

by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

99.     Defendant has violated, and continues to violate the 30 percent opacity limitation under 35 IAC § 212.123 at Crawford Unit 8.  Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

100.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37, 500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FOURTH CLAIM FOR RELIEF

(Title V Violations at Crawford Unit 8)

101.     Paragraphs 1-85 and 96-100 are realleged and incorporated herein by reference.

102.     Defendant has violated, and, upon information and belief, continues to be, in violation of opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Crawford Unit 8.

103.     Defendant has failed to submit a complete application for a Title V operating permit for Crawford Unit 8 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance, and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to

determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

104.    Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Crawford Unit 8. Unless restrained by an order of this Court, these and similar violations will continue.

105.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31,1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Fisk Unit 19)

106.    Paragraphs 1-85 are realleged and incorporated herein by reference.

107.    As a qualifying source under 35 IAC § 212.123, Fisk Unit 19 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Fisk Unit 19 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

108.    The U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Fisk Unit 19.  Pursuant to Section 113(a) of the Act, 42

U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123. Pursuant to Section 304(a) of the Act, 42 U.S.C. § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

109.     Defendant has violated, and continues to violate the 30 percent opacity limitation under 35 IAC § 212.123 at Fisk Unit 19. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

110.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SIXTH CLAIM FOR RELIEF

(Title V Violations at Fisk Unit 19)

111.     Paragraphs 1-85 and 106-110 are realleged and incorporated herein by reference.

112.     As described above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Fisk Unit 19.

113.    Defendant has failed to submit a complete application for a Title V operating permit for Fisk Unit 19 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

114.    Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Fisk Unit 19. Unless restrained by an order of this Court, these and similar violations will continue.

115.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SEVENTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Joliet Unit 6)

116.    Paragraphs 1-85 are realleged and incorporated herein by reference.

117.    As a qualifying source under 35 IAC § 212.123, Joliet Unit 6 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant

emitted, and continues to emit, visible emissions from Joliet Unit 6 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

118.     The U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123, at Joliet Unit 6.  Pursuant to Section 113(a) of the Act, 42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a) of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

119.     Defendant has violated, and continues to violate the 30 percent opacity limitation under 35 IAC § 212.123 at Joliet Unit 6. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

120.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## EIGHTH CLAIM FOR RELIEF

### (Title V Violations at Joliet Unit 6)

121.     Paragraphs 1-85 and 116-120 are realleged and incorporated herein by reference.

122.     As described above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123 at Joliet Unit 6.

123.     Defendant has failed to submit a complete application for a Title V operating permit for Joliet Unit 6 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

124.     Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661 b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5 at Joliet Unit 6. Unless restrained by an order of this Court, these and similar violations will continue.

125.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## NINTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Joliet Unit 7)

126.    Paragraphs 1-85 are realleged and incorporated herein by reference.

127.    As a qualifying source under 35 IAC § 212.123, Joliet Unit 7 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Joliet Unit 7 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

128.    The U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Joliet Unit 7.  Pursuant to Section 113(a) of the Act, 42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a) of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

129.    Defendant has violated, and continues to violate the 30 percent opacity limitation under 35 IAC § 212.123 at Joliet Unit 7. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

130.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### **TENTH CLAIM FOR RELIEF**

(Title V Violations at Joliet Unit 7)

131.     Paragraphs 1-85 and 126-130 are realleged and incorporated herein by reference.

132.     As described above, Defendant has violated, and, upon information and belief,

continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at

Joliet Unit 7.

133.     Defendant has failed to submit a complete application for a Title V operating

permit for Joliet Unit 7 that identifies all applicable requirements, accurately certifies compliance

with such requirements, contains a compliance plan for all applicable requirements for which the

source was not in compliance and other specific information that may be necessary to implement

and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine

the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661

b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

134.     Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5 at Joliet Unit 7. Unless restrained by an order of this Court, these and

similar violations will continue.

31

135.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## ELEVENTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Joliet Unit 8)

136.    Paragraphs 1-85 are realleged and incorporated herein by reference.

137.    As a qualifying source under 35 IAC § 212.123, Joliet Unit 8 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant has emitted, and continues to emit, visible emissions from Joliet Unit 8 that exceed the opacity limits in Section 212.123.

138.    The U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Joliet Unit 8.  Pursuant to Section 113(a) of the Act, 42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a) of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

139.     Defendant has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Joliet Unit 8. This provision is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

140.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWELFTH CLAIM FOR RELIEF

(Title V Violations at Joliet Unit 8)

141.     Paragraphs 1-85 and 136-140 are realleged and incorporated herein by reference.

142.     As set forth above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Joliet Unit 8.

143.     Defendant has failed to submit a complete application for a Title V operating permit for Joliet Unit 8 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet opacity limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability

of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. §

70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

144.     Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Joliet Unit 8. Unless restrained by an order of this Court, these and

similar violations will continue.

145.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation

occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or

after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990,

28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRTEENTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Powerton Unit 5)

146.     Paragraphs 1-85 are realleged and incorporated herein by reference.

147.     As a qualifying source under 35 IAC § 212.123, Powerton Unit 5 is subject to the

30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002

and, upon information and belief, continuing until the present, on numerous occasions, Defendant

emitted, and continues to emit, visible emissions from the shared stack of Powerton Units 5 and 6

that exceed the opacity limits in Section 212.123 of the Illinois SIP.

148.     The U.S. EPA has found, based upon visible emissions referenced in the

preceding paragraph, that the Defendant has been, and, upon information and belief, continues to

be, in violation of 35 IAC § 212.123 at Powerton Unit 5. Pursuant to Section 113(a) of the Act, 42

D.S.C. § 7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123. Pursuant to Section 304(a) of the Act, 42 U.S.C. § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

149.    Defendant has violated, and continues to violate the 30 percent opacity limitation under 35 IAC § 212.123 at Powerton Unit 5. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

150.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FOURTEENTH CLAIM FOR RELIEF

(Title V Violations at Powerton Unit 5)

151.    Paragraphs 1-85 and 146-150 are realleged and incorporated herein by reference.

152.    As described above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Powerton Unit 5.

153.     Defendant has failed to submit a complete application for a Title V operating permit for Powerton Unit 5 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance -- including the requirement to meet opacity and PM limitations under the Illinois SIP -- and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

154.     Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Powerton Unit 5. Unless restrained by an order of this Court, these and similar violations will continue.

155.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTEENTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Powerton Unit 6)

156.     Paragraphs 1-85 are realleged and incorporated herein by reference.

157.     As qualifying source under 35 IAC § 212.123, Powerton Unit 6 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002

36

and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from the shared stack of Powerton Units 5 and 6 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

158.     The U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123, at Powerton Unit 6. Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123. Pursuant to Section 304(a) of the Act, 42 U.S.C. § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

159.     Defendant has violated and continues to violate the 30 percent opacity limitation under 35 IAC § 212.123 at Powerton Unit 6. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the

Act will continue.

160.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SIXTEENTH CLAIM FOR RELIEF

(Title V Violations at Powerton Unit 6)

161.     Paragraphs 1-85 and 156-160 are realleged and incorporated herein by reference.

162.     As described above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Powerton Unit 6.

163.     Defendant has failed to submit a complete application for a Title V operating permit for Powerton Unit 6 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

164.     Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Powerton Unit 6. Unless restrained by an order of this Court, these and similar violations will continue.

165.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31,1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SEVENTEENTH CLAIM FOR RELIEF

### (Illinois SIP Opacity Violations at Waukegan Unit 7)

166.    Paragraphs 1-85 are realleged and incorporated herein by reference.

167.    As a qualifying source under 35 IAC § 212.123, Waukegan Unit 7 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Waukegan Unit 7 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

168.    The U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123, at Waukegan Unit 7. Pursuant to Section 113(a) of the Act, 42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a) of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

169.    Defendant has violated and continues to violate the 30 percent opacity limitation under 35 IAC § 212.123 at Waukegan Unit 7. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

170.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## EIGHTEENTH CLAIM FOR RELIEF

(Title V Violations at Waukegan Unit 7)

171.     Paragraphs 1-85 and 166-170 are realleged and incorporated herein by reference.

172.     As described above, Defendant has violated, and, upon information and belief,

continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at

Waukegan Unit 7.

173.     Defendant has failed to submit a complete application for a Title V operating

permit for Waukegan Unit 7 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance and other specific information that may be necessary

to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or

to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42

U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

174.     Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Waukegan Unit 7. Unless restrained by an order of this Court,

these and similar violations will continue.

175.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## NINETEENTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Waukegan Unit 8)

176.      Paragraphs 1-85 are realleged and incorporated herein by reference.

177.      As a qualifying source under 35 IAC § 212.123, Waukegan Unit 8 is subject to

the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002

and, upon information and belief, continuing until the present, on numerous occasions, Defendant

emitted, and continues to emit, visible emissions from Waukegan Unit 8 that exceed the opacity

limits in Section 212.123 of the Illinois SIP.

178.      The U.S. EPA has found, based upon visible emissions referenced in the

preceding paragraph, that the Defendant has been, and, upon information and belief, continues to

be, in violation of 35 IAC § 212.123, at Waukegan Unit 8. Pursuant to Section 113(a) of the Act,

42 U.S.C. § 7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S.

EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 113(a)

of the Act, 42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV

that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to

Section 304(a) of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant,

U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to

be in violation of 35 IAC § 212.123.

179.    Defendant has violated, and continues to violate the 30 percent opacity limitation under 35 IAC § 212.123 at Waukegan Unit 8. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

180.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTIETH CLAIM FOR RELIEF

(Title V Violations at Waukegan Unit 8)

181.    Paragraphs 1-85 and 176-180 are realleged and incorporated herein by reference.

182.    As described above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Waukegan Unit 8.

183.    Defendant has failed to submit a complete application for a Title V operating permit for Waukegan Unit 8 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance -- including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP -- and other specific information that may be necessary to implement and enforce the

applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

184.     Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Waukegan Unit 8. Unless restrained by an order of this Court, these and similar violations will continue.

185.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-FIRST CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Will County Unit 1)

186.      Paragraphs 1-85 are realleged and incorporated herein by reference.

187.     As a qualifying source under 35 IAC § 212.123, Will County Unit 1 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Will County Unit 1 that exceed the opacity limits in Section 212.123.

188.     The U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that the Defendant has been, and, upon information and belief, continues to

43

be, in violation of 35 IAC § 212.123 at Will County Unit 1. Pursuant to Section 113(a) of the Act, 42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a) of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

189.    Defendant has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Will County Unit 1. This provision is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

190.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-SECOND CLAIM FOR RELIEF

(Title V Violations at Will County Unit 1)

191.    Paragraphs 1-85 and 186-190 are realleged and incorporated herein by reference.

192.    As set forth above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Will County Unit 1.

193.     Defendant has failed to submit a complete application for a Title V operating permit for Will County Unit 1 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance -- including the requirement to meet opacity limitations under the Illinois SIP -- and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503( c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

194.     Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Will County Unit 1. Unless restrained by an order of this Court, these and similar violations will continue.

195.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-THIRD CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Will County Unit 2)

196.     Paragraphs 1-85 are realleged and incorporated herein by reference.

197.     As a qualifying source under 35 IAC § 212.123, Will County Unit 2 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002

45

and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Will County Unit 2 that exceed the opacity limits in Section 212.123.

198.     The U.S. EPA has found, based upon visible emissions referenced in the preceding Paragraph, that the Defendant has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Will County Unit 2. Pursuant to Section 113(a) of the Act, 42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a) of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation of 35 IAC § 212.123.

199.     Defendant has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Will County Unit 2. This provision is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

200.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## **TWENTY-FOURTH CLAIM FOR RELIEF**

(Title V Violations at Will County Unit 2)

201.     Paragraphs 1-85 and 196-200 are realleged and incorporated herein by reference.

202.     As set forth above, Defendant has violated, and, upon information and belief, continues to be in violation of, the 30 percent opacity limitations under the Illinois SIP, 35 IAC § 212.123.

203.     Defendant has failed to submit a complete application for a Title V operating permit for Will County Unit 2 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance -- including the requirement to meet opacity limitations under the Illinois SIP -- and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503( c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

204.     Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Will County Unit 2. Unless restrained by an order of this Court, these and similar violations will continue.

205.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-FIFTH CLAIM FOR RELIEF

(Illinois SIP Opacity Violations at Will County Unit 3)

206.      Paragraphs 1-85 are realleged and incorporated herein by reference.

207.      As a qualifying source under 35 IAC § 212.123, Will County Unit 3 is subject to

the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002

and, upon information and belief, continuing until the present, on numerous occasions, Defendant

emitted, and continues to emit, visible emissions from Will County Unit 3 that exceed the opacity

limits in Section 212.123 of the Illinois SIP.

208.      The U.S. EPA has found, based upon visible emissions referenced in the

preceding paragraph, that the Defendant has been, and, upon information and belief, continues to

be, in violation of 35 IAC § 212.123 at Will County Unit 3. Pursuant to Section 113(a) of the Act,

42 U.S.C. §7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S.

EPA had found the Defendant to be in violation of 35 IAC § 212.123.  Pursuant to Section 304(a)

of the Act, 42 U.S.C.  § 7604(a)(1), the Citizen Plaintiffs notified the Defendant, U.S. EPA, and

Illinois by their Notice of Intent to Sue Letter that they had found the Defendant to be in violation

of 35 IAC § 212.123.

209.      Defendant has violated, and continues to violate, the 30 percent opacity limitation

under 35 IAC § 212.123 at Will County Unit 3. This provision is a federally enforceable Illinois

SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable

as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of

this Court, these and similar violations of the Act will continue.

210.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### TWENTY-SIXTH CLAIM FOR RELIEF

(Title V Violations at Will County Unit 3)

211.     Paragraphs 1-85 and 206-210 are realleged and incorporated herein by reference.

212.     As set forth above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Will County Unit 3.

213.     Defendant has failed to submit a complete application for a Title V operating permit for Will County Unit 3 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance -- including the requirement to meet opacity limitations under the Illinois SIP -- and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503( c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

214.     Defendant's conduct has violated and continues to violate Sections 502(a) and

503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Will County Unit 3. Unless restrained by an order of this Court,

these and similar violations will continue.

215.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set

forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-SEVENTH CLAIM FOR RELIEF

(PSD Violations at Will County Unit 4)

216.     Paragraphs 1-85 are realleged and incorporated herein by reference.

217.     Midwest Generation purchased the Will County Station coal-fired generating unit

from Commonwealth Edison Company ("ComEd") in 1999.  In or about February 2000, Defendant

commenced construction of one or more major modifications, as defined in the Act and the Illinois

SIP, at Will County Unit 4 without applying for or receiving a PSD permit. These modifications

included one or more physical changes or changes in the method of operation at Will County Unit

4, including, but not necessarily limited to, replacing boiler components. These modifications were

described in the NOV issued to Defendant by the U.S. EPA on July 31, 2007. These modifications

resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one

or more of the following: $NO_X$, $SO_2$, and/or PM. Defendant thereafter operated Will County

Station Unit 4 without first obtaining appropriate permits authorizing the modification and

subsequent operation of the units, and without installing and employing BACT to control emissions of $NO_X$, $SO_2$, and/or PM, as the Act requires.

218.    At the time of the alleged modifications, the area in which the Will County Station plant is located was designated as attainment for $SO_2$, PM, and $PM_{10}$, and nonattainment for $NO_X$ and ozone. Therefore, PSD regulations applied to the area for $SO_2$, PM and $PM_{10}$ and NSR regulations applied to NOx and ozone.  However, in 1996, the U.S. EPA granted a waiver to the areas that had been designated nonattainment for NOx and ozone to allow major stationary sources of $NO_X$ located in these areas to comply with the PSD construction and modification rules instead of the NSR construction and modification rules.  The waiver became effective February 26, 1996. 61 Fed. Reg. 2428 (January 26, 1996), codified at 40 C.F .R. § 52.726. Thus, at the time of the modifications alleged at Will County Station 4, that facility was subject to PSD requirements for all applicable pollutants.

219.    As a result of Defendant's operation of Will County Station Unit 4 following these unlawful modifications and in the absence of controls required under the PSD rules, $NO_X$, $SO_2$, and/or PM pollution have been, and continue to be, released into the atmosphere in amounts greater than that permitted under law.

220.    Defendant has not complied with the PSD requirements in the Illinois SIP with respect to the major modifications at Will County Unit 4. Among other things, Defendant has failed to apply for and obtain a PSD permit as required by the Illinois SIP prior to commencing construction and operation of the major modifications at Will County Unit 4. Defendant did not undergo a BACT determination in connection with these major modifications. Defendant failed to install BACT for control of $NO_X$, $SO_2$, and/or PM, pursuant to such determination, at Will County Unit 4.

221.     Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Illinois SIP, and Section 9.1 (d) of the Illinois Act, 415 ILCS 5/9.1(d), at Will County Unit 4. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

222.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-EIGHTH CLAIM FOR RELIEF

(Illinois SIP Opacity and PM Violations at Will County Unit 4)

223.     Paragraphs 1-85 and 216-222 are realleged and incorporated herein by reference.

224.     As a qualifying modified source under 35 IAC § 212.122, Will County Unit 4 is subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Will County Unit 4 that exceed the opacity limits in Section 212.122 of the Illinois SIP.

225.     In addition, Will County Unit 4 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 which governs PM limitations for such sources. As provided in 35 IAC § 212. 124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Will County Unit 4 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Will County Unit 4.

226.     In the alternative, as a qualifying source under 35 IAC § 212.123, Will County Unit 4 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Defendant emitted, and continues to emit, visible emissions from Will County Unit 4 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

227.     The U.S. EPA has found, based upon visible emissions referenced in paragraphs 272 and 274, that the Defendant has been, and upon information and belief, continues to be, in violation of 35 IAC § 212.123, at Will County Unit 4. Pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), the U.S. EPA notified the Defendant and Illinois by the NOV that the U.S. EPA had found the Defendant to be in violation of 35 IAC § 212.123.

228.     Defendant has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Will County Unit 4. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

229.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-NINTH CLAIM FOR RELIEF

(Title V Violations at Will County Unit 4)

230.     Paragraphs 1-85 and 216-229 are realleged and incorporated herein by reference.

231.     As set forth above, on December 15, 1999, Defendant commenced operation of Will County Unit 4 with one or more major modifications, as defined under the PSD regulations and incorporated into the Illinois SIP. As a result, these modifications triggered the requirements to obtain a PSD permit establishing emissions limitations that meet BACT and operate in compliance with BACT. Defendant failed to satisfy these requirements.

232.     Additionally, as described above, Defendant has violated, and, upon information and belief, continues to be in violation of, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.123, at Will County Unit 4.

233.     Defendant has failed to submit a complete application for a Title V operating permit for Will County Unit 4 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance -- including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP -- and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).

234.     Defendant's conduct has violated and continues to violate Sections 502(a) and 503(c) of the Act, 42 U.S.C. §§ 7661a(a) and 7661b(c), 40 C.F.R. §§ 70.5-70.6, and the Illinois

CAAPP, 415 ILCS 5/39.5, at Will County Unit 4. Unless restrained by an order of this Court, these and similar violations will continue.

235.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the Plaintiffs in Intervention request that this Court:

1.     Permanently enjoin Defendant from operating any of the plants subject to this action, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2.     Order Defendant to apply for new source review permits under Paragraphs C and/or D of Title I of the Clean Air Act, as appropriate, that conform to the permitting requirements in effect at the time of the permitting action, for each pollutant in violation of the new source review requirements of the Clean Air Act.

3.     Order Defendant to remedy its past violations by, among other things, requiring Defendant to install and operate the best available control technology or lowest achievable emission rate, as appropriate, at the units subject to this action, for each pollutant in violation of the new source review requirements of the Clean Air Act;

4.      Order Defendant to apply and/or amend applications for permits that are in conformity with the requirements of the Illinois SIP opacity and PM limitations and the Title V program;

5.      Order Defendant to achieve, maintain, and demonstrate compliance with the Clean Air Act and applicable requirements established there under, including provisions of the Illinois SIP described above;

6.      Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred that would require it to meet the requirements of PSD or Nonattainment NSR, as appropriate, and report the results of these audits to the Plaintiffs in Intervention;

7.      Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

8.      Assess a civil penalty against Defendant of up to $25,000 per day for each violation of the Clean Air Act and applicable regulations occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009;

9.      Award Plaintiffs their costs of this action; and,

10.     Grant such other relief as the Court deems just and proper.

Dated: June 2, 2010

Respectfully submitted,

/s/ Michael C. Soules

Faith E. Bugel, IL Bar # 6255685
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1300
Chicago, IL 60601-2110
(312) 673-6500
(312) 795-3730 (facsimile)
fbugel@elpc.org

Michael C. Soules, MN Bar # 0387936
Environmental Law & Policy Center
2801 21st Avenue South, Suite 132H
Minneapolis, MN 55407
(312) 795-3738

*Attorneys for Respiratory Health Association
of Metropolitan Chicago and Environmental
Law & Policy Center*

Keith Harley, IL Bar # 6198207
Chicago Legal Clinic
 205 W. Monroe, Floor 4
Chicago, IL 60606
(312) 726-2938
*Attorney for Citizens Against Ruining the
Environment and Sierra Club*

**ELECTRONICALLY FILED**

Shannon Fisk, IL Bar # 6269746
Natural Resources Defense Council
2 N. Riverside Plaza, Suite 2250
Chicago, IL 60606
(312) 651-7904
*Attorney for Natural Resources Defense
Council*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on June 2, 2010, a copy of the foregoing First Amended Complaint in Intervention was filed electronically with the Clerk of Court using CM/ECF, which will send notification to the following Counsel of Record:

*Attorneys for the United States*
Jennifer Lukas-Jackson
Kristin M. Furrie
Justin Aaron Savage
U.S. Department of Justice
ENRD Mailroom 2121
601 D St. N.W.
Washington, DC 20004
(202) 305-2332
jennifer.lukas-jackson@usdoj.gov
kristin.furrie@usdoj.gov
justin.savage@usdoj.gov

Susan M. Tennenbaum
U.S. Environmental Protection Agency
77 West Jackson Boulevard
Chicago, IL 60604
(312) 886-2944
tennenbaum.susan@epa.gov

Jonathan C. Haile
United States Attorney's Office (NDIL)
219 South Dearborn Street, Suite 500
Chicago, IL 60604
(312) 353-5300
jonathan.haile@usdoj.gov

*Attorneys for the State of Illinois*
Rose-Marie Cazeau
Stephen J. Sylvester
Andrew Armstrong
Illinois Attorney General's Office
State of Illinois
69 W. Washington St., 18th Floor
Chicago, IL 60602
(312) 814-2521
rcazeau@atg.state.il.us
ssylvester@atg.state.il.us
aarmstrong@atg.state.il.us

*Attorneys for Midwest Generation, LLC*
Daniel E. Reidy
Brian J. Murray
Jones Day
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601-1692
(312) 782-3939
dereidy@jonesday.com
bjmurray@jonesday.com

James M. Jones
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219-2514
(412) 391-3939
jmjones@jonesday.com

Kevin P. Holewinksi
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3939
kpholewinski@jonesday.com

/s/ Michael C. Soules
Michael C. Soules