## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS,  ) ) ) ) | Judge John W. Darrah Magistrate Judge Maria Valdez |
| Plaintiffs,  ) ) | |
| CITIZENS AGAINST RUINING THE ENVIRONMENT; THE ENVIRONMENTAL LAW AND POLICY CENTER; NATURAL RESOURCES DEFENSE COUNSEL, INC.; RESPIRATORY HEALTH ASSOCIATION OF METROPOLITAN CHICAGO; and SIERRA CLUB,  ) ) ) ) ) ) ) ) ) | Civil Action No. 09-cv-05277 |
| Intervenor-Plaintiffs,  ) ) | |
| v.  ) ) | |
| MIDWEST GENERATION, LLC, EDISON MISSION ENERGY, and COMMONWEALTH EDISON COMPANY,  ) ) ) ) | |
| Defendants.  ) ) | |

## FIRST AMENDED COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), and the State of Illinois ("Illinois"), by and through Lisa Madigan, Attorney General of the State of Illinois on her own motion, allege as follows:

## NATURE OF THE ACTION

1.       This is a civil action brought against Midwest Generation, LLC ("Midwest

Gen"), Commonwealth Edison Company ("ComEd"), and Edison Mission Energy ("EME")

(collectively, "Defendants") pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act"

or "CAA"), 42 U.S.C. §§ 7413(b) and 7477, for injunctive relief and assessment of civil penalties

for violations of: (1) the Prevention of Significant Deterioration ("PSD") provisions of the Act,

42 U.S.C. §§ 7470-92, and the Illinois Environmental Protection Act ("Illinois Act"), 415 Illinois

Codified Statutes ("ILCS") 5/9.1(d); (2) the visible air pollutant ("opacity") and particulate

matter ("PM") limitations under the State Implementation Plan ("SIP") adopted by Illinois and

approved by U.S. EPA pursuant to CAA Section 110, 42 U.S.C. § 7410; and (3) Title V of the

Act, 42 U.S.C. § 7661-7661(f), the Title V regulations at 40 C.F.R. Part 70, and the Illinois Act,

including the Title V permit program, 415 ILCS 5/39.5.

2.       Midwest Gen is the current owner and operator of the electric generating units

located at the following six plants:  the Crawford Station coal-fired electricity generating power

plant in Chicago, Illinois ("Crawford"); the Fisk Station coal-fired electricity generating power

plant in Chicago, Illinois ("Fisk"); the Joliet Station coal-fired electricity generating power plant

in Joliet, Illinois ("Joliet"); the Powerton Station coal-fired electricity generating power plant in

Pekin, Illinois ("Powerton"); the Waukegan Station coal-fired electricity generating power plant

in Waukegan, Illinois ("Waukegan"); and the Will County Station coal-fired electricity power

plant in Romeoville, Illinois ("Will County").  In 1999, ComEd sold the plants and Midwest Gen

acquired them.  Prior to the sale, ComEd had modified each of the six plants.  ComEd

subsequently operated the plants and the individual boiler units at Crawford, Fisk, Joliet,

Powerton, Waukegan, and Will County without first obtaining appropriate permits authorizing the modification and subsequent operation of the units, and without installing and employing the best available control technology ("BACT") to control emissions of nitrogen oxides ("NO$_x$"), sulfur dioxide ("SO$_2$"), and/or PM, as the CAA requires. After acquiring the six plants, Midwest Gen subsequently modified Will County, and following this and all prior modifications, thereafter operated Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County without first obtaining appropriate permits authorizing the modification and subsequent operation of the units, and without installing and employing BACT to control emissions of NO$_x$, SO$_2$, and/or PM, as the CAA and the Illinois Act require.

3.    As a result of ComEd's and Midwest Gen's operation of the generating units following these unlawful modifications and the absence of appropriate controls, significant amounts of NO$_x$, SO$_2$, and/or PM pollution each year have been, and continue to be, released into the atmosphere.

4.    Midwest Gen has operated, and upon information and belief, continues to operate, Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County while repeatedly exceeding opacity and PM limitations established in federally enforceable provisions of the Illinois SIP.

5.    After the modifications at the plants, neither ComEd nor Midwest Gen submitted a permit application or amended a permit application under Title V of the CAA for each plant that contained all applicable requirements, including various requirements related to PSD and opacity and PM limitations triggered by the modifications.

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over the subject matter of this action pursuant to CAA

Sections 113(b) and 167, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331,

1345, and 1355.

7.     Venue is proper in this District pursuant to CAA Sections 113(b), 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b), (c) and 1395(a), because Midwest Gen and ComEd reside

in this District and have their principal places of business in this District, the violations have

occurred and are occurring in this District, and five of the six plants at issue are located in this

District.

**NOTICES**

8.     U.S. EPA issued a Notice and Finding of Violation ("NOV") to ComEd and

Midwest Gen, at which time it also provided a copy to Illinois, in accordance with CAA Sections

113(a)(1) and (b)(1), 42 U.S.C. §§ 7413(a)(1), (b)(1).  The NOV, dated July 31, 2007, docket no.

EPA-5-07-IL-11, was originally sent to ComEd and Midwest Gen on or about July 31, 2007.

9.     While EME was not included in the July 31, 2007 NOV, EME was on actual

notice of the alleged violations set forth in that NOV, because it is the parent company of

Midwest Gen.  EME's actual notice is reflected in, among other things, its subsequent filings

with the Securities and Exchange Commission ("SEC"), which discuss the July 31, 2007 NOV.

Even so, U.S. EPA provided EME with a copy of this NOV on or about April 2, 2010.

10.    The NOV alleged, among other things, violations of:  (1) the Act's PSD program,

42 U.S.C. §§ 7470-7492, and its implementing regulations; (2) standards for opacity and PM

under federally approved Illinois SIP provisions, 35 Illinois Administrative Code ("IAC")

§§ 212.122, 212.123, and 212.204; and (3) Title V of the Act, 42 U.S.C. §§ 7661-7661f, at

Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County.

11.     The 30-day period between issuance of the NOV and commencement of a civil

action, required under CAA Section 113, 42 U.S.C. § 7413, has elapsed.

12.     The United States has provided notice of the commencement of this action to the

Illinois Environmental Protection Agency ("Illinois EPA") as required by CAA Section 113(b),

42 U.S.C. § 7413(b).

## AUTHORITY

13.     Authority to bring this action is vested in the Attorney General of the United

States by CAA Section 305, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

14.     Authority to bring this action is vested in the Attorney General of Illinois by

Section 42(e) of the Illinois Act, 415 ILCS 5/42(e).

## THE DEFENDANTS

15.     Midwest Gen is the current owner and operator of Crawford, Fisk, Joliet,

Powerton, Waukegan, and Will County.  Each of these plants generates, and at all relevant times

has generated, electricity from coal-fired, steam generating boilers.  Midwest Gen is an indirect

subsidiary of EME.

16.     Midwest Gen is a Delaware corporation and is registered to do business in Illinois.

Its principal place of business is 235 Remington Boulevard, Suite A, Bolingbrook, Illinois 60440.

17.     Midwest Gen is a corporate entity and, as such, is a "person" within the meaning

of CAA Section 302(e), 42 U.S.C. § 7602(e).

18.   ComEd is the former owner and operator of Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County. Each of these plants generates, and at all relevant times has generated, electricity from coal-fired, steam generating boilers.

19.   ComEd is an Illinois corporation. Its principal place of business is 440 South LaSalle Street, Chicago, Illinois 60605.

20.   ComEd is a corporate entity and, as such, is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

21.   EME is a Delaware corporation. Its principal place of business is 18101 Von Karman Avenue, Suite 1700, Irvine, California 92612. Between 1993 and 1999, EME was registered to do business in the State of Illinois. On information and belief, EME still had employees working in Illinois as of 2009, and thus paid income tax for those employees to the State of Illinois.

22.   EME is a corporate entity and, as such, is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602.

## STATUTORY BACKGROUND

23.   The Clean Air Act is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

### The National Ambient Air Quality Standards

24.   Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of U.S. EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants ("criteria pollutants") for which air quality criteria

have been issued pursuant to CAA Section 108, 42 U.S.C. § 7408. The primary NAAQS are to

be adequate to protect public health with an adequate margin of safety, and the secondary

NAAQS are to be adequate to protect public welfare from any known or anticipated adverse

effects associated with the presence of the air pollutant in the ambient air. The NAAQS

promulgated by U.S. EPA pursuant to this provision are set forth in 40 C.F.R. Part 50.

25.     Under CAA Section 107(d), 42 U.S.C. § 7407(d), each state is required to

designate those areas within its boundaries where the air quality is better or worse than the

NAAQS for each criteria pollutant or where the air quality cannot be classified due to insufficient

data. An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area

that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due

to insufficient data is "unclassifiable."

26.     At the time of the alleged modifications, Powerton was located in an area that had

been designated as being unclassifiable or in attainment with the NAAQS for $NO_x$, $SO_2$, PM,

$PM_{10}$ (PM having a diameter less than 10 microns), $PM_{2.5}$ (PM having a diameter less than

2.5 microns), and ozone.

27.     At the time of each of the alleged modifications, Crawford, Fisk, Joliet,

Waukegan, and Will County were located in an area designated as attainment for $SO_2$, PM, and

$PM_{10}$, and nonattainment for $NO_x$ and ozone. However, U.S. EPA granted a waiver to these

areas to allow major stationary sources of $NO_x$ located in these areas to meet less stringent PSD

requirements for $NO_x$ and the one-hour ozone standard ($NO_x$ is a precursor to ozone). The

waiver became effective February 26, 1996. 61 Fed. Reg. 2428 (January 26, 1996), codified at

40 C.F.R. § 52.726. Thus, at the time of each modification, these sources had to comply with

- 7 -

PSD. However, effective June 15, 2004, U.S. EPA designated these areas as moderate nonattainment for the eight-hour ozone standard. 69 Fed. Reg. 23858 (April 30, 2004), codified at 40 C.F.R. § 81.314. As part of this rulemaking, U.S. EPA specified that a CAA Section 182(f), 42 U.S.C. § 7511a(f), $NO_x$ waiver granted under the one-hour ozone standard does not apply to areas designated as nonattainment under the newly issued eight-hour ozone standard. 40 C.F.R. § 51.913(c). U.S. EPA has not granted these areas a CAA Section 182(f) $NO_x$ waiver for the eight-hour ozone standard that has been in effect since January 30, 2006. 70 Fed. Reg. 71612, 71661. Therefore, since at least January 30, 2006, these five facilities have been located in areas that U.S. EPA has designated as nonattainment for the eight-hour ozone NAAQS.

28.     Since April 5, 2005, Crawford, Fisk, Joliet, Waukegan, and Will County have been located in areas designated as nonattainment for $PM_{2.5}$.

The Prevention of Significant Deterioration Requirements

29.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. These provisions are referred to collectively as the "PSD program."

- 8 -

30.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, each State must adopt and submit to U.S. EPA for approval a State Implementation Plan ("SIP") that includes, among other things, regulations to prevent the significant deterioration of air quality under CAA Sections 161-165, 42 U.S.C. §§ 7471-7475.

31.     Pursuant to CAA Section 302(q), 42 U.S.C. § 7602(q), an applicable implementation plan is the implementation plan, or most recent revision thereof, which has been approved by U.S. EPA pursuant to CAA Section 110, 42 U.S.C. § 7410, or promulgated by U.S. EPA pursuant to CAA Section 110(c), 42 U.S.C. § 7410(c), and which implements the relevant requirements of the Act.

32.     A state may comply with CAA Section 161, 42 U.S.C. § 7471, by having its own PSD regulations approved by U.S. EPA as part of its SIP, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.  If a state does not have a PSD program that has been approved by U.S. EPA and incorporated into the SIP, then the federal PSD regulations set forth at 40 C.F.R. § 52.21 may be incorporated by reference into the SIP.  40 C.F.R. § 52.21(a).

33.     On August 7, 1980, U.S. EPA determined that the Illinois SIP did not meet the requirements of CAA Section 161, 42 U.S.C. § 7471, and incorporated the federal PSD regulations at 40 C.F.R. § 52.21(b) through (w) into the Illinois SIP.  40 C.F.R. § 52.738; 45 Fed. Reg. 52841 (August 7, 1980), as amended at 46 Fed. Reg. 9580, 9584 (Jan. 29, 1981). The regulations appearing at 40 C.F.R. § 52.21 were incorporated into and part of the Illinois SIP at the time of the violations alleged in this case.  40 C.F.R. Part 52 was adopted pursuant to the authority of CAA Section 165.  All citations to the PSD regulations herein refer to the provisions of 40 C.F.R. § 52.21 incorporated into and part of the Illinois SIP as applicable at the time of the

alleged violations. U.S. EPA has delegated to Illinois the authority to review and process PSD permit applications. 46 Fed. Reg. 9580 (Jan. 29, 1981).

34.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as attainment, unless a permit has been issued that comports with the requirements of CAA Section 165 and the facility employs BACT for each pollutant subject to regulation under the Act that is emitted from the facility. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("Btus") per hour heat input and that emit, or have the potential to emit, one hundred tons per year or more of any pollutant to be "major emitting facilities."

35.     Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(c), defines "construction" as including "modification" (as defined in CAA Section 111(a)). "Modification" is defined in CAA Section 111(a), 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

36.     Section 169(3) of the Act, 42 U.S.C. § 7479(3), defines BACT, in pertinent part, as "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility. . ."

- 10 -

37. As set forth at 40 C.F.R. § 52.21(i), any major stationary source in an attainment or unclassifiable area that intends to construct a major modification must first obtain a PSD permit.

38. Under the PSD program, a "major stationary source" is defined to include fossil-fueled steam electric generating plants of more than 250 million Btus per hour heat input that emit, or have the potential to emit, one hundred tons per year or more of any regulated air pollutant. 40 C.F.R. § 52.21(b)(1)(i)(a).

39. "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as "any physical change or change in the method of operation of a major stationary source that would result in a significant net emission increase of any pollutant subject to regulation under the Act."

40. "Net emissions increase" means "the amount by which the sum of the following exceeds zero: (a) [a]ny increase in actual emissions [as defined by 40 C.F.R. § 52.21(b)(21)] from a particular physical change or change in the method of operation at a stationary source; and (b) [a]ny other increases and decreases in actual emissions [as defined by 40 C.F.R. § 52.21(b)(21)] at the source that are contemporaneous with the particular change and are otherwise creditable." 40 C.F.R. § 52.21(b)(3)(i). A "significant" net emissions increase means an increase in the rate of emissions that would equal or exceed any of the following rates for the following pollutants: 40 tons per year of $SO_2$; 40 tons per year of $NO_x$; and 25 tons per year of PM. 40 C.F.R. § 52.21(b)(23)(i). Effective July 15, 2008, $SO_2$ is regulated as a precursor to $PM_{2.5}$, and $NO_X$ is regulated as a presumed precursor to $PM_{2.5}$. 73 Fed. Reg. 28321, 28327-28 (May 16, 2008).

41. As set forth at 42 U.S.C. § 7475(a)(4) and 40 C.F.R. § 52.21(j), a source with a major modification in an attainment or unclassifiable area must install and operate BACT, as defined in 40 C.F.R. § 52.21(b)(12) and 42 U.S.C. § 7479(3), where the modification would result in a significant net emissions increase of a pollutant subject to regulation under the Act. 42 U.S.C. § 7475(a)(4).

42. Any application for a PSD permit must be accompanied by an analysis of ambient air quality in the area. 40 C.F.R. § 52.21(m).

43. The PSD program also requires any person who elects to modify a major source in an attainment area to demonstrate, before construction begins, that the construction will not cause or contribute to air pollution that is in violation of any national ambient air quality standard or the maximum allowable increase in emissions of that pollutant. 40 C.F.R. § 52.21(k).

44. In addition, the owner or operator of a proposed source or modification must submit all information necessary to perform any analysis or make any determination required under 40 C.F.R. § 52.21(n).

45. Though PSD is a preconstruction permitting program, the Clean Air Act and the implementing regulations codified at 40 C.F.R. § 52.21, establish requirements for the lawful operation of the source following a modification.

The Nonattainment New Source Review Requirements

46. Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth provisions for New Source Review ("NSR") requirements for areas designated as being in nonattainment with the NAAQS standards. These provisions are referred to collectively as the "Nonattainment NSR program." The Nonattainment NSR program is intended to reduce emissions of air pollutants in

areas that have not attained the NAAQS, so that these areas make progress toward meeting the NAAQS.

47.     Under Section 172(c)(5) of the Nonattainment NSR provisions of the Act, 42 U.S.C. § 7502(c)(5), each state is required to adopt Nonattainment NSR SIP rules that include provisions requiring permits to conform to the requirements of CAA Section 173, 42 U.S.C. § 7503, for the construction and operation of modified major stationary sources within nonattainment areas. Section 173 of the Act, in turn, sets forth a series of minimum requirements for the issuance of permits for major modifications to major stationary sources within nonattainment areas. 42 U.S.C. § 7503.

48.     Section 173(a) of the Act, 42 U.S.C. 7503(a), provides that construction and operating permits may be issued, if, among other things:

"(a) sufficient offsetting emission reductions have been obtained to reduce existing emissions to the point where reasonable further progress towards meeting the national ambient air quality standards is maintained; and (b) the pollution controls to be employed will reduce emissions to the 'lowest achievable emission rate.'"

49.     Section 182(f) of the Act, 42 U.S.C. § 7511a(f), enacted as part of the Clean Air Act Amendments of 1990, sets forth additional requirements to take effect no later than November 15, 1992, regarding the construction and operation of new or modified major stationary sources of $NO_x$ located within nonattainment areas for ozone. CAA Section 182(f) defines $NO_x$ as a pollutant that must be treated as a contributor to the criteria pollutant ozone in an ozone nonattainment area. 42 U.S.C. § 7511a(f). For the purposes of CAA Section 182, a "major stationary source" of $NO_x$ is one that emits or has the potential to emit 100 tons per year

or more of a regulated pollutant. 40 C.F.R. § 52.21(b)(1)(i). A "significant" net emissions

increase of $NO_x$ is one that would result in increased emissions of 40 tons per year or more.

42 U.S.C. § 7511a; 40 C.F.R. § 52.21(b)(23)(i).

      50.     Upon U.S. EPA approval, state SIP requirements are federally enforceable under

CAA Section 113, 42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.

Title V

      51.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit

program for certain sources, including "major sources." The purpose of Title V is to ensure that

all "applicable requirements" for compliance with the Act, including PSD and SIP requirements,

are collected in one place.

      52.     A "major source" for purposes of Title V is defined, among other things, as a

source with a potential to emit greater than 100 tons per year of any criteria pollutant.

42 U.S.C. § 7661(2).

      53.     Pursuant to CAA Section 502(b), 42 U.S.C. § 7661a(b), U.S. EPA promulgated

regulations implementing Title V regulations, which are codified at 40 C.F.R. Part 70.

57 Fed. Reg. 32,250 (July 21, 1992).

      54.     Illinois' Title V operating permit program was granted interim approval by

U.S. EPA on March 7, 1995 (60 Fed. Reg. 12478) and final approval by U.S. EPA on

December 4, 2001 (66 Fed. Reg. 62946). Illinois' Title V permit program, the Clean Air Act

Permit Program ("Illinois CAAPP"), is codified at 415 ILCS 5/39.5. The CAAPP is not part of

the Illinois SIP, but is a federally enforceable program.

55.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Illinois CAAPP,

415 ILCS 5/39.5, have at all relevant times made it unlawful for any person to operate a major

source except in compliance with a permit issued by a permitting authority under Title V.

56.     Section 503(c) of the Act, 42 U.S.C. § 7661b(c), the Title V regulations at

40 C.F.R. §§ 70.5(a), (c), and (d), and the Illinois CAAPP, 415 ILCS 5/39.5, have at all relevant

times required the owner or operator of a source to submit an application for a Title V permit that

is timely and complete and includes, among other things:  the citations and descriptions of all

requirements applicable to the source (including any requirement to meet BACT pursuant to PSD

and to comply with the SIP opacity and PM limitations); a description of, and compliance plan

for, requirements for which the source is not in compliance; and a certification by a responsible

official of the truth, accuracy, and completeness of the application.

57.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the

Act, 40 C.F.R. § 70.6(a)(1), and the Illinois CAAPP, 415 ILCS 5/39.5(7)(a) and (c), have at all

relevant times required that each Title V permit include, among other things, enforceable

emission limitations and such other conditions as are necessary to assure compliance with

applicable requirements of the CAA and the requirements of the applicable SIP, including any

applicable PSD requirement to comply with BACT and any applicable opacity and PM

limitations.

The Illinois SIP Construction and Operating Permit Program

58.     Prior to the approval of the Illinois CAAPP, the Illinois regulations contained a

general state construction and operating permit program that required, among other things, that

"air contaminant sources" obtain operating permits and that prohibited the operation of such

sources in violation of these permits. This program was approved by U.S. EPA as part of the Illinois SIP. 57 Fed. 59,928 (Dec. 7, 1992). This program was later amended by the Illinois CAAPP, 415 ILCS 5/39.5, as described above.

### The Illinois SIP Opacity (Visible Emissions) Limit

59.     The Illinois SIP codifies visible emissions standards, in relevant sections, at 35 IAC §§ 212.122 and 212.123. 57 Fed. Reg. 61834, 61837 (December 29, 1992). The Illinois SIP at 35 IAC § 212.122, prohibits the emission of PM having an opacity greater than 20 percent from any fuel combustion emission source that has a heat input of greater than 250 million Btus per hour for which construction or modification commenced on or after April 14, 1972. A "modification" is defined under 35 IAC § 201.102 as "any physical change in, or change in the method of operations of, an emission source or of air pollution control equipment which increases the amount of any specified air contaminant emitted by such source or equipment . . ." There are narrow exceptions to the opacity limits of 35 IAC § 212.122, including, but not limited to, allowing units subject to this limit to have opacity up to 40 percent for a period or periods aggregating three minutes in any 60 minute period, provided that other conditions are satisfied.

60.     The Illinois SIP at 35 IAC § 212.123 prohibits emissions of PM having an opacity greater than 30 percent from any emissions source other than those sources subject to 35 IAC § 212.122 discussed in the preceding paragraph. There are also narrow exceptions to this rule, including, but not limited to, allowing units subject to this limit to have an opacity up to 60 percent for a period or periods aggregating eight minutes in any 60 minute period, provided that other conditions are satisfied.

- 16 -

The Illinois SIP PM Emission Limit

61.     Illinois SIP provision 35 IAC § 212.204 limits PM emissions to 0.1 lb. per million

Btus in any one hour period for fuel combustion emissions units that burn solid fuel exclusively

and for which modification was commenced after April 14, 1972. 58 Fed. Reg. 54294 (October

21, 1993). For sources subject to this provision, an exceedance of the opacity limits at

35 IAC § 212.122 constitutes a separate violation of the particulate emission limit at

35 IAC § 212.204. 35 IAC § 212.124(d)(2)(A); 57 Fed. Reg. 61837.

Monitoring, Recordkeeping, and Reporting Requirements

62.     The Illinois SIP directs owners and operators of large coal-fired generating units

to install, operate, calibrate, and maintain continuous opacity monitoring equipment.

35 IAC § 201.401(a) (Nov. 26, 1991). The SIP also requires owners and operators of coal-fired

units such as Midwest Gen to file quarterly reporting of opacity exceedances with the State of

Illinois. 35 IAC §§ 201.405(a), (c), (e) (Dec. 5, 1989). As such, Midwest Gen is on actual notice

of each and every violation reported to Illinois EPA in its quarterly reports of opacity

exceedances, sometimes referred to as quarterly excess emission reports.

63.     The state operating permits that have been issued for Midwest Gen's coal-fired

units impose similar record keeping and reporting requirements. *See, e.g.*, Illinois EPA,

Crawford 7 Operating Permit, Special Condition 11(a) (Oct. 15, 2001) (requiring Midwest Gen

to submit quarterly excess emission reports).

## CLEAN AIR ACT AND ILLINOIS ACT ENFORCEMENT PROVISIONS

64.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide

that the Administrator may bring a civil action in accordance with CAA Section 113(b)

whenever, on the basis of any information available, the Administrator finds that any person has violated, or is in violation of, any other requirement or prohibition of, among other things: (1) the PSD requirements of CAA Section 165(a), 42 U.S.C. § 7475(a); (2) the federally enforceable provisions of the Illinois SIP or any permit issued thereunder; and (3) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder.

65.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action against "the owner or operator of an affected source, a major emitting facility, or a major stationary source" or "any other person" for a permanent or temporary injunction and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring after March 15, 2004; and $37,500 per day for each such violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, among other things, the requirements or prohibitions described in the preceding paragraph.

66.     Sections 111, 112, 165, and 173 of the CAA, and the federal regulations adopted pursuant thereto, are enforceable by Illinois pursuant to Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), which provides, in relevant part, that "No person shall . . . (2) construct, install, modify or operate any equipment, building, facility, source or installation which is subject to regulation under Sections 111, 112, 165, or 173 of the Clean Air Act, as now or hereafter amended, except in compliance with the requirements of such Sections and federal regulations adopted pursuant thereto . . ." Pursuant to Section 42 of the Illinois Act, 415 ILCS 5/42, Illinois

may commence a civil action for injunctive relief and civil penalties. Pursuant to Section 110 of the Act, 42 U.S.C. § 7410, U.S. EPA has approved the Illinois Act, 415 ILCS 5/9.1(d), as part of the Illinois SIP, and it is therefore federally enforceable. 40 C.F.R. § 52.720(c)(84)(i); 57 Fed. Reg. 59928 (Dec. 17, 1992).

67.     40 C.F.R. § 52.23 provides, among other things, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to CAA Section 113, 42 U.S.C. § 7413.

68.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an action for injunctive relief, as necessary, to prevent the construction, modification, or operation of a major emitting facility that does not conform to the PSD requirements in Part C of the Act.

## DEFENDANTS' COAL-FIRED GENERATING UNITS

69.     At times pertinent to this civil action, Midwest Gen and/or ComEd owned and operated:

A)     the Crawford Station, located in Chicago, Illinois. The Crawford Station operates two coal-fired generating units, Crawford Unit 7 and Crawford Unit 8.

B)     the Fisk Station, located in Chicago, Illinois. The Fisk Station operates one coal-fired generating unit, Fisk Unit 19.

C)     the Joliet Station, located in Joliet, Illinois. As relevant to this action, the Joliet Station operates three coal-fired generating units, Joliet Unit 6, Joliet Unit 7, and Joliet Unit 8.

- 19 -

D)     the Powerton Station, located in Pekin, Illinois. The Powerton Station operates

two coal-fired generating units, Powerton Unit 5 and Powerton Unit 6.

E)     the Waukegan Station, located in Waukegan, Illinois. The Waukegan Station

operates two coal-fired generating units, Waukegan Unit 7 and Waukegan Unit 8.

F)     the Will County Station, located in Romeoville, Illinois. The Will County Station

operates four coal-fired generating units, Will County Unit 1, Will County Unit 2,

Will County Unit 3, and Will County Unit 4.

70.     At all times pertinent to this civil action, the Crawford Station, Crawford Unit 7,

Crawford Unit 8, the Fisk Station, Fisk Unit 19, the Joliet Station, Joliet Unit 6, Joliet Unit 7,

Joliet Unit 8, the Powerton Station, Powerton Unit 5, Powerton Unit 6, the Waukegan Station,

Waukegan Unit 6, Waukegan Unit 7, Waukegan Unit 8, the Will County Station, Will County

Unit 1, Will County Unit 2, Will County Unit 3, and Will County Unit 4, were each a "major

emitting facility" and a "major stationary source," within the meaning of the Act and the PSD

regulations in the Illinois SIP for $NO_x$, $SO_2$, and/or PM.

71.     Each stack servicing each unit is equipped with continuous opacity monitoring

equipment systems that continuously monitor opacity.

72.     At all times pertinent to this civil action, Crawford, Fisk, Joliet, Powerton,

Waukegan, and Will County were each a "major source" within the meaning of Title V of the

Act and the Illinois CAAPP.

73.     On September 7, 1995, ComEd submitted Title V applications for each of the six

plants. On September 29, 2005, Illinois EPA issued final Title V permits for each of Crawford,

Fisk, Joliet, Powerton, and Will County. On February 7, 2006, Illinois EPA issued a final Title V

permit for Waukegan. On February 16, 2006 for the Crawford, Fisk, Joliet, Powerton and Will

County, and on March 16, 2006 for Waukegan, the Illinois Pollution Control Board granted

Midwest Gen's motions to stay the effective date of the final Title V permits pending resolution

of contested issues.

## TRANSACTIONS AMONG THE DEFENDANTS

74.     On March 22, 1999, ComEd and EME entered into an Asset Sale Agreement (the

"Agreement") (attached as Appendix A), wherein ComEd agreed to sell and EME agreed to

purchase, *inter alia*, Crawford, Fisk, Waukegan, Will County, Joliet, and Powerton (collectively

referred to the "Assets" in the Agreement) subject to certain conditions.

75.     Section 2.3 of the Agreement provides, in pertinent part, that EME:

> will assume and be responsible and liable for . . . (ii) the following
> obligations and liabilities (collectively, "[EME]'s Liabilities"):
> (a) Environmental Liabilities Subject to and except for ComEd's
> obligations pursuant to [other sections not relevant here] (i)
> responsibilities for compliance and liability for any non-
> compliance by the Assets with Environmental Laws (including
> fine, penalties and costs to correct) . . . *whether occurring,
> existing or arising on, before or after the Closing* . . . .
> (collectively, 'Environmental Liabilities').

(emphasis added).

76.     The Agreement's definition of "Environmental Laws" includes requirements

relating to:  "air emissions" and the "impact upon human health or the environment" of "matters

governed by . . . the Clean Air Act (42 U.S.C. § 7401 et seq.) . . . and all state counterpart

statutes."

77.     While EME's assumption of Environmental Liabilities excludes certain matters,

none of those exclusions apply here.

- 21 -

78.     In Section 5.9 of the Agreement, EME acknowledges in relevant part:

(A) Environmental Condition or Environmental Liabilities exist or
may exist with respect to the Sites or in connection with the Assets.
(B) [EME] has received ComEd's environmental reports and has
had the opportunity to perform such other due diligence
investigation as it deems reasonable and necessary; (C) the
economic and legal consequences of Environmental Liabilities
associated with the Assets and the Sites, including Environmental
Conditions, have been the subject of negotiation between the
parties and the Purchase Price reflects any actual or potential
environmental impairment whether known or unknown, fixed or
contingent . . . .

79.     Section 11.6 of the Agreement provides that EME "may assign its rights

hereunder . . . to a corporation, partnership or limited liability company all of the outstanding-

equity interests of which are owned or controlled by [EME]." If EME assigned its rights, the

Agreement requires that the "assignee shall assume in writing all of [EME]'s obligations

hereunder . . . with respect to the rights so assigned."

80.     Section 4.1 of the Agreement provides, in relevant part: "Prior to Closing,

Purchaser [EME] will be qualified to do business in the State of Illinois."

81.     In Section 11.14 of the Agreement, EME consents to jurisdiction of any federal

court in the State of Illinois for the resolution of disputes arising under the dispute resolution

terms of the Agreement.

82.     In Edison Mission Energy (December 31, 2009) Form 10-K Report, filed with the

SEC, EME states: "In connection with the acquisition of the Midwest Generation Plants, EME

agreed to indemnify Commonwealth Edison with respect to specified environmental liabilities

before and after December 15, 1999, the date of sale."

83.     In Edison Mission Energy (December 31, 2009) Form 10-K Report, filed with the SEC, EME also asserts that it has indemnified certain other entities for the liability arising from allegations contained in the July 31, 2007 NOV as it relates to the Powerton and Joliet Stations.

84.     In Commonwealth Edison (March 31, 2010) Form 10-Q Report, filed with the SEC, ComEd states:

> Under the terms of the sale agreement, Midwest Generation and its affiliate, Edison Mission Energy (EME), assumed responsibility for environmental liabilities associated with the ownership, occupancy, use and operation of the stations, including responsibility for compliance of the stations with environmental laws before the purchase of the stations by Midwest Generation. Midwest Generation and EME additionally agreed to indemnify and hold ComEd and its affiliates harmless from claims, fines, penalties, liabilities and expenses arising from third party claims against ComEd resulting from or arising out of the environmental liabilities assumed by Midwest Generation and EME under the terms of the agreement governing the sale.

85.     In Midwest Generation, LLC (December 31, 2009), Form 10-K Report filed with the SEC, Midwest Gen states: "In connection with the acquisition of the Midwest Generation Plants, Midwest Generation agreed to indemnify Commonwealth Edison with respect to specified environmental liabilities before and after December 15, 1999, the date of sale."

86.     In Midwest Generation, LLC (December 31, 2009), Form 10-K Report filed with the SEC, Midwest Gen stated that it had agreed to reimburse ComEd for certain asbestos claims that may arise under the environmental indemnities set forth in the Asset Sale Agreement.

87.     Based upon Midwest Gen's public statements to a government agency described in the two preceding paragraphs, as well as ComEd's public statements to a government agency described in paragraph 84 above, EME has assigned to Midwest Gen some or all of its rights

- 23 -

and/or obligations under the Agreement, in accordance with Section 11.6 of the Agreement.

88.     Midwest Gen and ComEd coordinate as part of their regular business activities. Midwest Gen's coal-fired power plants that are the subject of this enforcement action – Crawford, Fisk, Joliet, Powerton, Waukegan, and Will County – are connected to ComEd's transmission and distribution system in Illinois. This interconnection requires ComEd and Midwest Gen to coordinate their respective electricity transmission and generation activities, such as the scheduled outages at the power plants at issue. Unplanned events also require Midwest Gen and ComEd to collaborate. To illustrate, on June 25, 2005, a fire at Midwest Gen's Fisk plant required ComEd and Midwest Gen to work directly together to bring different electric generating units on line to serve load.

## FIRST CLAIM FOR RELIEF
(Midwest Gen's PSD Violations at Crawford Unit 7)

89.     Paragraphs 1-88 are realleged and incorporated herein by reference.

90.     In or about May 1999, ComEd commenced construction of one or more major modifications, as defined in the CAA and the Illinois SIP, at the Crawford Station without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Crawford Unit 7, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants: $NO_x$, $SO_2$, and/or PM.

91.     Beginning at least by the first date of construction of the major modifications at

Crawford Unit 7 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Crawford Unit 7. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Crawford Unit 7, and thereafter operated Crawford Unit 7 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Crawford Unit 7.

92. ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Crawford Unit 7.

93. Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

94. On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Crawford Unit 7 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Crawford Unit 7.

95. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties.

## SECOND CLAIM FOR RELIEF
(EME's PSD Violations at Crawford Unit 7)

96. Paragraphs 1-95 are realleged and incorporated herein by reference.

97. Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Crawford Unit 7 alleged in the First Claim for Relief.

98. Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly or impliedly agreed to assume such liabilities associated with the major modifications at Crawford Unit 7 alleged in the First Claim for Relief. Thus, EME is liable for this alleged PSD claim as successor to ComEd.

99. EME is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Crawford Unit 7.

100. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject EME to injunctive relief.

101. As Midwest Gen's parent company, EME must approve major capital expenditures at the Crawford Station, such as the installation of pollution controls, as evidenced by, among other things, EME's SEC filings discussing EME's capital expenditures for its subsidiary companies.

102.     Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Crawford Unit 7, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from EME in this Second Claim for Relief.

### THIRD CLAIM FOR RELIEF
(ComEd's PSD Violations at Crawford Unit 7)

103.     Paragraphs 1-102 are realleged and incorporated herein by reference.

104.     Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Crawford Unit 7 alleged in the First Claim for Relief.

105.     Beginning at least by the first date of construction of the major modifications at Crawford Unit 7 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Crawford Unit 7. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Crawford Unit 7, and thereafter operated Crawford Unit 7 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Crawford Unit 7.

106.     ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations

- 27 -

set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter

two of which have been incorporated into the Illinois SIP, at Crawford Unit 7.

107.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject ComEd to injunctive relief.

108.     Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator

of Crawford Unit 7, is a required defendant, because, among other things:  Midwest Gen is a

person who is subject to service of process; Midwest Gen's joinder in this litigation will not

deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot

accord the complete relief that Plaintiffs seek from ComEd to remedy this Third Claim for

Relief.

## FOURTH CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Crawford Unit 7)

109.     Paragraphs 1-108 are realleged and incorporated herein by reference.

110.     In or about May 1999, ComEd commenced construction of one or more

modifications, as defined in the Illinois SIP, at the Crawford Station.  These modifications

included one or more physical changes or changes in the method of operation at Crawford Unit 7,

including, but not limited to, replacing boiler components.  These modifications were described

in the NOV dated July 31, 2007.  These modifications increased the amount of specified air

contaminants, including $NO_x$, $SO_2$, and/or PM, emitted by the source, as defined by

35 Ill. Admin. Code §§ 201.102.

111.     As a qualifying modified source under 35 IAC § 212.122, since ComEd modified

Crawford Unit 7 in or about May 1999, it has been subject to the 20 percent opacity limit

contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information

and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and

continues to emit, visible emissions from Crawford Unit 7 that exceed the 20 percent opacity

limit in Section 212.122 of the Illinois SIP.

112.    In addition, because it has been modified, Crawford Unit 7 is a qualifying source

under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As

provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC

§ 212.122 at Crawford Unit 7 shall constitute a violation of the applicable PM limitations

contained in 35 IAC § 212.204 at Crawford Unit 7.

113.    In the alternative, as a qualifying source under 35 IAC § 212.123, Crawford Unit 7

is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Midwest Gen emitted, and continues to emit, visible emissions from Crawford Unit 7

that exceed the opacity limits in Section 212.123 of the Illinois SIP.

114.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 111

and 113, that Midwest Gen has been, and, upon information and belief, continues to be, in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at

Crawford Unit 7. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified

Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation

of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

115.    Midwest Gen has violated, and continues to violate, the 20 percent opacity

limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the

alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Crawford Unit 7. Each

of these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA Section

113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois

Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of

the Act will continue.

116.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTH CLAIM FOR RELIEF
(Title V Violations at Crawford Unit 7)

117.    Paragraphs 1-116 are realleged and incorporated herein by reference.

118.    In or about May 1999, ComEd commenced construction of one or more major

modifications, as defined in the Act and the Illinois SIP, at Crawford without applying for or

receiving a PSD permit. These modifications included one or more physical changes or changes

in the method of operation at Crawford Unit 7, including, but not limited to, replacing boiler

components. These modifications were described in the NOV dated July 31, 2007. These

modifications resulted in significant net emissions increases, as defined by the relevant PSD

regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$, $SO_2$, and/or PM.

As a result of those modifications, Crawford Unit 7 became a modified source under Part C of

- 30 -

Title I of the Act.

119. ComEd's construction that constituted major modifications at Crawford Unit 7, as defined in the Act and the PSD program, separately constituted a "modification" under 35 IAC § 201.102. Therefore, as of May 1999, Crawford Unit 7 has been a modified source and was thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the PM limits in 35 IAC § 212.204.

120. After construction until December 15, 1999, ComEd's operated Crawford Unit 7, as modified. ComEd's operation of the modified unit triggered its obligation to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits and opacity and PM limits for a modified source. ComEd failed to submit such a permit application or update its then existing application as required.

121. As set forth above, on or about December 15, 1999, Midwest Gen began operating Crawford Unit 7, as modified. Midwest Gen's operation of the modified unit triggered its requirement to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits and opacity and PM limits for a modified source.

122. Additionally, as described above, Midwest Gen has violated, and, upon information and belief, continues to violate, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Crawford Unit 7. These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable

- 31 -

requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

123.    Midwest Gen has failed to submit a complete application and/or update its application for a Title V operating permit for Crawford Unit 7 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Crawford Unit 7 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

124.    Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Crawford Unit 7. Unless restrained by an order of this Court, these and similar violations will continue.

125.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen, directly and as a successor to ComEd, and additionally, and in the alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to

$27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### SIXTH CLAIM FOR RELIEF
(Midwest Gen's PSD Violations at Crawford Unit 8)

126.    Paragraphs 1-88 are realleged and incorporated herein by reference.

127.    In or about January 1998, ComEd commenced construction of one or more major modifications, as defined in the CAA and the Illinois SIP, at Crawford without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Crawford Unit 8, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants:  $NO_x$, $SO_2$, and/or PM.

128.    Beginning at least by the first date of construction of the major modifications at Crawford Unit 8 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Crawford Unit 8. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Crawford Unit 8, and thereafter operated Crawford Unit 8 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a

- 33 -

PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Crawford Unit 8.

129.     ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Crawford Unit 8.

130.     Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

131.     On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Crawford Unit 8 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Crawford Unit 8.

132.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties.

### SEVENTH CLAIM FOR RELIEF
(EME's PSD Violations at Crawford Unit 8)

133.     Paragraphs 1-88 and 126-132 are realleged and incorporated herein by reference.

134.     Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act

Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois

SIP, related to the major modification at Crawford Unit 8 alleged in the Sixth Claim for Relief.

135.    Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly

or impliedly agreed to assume such liabilities associated with the major modifications at

Crawford Unit 8 alleged in the Sixth Claim for Relief.  Thus, EME is liable for this alleged PSD

claim as successor to ComEd.

136.    EME is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C.

§ 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d),

415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at

Crawford Unit 8.

137.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject EME to injunctive relief.

138.    As Midwest Gen's parent company, EME must approve major capital

expenditures at Crawford, such as the installation of pollution controls, as evidenced by, among

other things, EME's SEC filings discussing EME's capital expenditures for its subsidiary

companies.

139.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator

of Crawford Unit 8, is a required defendant, because, among other things:  Midwest Gen is a

person who is subject to service of process; Midwest Gen's joinder in this litigation will not

deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot

accord the complete relief that Plaintiffs seek from EME in this Seventh Claim for Relief.

## EIGHTH CLAIM FOR RELIEF
(ComEd's PSD Violations at Crawford Unit 8)

140.    Paragraphs 1-88 and 126-139 are realleged and incorporated herein by reference.

141.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Crawford Unit 8 alleged in the Sixth Claim for Relief.

142.    Beginning at least by the first date of construction of the major modifications at Crawford Unit 8 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Crawford Unit 8. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Crawford Unit 8, and thereafter operated Crawford Unit 8 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Crawford Unit 8.

143.    ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Crawford Unit 8.

144.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

145.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator

of Crawford Unit 8, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Eighth Claim for Relief.

## NINTH CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Crawford Unit 8)

146.    Paragraphs 1-88 and 126-145 are realleged and incorporated herein by reference.

147.    In or about January 1998, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Crawford. These modifications included one or more physical changes or changes in the method of operation at Crawford Unit 8, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications increased the amount of specified air contaminants, including $NO_X$, $SO_2$, and/or PM, emitted by the source, as defined by 35 Ill. Admin. Code §§ 201.102.

148.    As a qualifying modified source under 35 IAC § 212.122, since ComEd modified Crawford Unit 8 in or about January 1998, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Crawford Unit 8 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

149.    In addition, because it has been modified, Crawford Unit 8 is a qualifying source

- 37 -

under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Crawford Unit 8 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Crawford Unit 8.

150.    In the alternative, as a qualifying source under 35 IAC § 212.123, Crawford Unit 8 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Crawford Unit 8 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

151.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 148 and 150, that Midwest Gen has been, and continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Crawford Unit 8. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

152.    Midwest Gen has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Crawford Unit 8. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

153.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TENTH  CLAIM FOR RELIEF
(Title V Violations at Crawford Unit 8)

154.    Paragraphs 1-88 and 126-153 are realleged and incorporated herein by reference.

155.    In or about January 1998, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Crawford without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Crawford Unit 8, including, but not limited to, replacing boiler components.  These modifications were described in the NOV dated July 31, 2007.  These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following:  $NO_x$, $SO_2$, and/or PM. As a result of those modifications, Crawford Unit 8 became a modified source under Part C of Title I of the Act.

156.    ComEd's construction that constituted major modifications at Crawford Unit 8, as defined in the Act and the PSD program, separately constituted a "modification" under 35 IAC § 201.102.  Therefore, as of January 1998, Crawford Unit 8 has been a modified source and has been thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the

PM limits in 35 IAC § 212.204.

157.    After construction until December 15, 1999, ComEd operated Crawford Unit 8, as modified. ComEd's operation of the modified unit triggered its obligation to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits and opacity and PM limits for a modified source. ComEd failed to submit such a permit application or update its then-existing application as required.

158.    As set forth above, on or about December 15, 1999, Midwest Gen began operating Crawford Unit 8, as modified. Midwest Gen's operation of, the modified unit triggered its requirement to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits.

159.    Additionally, as described above, Midwest Gen has violated, and, upon information and belief, continues to violate, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Crawford Unit 8. These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

160.    Midwest Gen has failed to submit a complete application and/or update its application for a Title V operating permit for Crawford Unit 8 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan

for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Crawford Unit 8 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

161.    Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Crawford Unit 8. Unless restrained by an order of this Court, these and similar violations will continue.

162.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen directly, and as a successor to ComEd, and additionally, and in the alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## ELEVENTH CLAIM FOR RELIEF
(Midwest Gen's PSD Violations at Fisk Unit 19)

163. Paragraphs 1-88 and are realleged and incorporated herein by reference.

164. In or about April 1996, ComEd commenced construction of one or more major modifications, as defined in the CAA and the Illinois SIP, at Fisk without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Fisk Unit 19, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants: $NO_x$, $SO_2$, and/or PM.

165. Beginning at least by the first date of construction of the major modifications at Fisk Unit 19 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Fisk Unit 19. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Fisk Unit 19, and thereafter operated Fisk Unit 19 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Fisk Unit 19.

166. ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Fisk Unit 19.

167.    Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

168.    On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Fisk Unit 19 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Fisk Unit 19.

169.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties.

## TWELFTH CLAIM FOR RELIEF
(EME's PSD Violations at Fisk Unit 19)

170.    Paragraphs 1-88 and 163-169 are realleged and incorporated herein by reference.

171.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Fisk Unit 19 alleged in the Eleventh Claim for Relief.

172.    Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly or impliedly agreed to assume such liabilities associated with the major modifications at Fisk Unit 19 alleged in the Eleventh Claim for Relief. Thus, EME is liable for this alleged PSD claim

as successor to ComEd.

173.    EME is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C.

§ 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d),

415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Fisk

Unit 19.

174.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject EME to injunctive relief.

175.    As Midwest Gen's parent company, EME must approve major capital

expenditures at Fisk, such as the installation of pollution controls, as evidenced by, among other

things, EME's SEC filings discussing EME's capital expenditures for its subsidiary companies.

176.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator

of Fisk Unit 19, is a required defendant, because, among other things:  Midwest Gen is a person

who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the

court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the

complete relief that Plaintiffs seek from EME in this Twelfth Claim for Relief.

## THIRTEENTH CLAIM FOR RELIEF
### (ComEd's PSD Violations at Fisk Unit 19)

177.    Paragraphs 1-88 and 163-176 are realleged and incorporated herein by reference.

178.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally

allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD

regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the

latter two of which have been incorporated into the Illinois SIP, related to the major modification

at Fisk Unit 19 alleged in the Eleventh Claim for Relief.

179.     Beginning at least by the first date of construction of the major modifications at Fisk Unit 19 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Fisk Unit 19. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Fisk Unit 19, and thereafter operated Fisk Unit 19 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Fisk Unit 19.

180.     ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Fisk Unit 19.

181.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

182.     Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Fisk Unit 19, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Thirteenth Claim for Relief.

## FOURTEENTH CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Fisk Unit 19)

183.     Paragraphs 1-88 and 163-182 are realleged and incorporated herein by reference.

184.     In or about April 1996, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Fisk without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Fisk Unit 19, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007.  These modifications increased the amount of specified air contaminants, including $NO_X$, $SO_2$, and/or PM, emitted by the source, as defined by 35 Ill. Admin. Code §§ 201.102.

185.     As a qualifying modified source under 35 IAC § 212.122, since ComEd modified Fisk Unit 19 in or about April 1996, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Fisk Unit 19 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

186.     In addition, because it has been modified, Fisk Unit 19 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources.  As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Fisk Unit 19 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Fisk Unit 19.

187.     In the alternative, as a qualifying source under 35 IAC § 212.123, Fisk Unit 19 is

subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately

October 31, 2002 and, upon information and belief, continuing until the present, on numerous

occasions, Midwest Gen emitted, and continues to emit, visible emissions from Fisk Unit 19 that

exceed the opacity limits in Section 212.123 of the Illinois SIP.

188.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 185

and 187, that Midwest Gen has been, and, upon information and belief, continues to be, in

violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at

Fisk Unit 19. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified

Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation

of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

189.    Midwest Gen has violated, and continues to violate, the 20 percent opacity

limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the

alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Fisk Unit 19. Each of

these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA Section

113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois

Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of

the Act will continue.

190.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

- 47 -

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTEENTH CLAIM FOR RELIEF
(Title V Violations at Fisk Unit 19)

191.  Paragraphs 1-88 and 163-190 are realleged and incorporated herein by reference.

192.  In or about April 1996, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Fisk without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Fisk Unit 19, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$, $SO_2$, and/or PM. As a result of those modifications, Fisk Unit 19 became a modified source under Part C of Title I of the Act.

193.  ComEd's construction that constituted major modifications at Fisk Unit 19, as defined in the Act and the PSD program, separately constituted a "modification" under 35 IAC § 201.102. Therefore, as of April 1996, Fisk Unit 19 has been a modified source and has been thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the PM limits in 35 IAC § 212.204.

194.  After construction until December 15, 1999, ComEd operated Fisk Unit 19, as modified. ComEd's operation of the modified unit triggered its obligation to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits and opacity and PM limits for a modified source. ComEd failed to submit such a permit

application or update its then-existing application as required.

195.    As set forth above, on or about December 15, 1999, Midwest Gen began operating Fisk Unit 19, as modified. Midwest Gen's operation of, the modified unit triggered its requirement to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits.

196.    Additionally, as described above, Midwest Gen has violated, and, upon information and belief, continues to violate, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Fisk Unit 19. These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

197.    Midwest Gen has failed to submit a complete application and/or update its application for a Title V operating permit for Fisk Unit 19 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest

- 49 -

Gen thereafter operated Fisk Unit 19 without meeting the required limitations and without

applying for and/or obtaining a valid operating permit that required compliance with such

limitation or that contained a compliance plan for all applicable requirements for which the

source was not in compliance.

198.    Midwest Gen's conduct has violated and continues to violate CAA Sections

502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-

70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Fisk Unit 19. Unless restrained by an order of

this Court, these and similar violations will continue.

199.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen directly, and as a successor to ComEd, and additionally, and in the

alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to

$27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day

for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such

violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SIXTEENTH CLAIM FOR RELIEF
### (Midwest Gen's PSD Violations at Joliet Unit 6)

200.    Paragraphs 1-88 are realleged and incorporated herein by reference.

201.    In or about June 1996, ComEd commenced construction of one or more major

modifications, as defined in the CAA and the Illinois SIP, at Joliet without applying for or

receiving a PSD permit. These modifications included one or more physical changes or changes

in the method of operation at Joliet Unit 6, including, but not limited to, replacing boiler

- 50 -

components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants: $NO_x$, $SO_2$, and/or PM.

202.    Beginning at least by the first date of construction of the major modifications at Joliet Unit 6 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Joliet Unit 6. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Joliet Unit 6, and thereafter operated Joliet Unit 6 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Joliet Unit 6.

203.    ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Joliet Unit 6.

204.    Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

205.    On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Joliet Unit 6 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the

PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS

5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Joliet Unit 6.

206.　As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen to injunctive relief and civil penalties.

## SEVENTEENTH CLAIM FOR RELIEF
(EME's PSD Violations at Joliet Unit 6)

207.　Paragraphs 1-88 and 200-206 are realleged and incorporated herein by reference.

208.　Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally

allege that EME is liable as a successor to ComEd's liability for violations of CAA Section

165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act

Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois

SIP, related to the major modification at Joliet Unit 6 alleged in the Sixteenth Claim for Relief.

209.　Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly

or impliedly agreed to assume such liabilities associated with the major modifications at Joliet

Unit 6 alleged in the Sixteenth Claim for Relief. Thus, EME is liable for this alleged PSD claim

as successor to ComEd.

210.　EME is liable for ComEd's violation of CAA Section 165(a),

42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section

9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at

Joliet Unit 6.

211.　As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject EME to injunctive relief.

212.    As Midwest Gen's parent company, EME must approve major capital expenditures at Joliet, such as the installation of pollution controls, as evidenced by, among other things, EME's SEC filings discussing EME's capital expenditures for its subsidiary companies.

213.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Joliet Unit 6, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from EME in this Seventeenth Claim for Relief.

### EIGHTEENTH CLAIM FOR RELIEF
(ComEd's PSD Violations at Joliet Unit 6)

214.    Paragraphs 1-88 and 200-213 are realleged and incorporated herein by reference.

215.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Joliet Unit 6 alleged in the Sixteenth Claim for Relief.

216.    Beginning at least by the first date of construction of the major modifications at Joliet Unit 6 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Joliet Unit 6. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Joliet Unit 6, and thereafter operated Joliet Unit 6 without BACT emission limitations. As a result, ComEd failed to comply

with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Joliet Unit 6.

217.     ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Joliet Unit 6.

218.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

219.     Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Joliet Unit 6, is a required defendant, because, among other things:  Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Eighteenth Claim for Relief.

## NINETEENTH CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Joliet Unit 6)

220.     Paragraphs 1-88 and 200-219 are realleged and incorporated herein by reference.

221.     In or about June 1996, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Joliet without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Joliet Unit 6, including, but not limited to, replacing boiler components.  These modifications were described in the NOV dated July 31, 2007.  These modifications increased the amount of specified air contaminants, including $NO_X$, $SO_2$, and/or PM, emitted by the source, as defined by 35 Ill. Admin. Code §§ 201.102.

222.    As a qualifying modified source under 35 IAC § 212.122, since ComEd modified Joliet Unit 6 in or about June 1996, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Joliet Unit 6 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

223.    In addition, because it had ben modified, Joliet Unit 6 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Joliet Unit 6 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Joliet Unit 6.

224.    In the alternative, as a qualifying source under 35 IAC § 212.123, Joliet Unit 6 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Joliet Unit 6 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

225.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 222 and 224, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Joliet Unit 6. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

226.    Midwest Gen has violated, and continues to violate, the 20 percent opacity

limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the

alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Joliet Unit 6.  Each of

these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA Section

113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois

Act, 415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of

the Act will continue.

227.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTIETH  CLAIM FOR RELIEF
(Title V Violations at Joliet Unit 6)

228.    Paragraphs 1-88 and 200-227 are realleged and incorporated herein by reference.

229.    In or about June 1996, ComEd commenced construction of one or more major

modifications, as defined in the Act and the Illinois SIP, at Joliet without applying for or

receiving a PSD permit.  These modifications included one or more physical changes or changes

in the method of operation at Joliet Unit 6, including, but not limited to, replacing boiler

components.  These modifications were described in the NOV dated July 31, 2007.  These

modifications resulted in significant net emissions increases, as defined by the relevant PSD

- 56 -

regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$, $SO_2$, and/or PM. As a result of those modifications, Joliet Unit 6 became a modified source under Part C of Title I of the Act.

230.    ComEd's construction that constituted major modifications at Joliet Unit 6, as defined in the Act and the PSD program, separately constituted a "modification" under 35 IAC § 201.102.  Therefore, as of June 1996, Joliet Unit 6 has been a modified source and has been thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the PM limits in 35 IAC § 212.204.

231.    After construction until December 15, 1999, ComEd operated Joliet Unit 6, as modified. ComEd's operation of the modified unit triggered its obligation to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits and opacity and PM limits for a modified source.  ComEd failed to submit such a permit application or update its then-existing application as required.

232.    As set forth above, on or about December 15, 1999, Midwest Gen began operating Joliet Unit 6, as modified.  Midwest Gen's operation of the modified unit triggered its requirement to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits.

233.    Additionally, as described above, Midwest Gen has violated, and, upon information and belief, continues to violate, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Joliet Unit 6.

These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

234.    Midwest Gen has failed to submit a complete application and/or update its application for a Title V operating permit for Joliet Unit 6 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Joliet Unit 6 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

235.    Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Joliet Unit 6. Unless restrained by an order of this Court, these and similar violations will continue.

236.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen directly, and as a successor to ComEd, and additionally, and in the

alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to

$27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day

for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such

violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### TWENTY-FIRST CLAIM FOR RELIEF
(Midwest Gen's PSD Violations at Joliet Unit 7)

237.     Paragraphs 1-88 are realleged and incorporated herein by reference.

238.     In or about March 1994, ComEd commenced construction of one or more major

modifications, as defined in the CAA and the Illinois SIP, at Joliet without applying for or

receiving a PSD permit. These modifications included one or more physical changes or changes

in the method of operation at Joliet Unit 7, including, but not limited to, replacing boiler

components. These modifications were described in the NOV dated July 31, 2007. These

modifications resulted in significant net emissions increases, as defined by the relevant PSD

regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants:  $NO_x$, $SO_2$,

and/or PM.

239.     Beginning at least by the first date of construction of the major modifications at

Joliet Unit 7 and continuing through its period of ownership and operation, ComEd failed to

comply with the PSD requirements of the Illinois SIP with respect to the major modifications at

Joliet Unit 7.  Among other things, ComEd failed to obtain a PSD permit as required by the

Illinois SIP prior to construction of the major modifications at Joliet Unit 7, and thereafter

operated Joliet Unit 7 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Joliet Unit 7.

240.    ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Joliet Unit 7.

241.    Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

242.    On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Joliet Unit 7 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Joliet Unit 7.

243.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties.

## TWENTY-SECOND CLAIM FOR RELIEF
### (EME's PSD Violations at Joliet Unit 7)

244.    Paragraphs 1-88 and 237-243 are realleged and incorporated herein by reference.

245.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section

165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act

Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois

SIP, related to the major modification at Joliet Unit 7 alleged in the Twenty-First Claim for

Relief.

246.    Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly

or impliedly agreed to assume such liabilities associated with the major modifications at Joliet

Unit 7 alleged in the Twenty-First Claim for Relief.  Thus, EME is liable for this alleged PSD

claim as successor to ComEd.

247.    EME is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. §

7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d),

415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Joliet

Unit 7.

248.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject EME to injunctive relief.

249.    As Midwest Gen's parent company, EME must approve major capital

expenditures at Joliet, such as the installation of pollution controls, as evidenced by, among other

things, EME's SEC filings discussing EME's capital expenditures for its subsidiary companies.

250.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator

of Joliet Unit 7, is a required defendant, because, among other things:  Midwest Gen is a person

who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the

court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the

complete relief that Plaintiffs seek from EME in this Twenty-Second Claim for Relief.

## TWENTY-THIRD CLAIM FOR RELIEF
(ComEd's PSD Violations at Joliet Unit 7)

251.    Paragraphs 1-88 and 237-250 are realleged and incorporated herein by reference.

252.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Joliet Unit 7 alleged in the Twenty-First Claim for Relief.

253.    Beginning at least by the first date of construction of the major modifications at Joliet Unit 7 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Joliet Unit 7.  Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Joliet Unit 7, and thereafter operated Joliet Unit 7 without BACT emission limitations.  As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Joliet Unit 7.

254.    ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Joliet Unit 7.

255.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

256.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator

of Joliet Unit 7, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Twenty-Third Claim for Relief.

## TWENTY-FOURTH CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Joliet Unit 7)

257.    Paragraphs 1-88 and 237-256 are realleged and incorporated herein by reference.

258.    In or about March 1994, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Joliet without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Joliet Unit 7, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications increased the amount of specified air contaminants, including $NO_x$, $SO_2$, and/or PM, emitted by the source, as defined by 35 Ill. Admin. Code §§ 201.102.

259.    As a qualifying modified source under 35 IAC § 212.122, since ComEd modified Joliet Unit 7 in or about March 1994, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Joliet Unit 7 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

260.    In addition, because it has been modified, Joliet Unit 7 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As

provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Joliet Unit 7 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Joliet Unit 7.

261. In the alternative, as a qualifying source under 35 IAC § 212.123, Joliet Unit 7 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Joliet Unit 7 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

262. U.S. EPA has found, based upon visible emissions referenced in paragraphs 259 and 261, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Joliet Unit 7. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of 35 IAC § 212.122 or, in the alternative, Section 212.123.

263. Midwest Gen has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Joliet Unit 7. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

264. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-FIFTH CLAIM FOR RELIEF
(Title V Violations at Joliet Unit 7)

265. Paragraphs 1-88 and 237-264 are realleged and incorporated herein by reference.

266. In or about March 1994, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Joliet without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Joliet Unit 7, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$, $SO_2$, and/or PM. As a result of those modifications, Joliet Unit 7 became a modified source under Part C of Title I of the Act.

267. ComEd's construction that constituted major modifications at Joliet Unit 7, as defined in the Act and the PSD program, separately constituted a "modification" under 35 IAC § 201.102. Therefore, as of March 1994, Joliet Unit 7 has been a modified source and has been thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the PM limits in 35 IAC § 212.204.

268.     After construction until December 15, 1999, ComEd operated Joliet Unit 7, as modified.  Upon applicability of the Title V program in Illinois to Joliet Unit 7, ComEd's operation of the modified unit triggered its obligation to, among other things, obtain a Title V permit or submit a Title V permit application to include all applicable requirements, including the requirement to meet BACT limits and opacity and PM limits for a modified source.  ComEd failed to submit such a permit application or obtain such a Title V permit as required.

269.     As set forth above, on or about December 15, 1999, Midwest Gen began operating Joliet Unit 7, as modified.  Midwest Gen's operation of the modified unit triggered its requirement to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits.

270.     Additionally, as described above, Midwest Gen has violated, and, upon information and belief, continues to violate, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Joliet Unit 7. These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

271.     Midwest Gen has failed to submit a complete application and/or update its application for a Title V operating permit for Joliet Unit 7 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the

requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Joliet Unit 7 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

272.    Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Joliet Unit 7.  Unless restrained by an order of this Court, these and similar violations will continue.

273.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen directly, and as a successor to ComEd, and additionally, and in the alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-SIXTH CLAIM FOR RELIEF
(Illinois SIP Opacity Violations at Joliet Unit 8)

274.     Paragraphs 1-88 are realleged and incorporated herein by reference.

275.     As a qualifying source under 35 IAC § 212.123, Joliet Unit 8 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen has emitted, and continues to emit, visible emissions from Joliet Unit 8 that exceed the opacity limits in Section 212.123.

276.     U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that Midwest Gen has been, and upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Joliet Unit 8.  Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of Section 212.123.

277.     Midwest Gen has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Joliet Unit 8.  This provision is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

278.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

- 68 -

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-SEVENTH CLAIM FOR RELIEF
(Title V Violations at Joliet Unit 8)

279.   Paragraphs 1-88 and 274-278 are realleged and incorporated herein by reference.

280.   As described above, Midwest Gen has violated, and, upon information and belief,

continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at

Joliet Unit 8. These repeated violations of the opacity and PM limitations triggered the

requirement to submit a Title V permit application and/or update its existing application to

include all applicable requirements, including submission of a compliance schedule to remedy its

opacity and PM violations.

281.   Midwest Gen has failed to submit a complete application and/or update its

application for a Title V operating permit for Joliet Unit 8 that identifies all applicable

requirements, accurately certifies compliance with such requirements, contains a compliance plan

for all applicable requirements for which the source was not in compliance (including the

requirement to meet opacity and PM limitations under the Illinois SIP), and other specific

information that may be necessary to implement and enforce the applicable requirements of the

Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as

required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois

CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Joliet Unit 8 without meeting the

required limitations and without applying for and/or obtaining a valid operating permit that

required compliance with such limitations or that contained a compliance plan for all applicable

requirements for which the source was not in compliance.

282.     Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Joliet Unit 8. Unless restrained by an order of this Court, these and similar violations will continue.

283.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## TWENTY-EIGHTH CLAIM FOR RELIEF
### (Midwest Gen's PSD Violations at Powerton Unit 5)

284.     Paragraphs 1-88 are realleged and incorporated herein by reference.

285.     In or about June 1995, ComEd commenced construction of one or more major modifications, as defined in the CAA and the Illinois SIP, at Powerton without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Powerton Unit 5, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants: $NO_x$, $SO_2$, and/or PM.

286.    Beginning at least by the first date of construction of the major modifications at Powerton Unit 5 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Powerton Unit 5. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Powerton Unit 5, and thereafter operated Powerton Unit 5 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Powerton Unit 5.

287.    ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Powerton Unit 5.

288.    Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

289.    On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Powerton Unit 5 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Powerton Unit 5.

290.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

- 71 -

above subject Midwest Gen to injunctive relief and civil penalties.

### TWENTY-NINTH CLAIM FOR RELIEF
(EME's PSD Violations at Powerton Unit 5)

291.    Paragraphs 1-88 and 284-290 are realleged and incorporated herein by reference.

292.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Powerton Unit 5 alleged in the Twenty-Eighth Claim for Relief.

293.    Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly or impliedly agreed to assume such liabilities associated with the major modifications at Powerton Unit 5 alleged in the Twenty-Eighth Claim for Relief. Thus, EME is liable for this alleged PSD claim as successor to ComEd.

294.    EME is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Powerton Unit 5.

295.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject EME to injunctive relief.

296.    As Midwest Gen's parent company, EME must approve major capital expenditures at Powerton, such as the installation of pollution controls, as evidenced by, among

other things, EME's SEC filings discussing EME's capital expenditures for its subsidiary companies.

297.     Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Powerton Unit 5, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from EME in this Twenty-Ninth Claim for Relief.

## THIRTIETH CLAIM FOR RELIEF
(ComEd's PSD Violations at Powerton Unit 5)

298.     Paragraphs 1-88 and 284-297 are realleged and incorporated herein by reference.

299.     Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Powerton Unit 5 alleged in the Twenty-Eighth Claim for Relief.

300.     Beginning at least by the first date of construction of the major modifications at Powerton Unit 5 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Powerton Unit 5. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Powerton Unit 5, and thereafter operated Powerton Unit 5 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a

PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Powerton Unit 5.

301.    ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Powerton Unit 5.

302.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

303.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Powerton Unit 5, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Thirtieth Claim for Relief.

### THIRTY-FIRST CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Powerton Unit 5)

304.    Paragraphs 1-88 and 284-303 are realleged and incorporated herein by reference.

305.    In or about June 1995, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Powerton without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Powerton Unit 5, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications increased the amount of specified air contaminants, including $NO_x$, $SO_2$, and/or PM, emitted by the source, as defined by 35 Ill. Admin. Code §§ 201.102.

306.     As a qualifying modified source under 35 IAC § 212.122, since ComEd modified Powerton Unit 5 in or about June 1995, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from the shared stack of Powerton Units 5 and 6 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

307.     In addition, because it has been modified, Powerton Unit 5 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Powerton Unit 5 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Powerton Unit 5.

308.     In the alternative, as a qualifying source under 35 IAC § 212.123, Powerton Unit 5 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from the shared stack of Powerton Units 5 and 6 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

309.     U.S. EPA has found, based upon visible emissions referenced in paragraphs 306 and 308, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123 at Powerton Unit 5. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation

of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

310.   Midwest Gen has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Powerton Unit 5.   Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

311.   As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### THIRTY-SECOND CLAIM FOR RELIEF
(Title V Violations at Powerton Unit 5)

312.   Paragraphs 1-88 and 284-311 are realleged and incorporated herein by reference.

313.   In or about June 1995, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Powerton without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Powerton Unit 5, including, but not limited to, replacing boiler components.  These modifications were described in the NOV dated July 31, 2007.  These

- 76 -

modifications resulted in significant net emissions increases, as defined by the relevant PSD

regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$, $SO_2$, and/or PM.

As a result of those modifications, Powerton Unit 5 became a modified source under Part C of

Title I of the Act.

314.    ComEd's construction that constituted major modifications at Powerton Unit 5, as

defined in the Act and the PSD program, separately constituted a "modification" under

35 IAC § 201.102. Therefore, as of June 1995, Powerton Unit 5 has been a modified source and

has been thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the PM

limits in 35 IAC § 212.204.

315.    After construction until December 15, 1999, ComEd operated Powerton Unit 5, as

modified. ComEd's operation of the modified unit triggered its obligation to, among other things,

obtain a Title V permit, submit a Title V permit application, and/or update its existing

application to include all applicable requirements, including the requirement to meet BACT

limits and opacity and PM limits for a modified source. ComEd failed to submit such a permit

application or update its then-existing application as required.

316.    As set forth above, on or about December 15, 1999, Midwest Gen began operating

Powerton Unit 5, as modified. Midwest Gen's operation of the modified unit triggered its

requirement to, among other things, obtain a Title V permit, submit a Title V permit application,

and/or update its existing application to include all applicable requirements, including the

requirement to meet BACT limits.

317.    Additionally, as described above, Midwest Gen has violated, and, upon

information and belief, continues to violate, opacity and PM limitations under the Illinois SIP,

35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Powerton

Unit 5. These repeated violations of the opacity and PM limitations triggered the requirement to

submit a Title V permit application and/or update its existing application to include all applicable

requirements, including submission of a compliance schedule to remedy its opacity and PM

violations.

318.　　Midwest Gen has failed to submit a complete application and/or update its

application for a Title V operating permit for Powerton Unit 5 that identifies all applicable

requirements, accurately certifies compliance with such requirements, contains a compliance plan

for all applicable requirements for which the source was not in compliance (including the

requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity

and PM limitations under the Illinois SIP), and other specific information that may be necessary

to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or

to determine the applicability of such requirements, as required by CAA Section 503(c),

42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest

Gen thereafter operated Powerton Unit 5 without meeting the required limitations and without

applying for and/or obtaining a valid operating permit that required compliance with such

limitations or that contained a compliance plan for all applicable requirements for which the

source was not in compliance.

319.　　Midwest Gen's conduct has violated and continues to violate CAA Sections

502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-

70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Powerton Unit 5. Unless restrained by an

order of this Court, these and similar violations will continue.

320.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen directly, and as a successor to ComEd, and additionally, and in the alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRTY-THIRD CLAIM FOR RELIEF
(Midwest Gen's PSD Violations at Powerton Unit 6)

321.     Paragraphs 1-88 are realleged and incorporated herein by reference.

322.     In or about May 1996, ComEd commenced construction of one or more major modifications, as defined in the CAA and the Illinois SIP, at Powerton without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Powerton Unit 6, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants: $NO_x$, $SO_2$, and/or PM.

323.     Beginning at least by the first date of construction of the major modifications at Powerton Unit 6 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Powerton Unit 6. Among other things, ComEd failed to obtain a PSD permit as required by the

Illinois SIP prior to construction of the major modifications at Powerton Unit 6, and thereafter operated Powerton Unit 6 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Powerton Unit 6.

324. ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Powerton Unit 6.

325. Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

326. On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Powerton Unit 6 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Powerton Unit 6.

327. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties.

## THIRTY-FOURTH CLAIM FOR RELIEF
(EME's PSD Violations at Powerton Unit 6)

328.    Paragraphs 1-88 and 321-327 are realleged and incorporated herein by reference.

329.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Powerton Unit 6 alleged in the Thirty-Third Claim for Relief.

330.    Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly or impliedly agreed to assume such liabilities associated with the major modifications at Powerton Unit 6 alleged in the Thirty-Third Claim for Relief. Thus, EME is liable for this alleged PSD claim as successor to ComEd.

331.    EME is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Powerton Unit 6.

332.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject EME to injunctive relief.

333.    As Midwest Gen's parent company, EME must approve major capital expenditures at Powerton, such as the installation of pollution controls, as evidenced by, among other things, EME's SEC filings discussing EME's capital expenditures for its subsidiary

companies.

334. Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Powerton Unit 6, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from EME in this Thirty-Fourth Claim for Relief.

## THIRTY-FIFTH CLAIM FOR RELIEF
(ComEd's PSD Violations at Powerton Unit 6)

335. Paragraphs 1-88 and 321-334 are realleged and incorporated herein by reference.

336. Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Powerton Unit 6 alleged in the Thirty-Third Claim for Relief.

337. Beginning at least by the first date of construction of the major modifications at Powerton Unit 6 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Powerton Unit 6. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Powerton Unit 6, and thereafter operated Powerton Unit 6 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Powerton Unit 6.

338.    ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Powerton Unit 6.

339.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

340.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Powerton Unit 6, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Thirty-Fifth Claim for Relief.

**THIRTY-SIXTH CLAIM FOR RELIEF**
(Illinois SIP Opacity and PM Violations at Powerton Unit 6)

341.    Paragraphs 1-88 and 321-340 are realleged and incorporated herein by reference.

342.    In or about May 1996, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Powerton without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Powerton Unit 6, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications increased the amount of specified air contaminants, including $NO_X$, $SO_2$, and/or PM, emitted by the source, as defined by 35 Ill. Admin. Code §§ 201.102.

343.    As qualifying modified source under 35 IAC § 212.122, since ComEd modified

Powerton Unit 6 in or about May 1996, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from the shared stack of Powerton Units 5 and 6 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

344.   In addition, because it has been modified, Powerton Unit 6 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Powerton Unit 6 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Powerton Unit 6.

345.   In the alternative, as qualifying source under 35 IAC § 212.123, Powerton Unit 6 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from the shared stack of Powerton Units 5 and 6 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

346.   U.S. EPA has found, based upon visible emissions referenced in paragraphs 343 and 345, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Powerton Unit 6. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

347.   Midwest Gen has violated, and continues to violate, the 20 percent opacity

- 84 -

limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Powerton Unit 6. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

348.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRTY-SEVENTH CLAIM FOR RELIEF
(Title V Violations at Powerton Unit 6)

349.    Paragraphs 1-88 and 321-348 are realleged and incorporated herein by reference.

350.    In or about May 1996, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Powerton without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Powerton Unit 6, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$, $SO_2$, and/or PM.

As a result of those modifications, Powerton Unit 6 became a modified source under Part C of Title I of the Act.

351.     ComEd's construction that constituted major modifications at Powerton Unit 6, as defined in the Act and the PSD program, separately constituted a "modification" under 35 IAC § 201.102.  Therefore, as of May 1996, Powerton Unit 6 has been a modified source and has been thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the PM limits in 35 IAC § 212.204.

352.     After construction until December 15, 1999, ComEd operated Powerton Unit 6, as modified. ComEd's operation of the modified unit triggered its obligation to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits and opacity and PM limits for a modified source.  ComEd failed to submit such a permit application or update its then-existing application as required.

353.     As set forth above, on or about December 15, 1999, Midwest Gen began operating Powerton Unit 6, as modified.  Midwest Gen's operation of the modified unit triggered its requirement to, among other things, obtain a Title V permit, submit a Title V permit application and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits.

354.     Additionally, as described above, Midwest Gen has violated, and, upon information and belief, continues to violate, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Powerton Unit 6.  These repeated violations of the opacity and PM limitations triggered the requirement to

submit a Title V permit application, and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

355. Midwest Gen has failed to submit a complete application and/or update its application for a Title V operating permit for Powerton Unit 6 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Powerton Unit 6 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

356. Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Powerton Unit 6. Unless restrained by an order of this Court, these and similar violations will continue.

357. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen directly, and as a successor to ComEd, and additionally, and in the

alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to

$27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day

for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such

violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**THIRTY-EIGHTH CLAIM FOR RELIEF**
(Midwest Gen's PSD Violations at Waukegan Unit 7)

358.    Paragraphs 1-88 are realleged and incorporated herein by reference.

359.    In or about June 1996, ComEd commenced construction of one or more major

modifications, as defined in the CAA and the Illinois SIP, at Waukegan without applying for or

receiving a PSD permit. These modifications included one or more physical changes or changes

in the method of operation at Waukegan Unit 7, including, but not limited to, replacing boiler

components. These modifications were described in the NOV dated July 31, 2007. These

modifications resulted in significant net emissions increases, as defined by the relevant PSD

regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants: $NO_x$, $SO_2$,

and/or PM.

360.    Beginning at least by the first date of construction of the major modifications at

Waukegan Unit 7 and continuing through its period of ownership and operation, ComEd failed to

comply with the PSD requirements of the Illinois SIP with respect to the major modifications at

Waukegan Unit 7. Among other things, ComEd failed to obtain a PSD permit as required by the

Illinois SIP prior to construction of the major modifications at Waukegan Unit 7, and thereafter

operated Waukegan Unit 7 without BACT emission limitations. As a result, ComEd failed to

comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Waukegan Unit 7.

361.    ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Waukegan Unit 7.

362.    Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

363.    On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Waukegan Unit 7 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Waukegan Unit 7.

364.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties.

### THIRTY-NINTH CLAIM FOR RELIEF
(EME's PSD Violations at Waukegan Unit 7)

365.    Paragraphs 1-88 and 358-364 are realleged and incorporated herein by reference.

366.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section

165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act

Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois

SIP, related to the major modification at Waukegan Unit 7 alleged in the Thirty-Eighth Claim for

Relief.

367.    Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly

or impliedly agreed to assume such liabilities associated with the major modifications at

Waukegan Unit 7 alleged in the Thirty-Eighth Claim for Relief. Thus, EME is liable for this

alleged PSD claim as successor to ComEd.

368.    EME is liable for ComEd's violation of CAA Section 165(a),

42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section

9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at

Waukegan Unit 7.

369.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject EME to injunctive relief.

370.    As Midwest Gen's parent company, EME must approve major capital

expenditures at Waukegan, such as the installation of pollution controls, as evidenced by, among

other things, EME's SEC filings discussing EME's capital expenditures for its subsidiary

companies.

371.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator

of Waukegan Unit 7, is a required defendant, because, among other things: Midwest Gen is a

person who is subject to service of process; Midwest Gen's joinder in this litigation will not

deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot

accord the complete relief that Plaintiffs seek from EME in this Thirty-Ninth Claim for Relief.

## FORTIETH CLAIM FOR RELIEF
### (ComEd's PSD Violations at Waukegan Unit 7)

372.    Paragraphs 1-88 and 358-371 are realleged and incorporated herein by reference.

373.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Waukegan Unit 7 alleged in the Thirty-Eighth Claim for Relief.

374.    Beginning at least by the first date of construction of the major modifications at Waukegan Unit 7 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Waukegan Unit 7.  Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Waukegan Unit 7, and thereafter operated Waukegan Unit 7 without BACT emission limitations.  As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Waukegan Unit 7.

375.    ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Waukegan Unit 7.

376.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

377.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Waukegan Unit 7, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Fortieth Claim for Relief.

### FORTY-FIRST CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Waukegan Unit 7)

378.    Paragraphs 1-88 and 358-377 are realleged and incorporated herein by reference.

379.    In or about June 1996, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Waukegan Unit 7 without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Waukegan Unit 7, including, but not limited to, replacing boiler components.  These modifications were described in the NOV dated July 31, 2007.  These modifications increased the amount of specified air contaminants, including $NO_X$, $SO_2$, and/or PM, emitted by the source, as defined by 35 Ill. Admin. Code §§ 201.102.

380.    As a qualifying modified source under 35 IAC § 212.122, since ComEd modified Waukegan Unit 7 in or about June 1996, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Waukegan Unit 7 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

381.    In addition, Waukegan Unit 7 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Waukegan Unit 7 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Waukegan Unit 7.

382.    In the alternative, as a qualifying source under 35 IAC § 212.123, Waukegan Unit 7 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Waukegan Unit 7 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

383.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 380 and 382, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Waukegan Unit 7. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

384.    Midwest Gen has violated, and continues to violate, the 20 percent opacity limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Waukegan Unit 7. Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar

violations of the Act will continue.

385.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FORTY-SECOND CLAIM FOR RELIEF
### (Title V Violations at Waukegan Unit 7)

386.    Paragraphs 1-88 and 358-385 are realleged and incorporated herein by reference.

387.    In or about June 1996, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Waukegan without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Waukegan Unit 7, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$, $SO_2$, and/or PM. As a result of those modifications, Waukegan Unit 7 became a modified source under Part C of Title I of the Act.

388.    ComEd's construction that constituted major modifications at Waukegan Unit 7, as defined in the Act and the PSD program, separately constituted a "modification" under 35 IAC § 201.102. Therefore, as of June 1996, Waukegan Unit 7 has been a modified source and

has been thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the PM

limits in 35 IAC § 212.204.

389.    After construction until December 15, 1999, ComEd operated Waukegan Unit 7,

as modified. ComEd's operation of the modified unit triggered its obligation to, among other

things, obtain a Title V permit, submit a Title V permit application, and/or update its existing

application to include all applicable requirements, including the requirement to meet BACT

limits and opacity and PM limits for a modified source. ComEd failed to submit such a permit

application or update its then-existing application as required.

390.    As set forth above, on or about December 15, 1999, Midwest Gen began operating

Waukegan Unit 7, as modified. Midwest Gen's operation of the modified unit triggered its

requirement to, among other things, obtain a Title V permit, submit a Title V permit application,

and/or update its existing application to include all applicable requirements, including the

requirement to meet BACT limits.

391.    Additionally, as described above, Midwest Gen has violated, and, upon

information and belief, continues to violate, opacity and PM limitations under the Illinois SIP,

35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Waukegan

Unit 7. These repeated violations of the opacity and PM limitations triggered the requirement to

submit a Title V permit application and/or update its existing application to include all applicable

requirements, including submission of a compliance schedule to remedy its opacity and PM

violations.

392.    Midwest Gen has failed to submit a complete application and/or update its

application for a Title V operating permit for Waukegan Unit 7 that identifies all applicable

requirements, accurately certifies compliance with such requirements, contains a compliance plan

for all applicable requirements for which the source was not in compliance (including the

requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity

and PM limitations under the Illinois SIP), and other specific information that may be necessary

to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or

to determine the applicability of such requirements, as required by CAA Section 503(c),

42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest

Gen thereafter operated Waukegan Unit 7 without meeting the required limitations and without

applying for and/or obtaining a valid operating permit that required compliance with such

limitations or that contained a compliance plan for all applicable requirements for which the

source was not in compliance.

393.    Midwest Gen's conduct has violated and continues to violate CAA Sections

502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-

70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Waukegan Unit 7. Unless restrained by an

order of this Court, these and similar violations will continue.

394.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen directly, and as a successor to ComEd, and additionally, and in the

alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to

$27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day

for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such

violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FORTY-THIRD CLAIM FOR RELIEF
(Midwest Gen's PSD Violations at Waukegan Unit 8)

395.    Paragraphs 1-88 are realleged and incorporated herein by reference.

396.    In or about January 1996, ComEd commenced construction of one or more major modifications, as defined in the CAA and the Illinois SIP, at Waukegan without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Waukegan Unit 8, including, but not limited to, replacing boiler components.  These modifications were described in the NOV dated July 31, 2007.  These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants:  $NO_x$, $SO_2$, and/or PM.

397.    Beginning at least by the first date of construction of the major modifications at Waukegan Unit 8 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Waukegan Unit 8.  Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Waukegan Unit 8, and thereafter operated Waukegan Unit 8 without BACT emission limitations.  As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Waukegan Unit 8.

398.    ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Waukegan Unit 8.

399.    Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

400.    On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Waukegan Unit 8 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Waukegan Unit 8.

401.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties.

### FORTY-FOURTH CLAIM FOR RELIEF
(EME's PSD Violations at Waukegan Unit 8)

402.    Paragraphs 1-88 and 395-401 are realleged and incorporated herein by reference.

403.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Waukegan Unit 8 alleged in the Forty-Third Claim for Relief.

404.    Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly

- 98 -

or impliedly agreed to assume such liabilities associated with the major modifications at Waukegan Unit 8 alleged in the Forty-Third Claim for Relief. Thus, EME is liable for this alleged PSD claim as successor to ComEd.

405. EME is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Waukegan Unit 8.

406. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject EME to injunctive relief.

407. As Midwest Gen's parent company, EME must approve major capital expenditures at Waukegan, such as the installation of pollution controls, as evidenced by, among other things, EME's SEC filings discussing EME's capital expenditures for its subsidiary companies.

408. Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Waukegan Unit 8, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from EME in this Forty-Forth Claim for Relief.

## FORTY-FIFTH CLAIM FOR RELIEF
(ComEd's PSD Violations at Waukegan Unit 8)

409. Paragraphs 1-88 and 395-408 are realleged and incorporated herein by reference.

410. Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally

allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Waukegan Unit 8 alleged in the Forty-Third Claim for Relief.

411.    Beginning at least by the first date of construction of the major modifications at Waukegan Unit 8 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Waukegan Unit 8.  Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Waukegan Unit 8, and thereafter operated Waukegan Unit 8 without BACT emission limitations.  As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Waukegan Unit 8.

412.    ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Waukegan Unit 8.

413.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

414.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Waukegan Unit 8, is a required defendant, because, among other things:  Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Forth-Fifth Claim for

Relief.

## FORTY-SIXTH CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Waukegan Unit 8)

415.     Paragraphs 1-88 and 395-414 are realleged and incorporated herein by reference.

416.     In or about January 1996, ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Waukegan Unit 8 without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Waukegan Unit 8, including, but not limited to, replacing boiler components. These modifications were described in the NOV dated July 31, 2007. These modifications increased the amount of specified air contaminants, including $NO_X$, $SO_2$, and/or PM, emitted by the source, as defined by 35 Ill. Admin. Code §§ 201.102.

417.     As a qualifying modified source under 35 IAC § 212.122, since ComEd modified Waukegan Unit 8 in or about January 1996, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Waukegan Unit 8 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

418.     In addition, because it has been modified, Waukegan Unit 8 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Waukegan Unit 8 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Waukegan Unit 8.

419.     In the alternative, as a qualifying source under 35 IAC § 212.123, Waukegan
Unit 8 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From
approximately October 31, 2002 and, upon information and belief, continuing until the present,
on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from
Waukegan Unit 8 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

420.     U.S. EPA has found, based upon visible emissions referenced in paragraphs 417
and 419, that Midwest Gen has been, and, upon information and belief, continues to be, in
violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at
Waukegan Unit 8. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified
Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation
of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

421.     Midwest Gen has violated, and continues to violate, the 20 percent opacity
limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the
alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Waukegan Unit 8.
Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA
Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the
Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar
violations of the Act will continue.

422.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth
above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for
each such violation occurring on or after January 31, 1997; $32,500 per day for each such
violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

- 102 -

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FORTY-SEVENTH CLAIM FOR RELIEF
(Title V Violations at Waukegan Unit 8)

423.    Paragraphs 1-88 and 395-422 are realleged and incorporated herein by reference.

424.    In or about January 1996, ComEd commenced construction of one or more major

modifications, as defined in the Act and the Illinois SIP, at Waukegan without applying for or

receiving a PSD permit.  These modifications included one or more physical changes or changes

in the method of operation at Waukegan Unit 8, including, but not limited to, replacing boiler

components.  These modifications were described in the NOV dated July 31, 2007.  These

modifications resulted in significant net emissions increases, as defined by the relevant PSD

regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following:  $NO_x$, $SO_2$, and/or PM.

As a result of those modifications, Waukegan Unit 8 became a modified source under Part C of

Title I of the Act.

425.    ComEd's construction that constituted major modifications at Waukegan Unit 8,

as defined in the Act and the PSD program, separately constituted a "modification" under

35 IAC § 201.102.  Therefore, as of January 1996, Waukegan Unit 8 has been a modified source

and has been thereafter subject to the 20 percent opacity limitation in 35 IAC § 212.122 and the

PM limits in 35 IAC § 212.204.

426.    After construction until December 15, 1999, ComEd operated Waukegan Unit 8,

as modified. ComEd's operation of the modified unit triggered its obligation to, among other

things, obtain a Title V permit, submit a Title V permit application, and/or update its existing

- 103 -

application to include all applicable requirements, including the requirement to meet BACT limits and opacity and PM limits for a modified source. ComEd failed to submit such a permit application or update its then-existing application as required.

427.    As set forth above, on or about December 15, 1999, Midwest Gen began operating Waukegan Unit 8, as modified. Midwest Gen's operation of the modified unit triggered its requirement to, among other things, obtain a Title V permit, submit a Title V permit application, and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits.

428.    Additionally, as described above, Midwest Gen has violated, and, upon information and belief, continues to violate, opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Waukegan Unit 8. These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

429.    Midwest Gen has failed to submit a complete application and/or update its application for a Title V operating permit for Waukegan Unit 8 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or

to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Waukegan Unit 8 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

430. Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Waukegan Unit 8. Unless restrained by an order of this Court, these and similar violations will continue.

431. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen directly, and as a successor to ComEd, and additionally, and in the alternative, EME as a successor to ComEd, to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FORTY-EIGHTH CLAIM FOR RELIEF
(Illinois SIP Opacity Violations at Will County Unit 1)

432. Paragraphs 1-88 are realleged and incorporated herein by reference.

433. As a qualifying source under 35 IAC § 212.123, Will County Unit 1 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31,

2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Will County Unit 1 that exceed the opacity limits in Section 212.123.

434. U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Will County Unit 1. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of 35 IAC § 212.123.

435. Midwest Gen has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Will County Unit 1. This provision is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

436. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FORTY-NINTH CLAIM FOR RELIEF
(Title V Violations at Will County Unit 1)

437. Paragraphs 1-88 and 432-436 are realleged and incorporated herein by reference.

438. As described above, Midwest Gen has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Will County Unit 1. These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

439. Midwest Gen has failed to submit a complete application and/or amend its application for a Title V operating permit for Will County Unit 1 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Will County Unit 1 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

440. Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Will County Unit 1. Unless restrained by an order of this Court, these and similar violations will continue.

441.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTIETH CLAIM FOR RELIEF
(Illinois SIP Opacity Violations at Will County Unit 2)

442.    Paragraphs 1-88 are realleged and incorporated herein by reference.

443.    As a qualifying source under 35 IAC § 212.123, Will County Unit 2 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123.  From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Will County Unit 2 that exceed the opacity limits in Section 212.123.

444.    U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Will County Unit 2.  Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of Section 212.123.

445.    Midwest Gen has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Will County Unit 2.  This provision is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is

- 108 -

also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar violations of the Act will continue.

446.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FIFTY-FIRST CLAIM FOR RELIEF
(Title V Violations at Will County Unit 2)

447.    Paragraphs 1-88 and 442-446 are realleged and incorporated herein by reference.

448.    As described above, Midwest Gen has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Will County Unit 2. These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

449.    Midwest Gen has failed to submit a complete application and/or amend its application for a Title V operating permit for Will County Unit 2 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet opacity and PM limitations under the Illinois SIP), and other specific

information that may be necessary to implement and enforce the applicable requirements of the

Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as

required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois

CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Will County Unit 2 without

meeting the required limitations and without applying for and/or obtaining a valid operating

permit that required compliance with such limitations or that contained a compliance plan for all

applicable requirements for which the source was not in compliance.

450.    Midwest Gen's conduct has violated and continues to violate CAA Sections

502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-

70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Will County Unit 2. Unless restrained by an

order of this Court, these and similar violations will continue.

451.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FIFTY-SECOND CLAIM FOR RELIEF
(Illinois SIP Opacity Violations at Will County Unit 3)

452.    Paragraphs 1-88 are realleged and incorporated herein by reference.

453.    As a qualifying source under 35 IAC § 212.123, Will County Unit 3 is subject to

the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31,

- 110 -

2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Will County Unit 3 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

454.    U.S. EPA has found, based upon visible emissions referenced in the preceding paragraph, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.123 at Will County Unit 3.  Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of 35 IAC § 212.123.

455.    Midwest Gen has violated, and continues to violate, the 30 percent opacity limitation under 35 IAC § 212.123 at Will County Unit 3.  This provision is a federally enforceable Illinois SIP provision, pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the Illinois Act, 415 ILCS 5/9(a).  Unless restrained by an order of this Court, these and similar violations of the Act will continue.

456.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTY-THIRD CLAIM FOR RELIEF
(Title V Violations at Will County Unit 3)

457.    Paragraphs 1-88 and 452-456 are realleged and incorporated herein by reference.

- 111 -

458.    As described above, Midwest Gen has violated, and, upon information and belief, continues to be in violation of, opacity limitations under the Illinois SIP, 35 IAC § 212.123, at Will County Unit 3.  These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

459.    Midwest Gen has failed to submit a complete application and/or amend its application for a Title V operating permit for Will County Unit 3 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c), 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5).  Midwest Gen thereafter operated Will County Unit 3 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

460.    Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Will County Unit 3.  Unless restrained by an order of this Court, these and similar violations will continue.

461.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FIFTY-FOURTH CLAIM FOR RELIEF
### (Midwest Gen's PSD Violations at Will County Unit 4)

462.    Paragraphs 1-88 are realleged and incorporated herein by reference.

463.    In or about February 2000, Midwest Gen commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Will County Unit 4 without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Will County Unit 4, including, but not limited to, replacing boiler components. These modification were described in the NOV dated July 31, 2007. These modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following: $NO_x$, $SO_2$, and/or PM.

464.    Midwest Gen has not complied with the PSD requirements in the Illinois SIP with respect to the major modifications at Will County Unit 4. Among other things, Midwest Gen has failed to apply for and obtain a PSD permit as required by the Illinois SIP prior to commencing construction and operation of the major modifications at Will County Unit 4. Midwest Gen did not undergo a BACT determination in connection with these major modifications. Midwest Gen failed to install BACT for control of $NO_x$, $SO_2$, and/or PM, pursuant to such determination, at

Will County Unit 4.

465.     Midwest Gen has violated and continues to violate CAA Section 165(a),

42 U.S.C. § 7475(a), the PSD regulations set forth at 40 C.F.R. § 52.21, and Illinois Act Section

9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at

Will County Unit 4. Unless restrained by an order of this Court, these and similar violations of

the Act will continue.

466.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen to injunctive relief and civil penalties.

### FIFTY-FIFTH CLAIM FOR RELIEF
(Midwest Gen's Successor PSD Violations at Will County Unit 4)

467.     Paragraphs 1-88 and 462-466 are realleged and incorporated herein by reference.

468.     Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally

allege that in or about February 2000, ComEd commenced construction of one or more major

modifications, as defined in the CAA and the Illinois SIP, at Will County without applying for or

receiving a PSD permit. These modifications included one or more physical changes or changes

in the method of operation at Will County Unit 4, including, but not limited to, replacing boiler

components. These modifications were described in the NOV dated July 31, 2007. These

modifications resulted in significant net emissions increases, as defined by the relevant PSD

regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following pollutants:  $NO_x$, $SO_2$,

and/or PM.

469.     Beginning at least by the first date of construction of the major modifications at

Will County Unit 4 and continuing through its period of ownership and operation, ComEd failed

to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Will County Unit 4. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Will County Unit 4, and thereafter operated Will County Unit 4 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Will County Unit 4.

470.    ComEd has violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been at incorporated into the Illinois SIP, at Will County Unit 4.

471.    Midwest Gen is directly liable for this alleged PSD claim pursuant to the federally enforceable provisions of the Illinois Act, 415 ILCS 5/9.1(d), which U.S. EPA has approved as part of the Illinois SIP.

472.    On or about December 15, 1999, Midwest Gen expressly or impliedly agreed to assume liabilities associated with the major modifications at Will County Unit 4 alleged in this Claim. Thus, Midwest Gen is liable for this alleged PSD claim as successor to ComEd. Specifically, Midwest Gen is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, at Will County Unit 4.

473.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties.

## FIFTY-SIXTH CLAIM FOR RELIEF
(EME's PSD Violations at Will County Unit 4)

474.     Paragraphs 1-88 and 462-473 are realleged and incorporated herein by reference.

475.     Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that EME is liable as a successor to ComEd's liability for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Will County Unit 4 alleged in the Fifty-Fifth Claim for Relief.

476.     Specifically, Plaintiffs allege that on or about December 15, 1999, EME expressly or impliedly agreed to assume such liabilities associated with the major modifications at Will County Unit 4 alleged in the Fifty-Fifth for Relief. Thus, EME is liable for this alleged PSD claim as successor to ComEd.

477.     EME is liable for ComEd's violation of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been at incorporated into the Illinois SIP, at Will County Unit 4.

478.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject EME to injunctive relief.

479.     As Midwest Gen's parent company, EME must approve major capital expenditures at Will County, such as the installation of pollution controls, as evidenced by, among other things, EME's SEC filings discussing EME's capital expenditures for its subsidiary

companies.

480.    Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Will County Unit 4, is a required defendant, because, among other things: Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from EME in this Fifty-Sixth Claim for Relief.

**FIFTY-SEVENTH CLAIM FOR RELIEF**
(ComEd's PSD Violations at Will County Unit 4)

481.    Paragraphs 1-88 and 462-480 are realleged and incorporated herein by reference.

482.    Pursuant to Fed. R. Civ. P. 8(d)(2), Plaintiffs alternatively and/or additionally allege that ComEd is liable for violations of CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Illinois Act Section 9.1(d), 415 ILCS 5/9.1(d), the latter two of which have been incorporated into the Illinois SIP, related to the major modification at Will County Unit 4 alleged in the Fifty-Fifth Claim for Relief.

483.    Beginning at least by the first date of construction of the major modifications at Will County Unit 4 and continuing through its period of ownership and operation, ComEd failed to comply with the PSD requirements of the Illinois SIP with respect to the major modifications at Will County Unit 4. Among other things, ComEd failed to obtain a PSD permit as required by the Illinois SIP prior to construction of the major modifications at Will County Unit 4, and thereafter operated Will County Unit 4 without BACT emission limitations. As a result, ComEd failed to comply with PSD requirements, 40 C.F.R. §§ 52.21(j)-(o), including the requirements to seek a PSD permit and apply BACT for control of $NO_x$, $SO_2$, and/or PM, at Will County Unit 4.

484.     ComEd violated CAA Section 165(a), 42 U.S.C. § 7475(a), the PSD regulations set forth in 40 C.F.R. § 52.21, and Section 9.1(d) of the Illinois Act, 415 ILCS 5/9.1(d), the latter two of which have been at incorporated into the Illinois SIP, at Will County Unit 4.

485.     As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject ComEd to injunctive relief.

486.     Pursuant to Fed. R. Civ. P. 19(a)(1), Midwest Gen, the current owner and operator of Will County Unit 4, is a required defendant, because, among other things:  Midwest Gen is a person who is subject to service of process; Midwest Gen's joinder in this litigation will not deprive the court of subject matter jurisdiction; and, in Midwest Gen's absence, the Court cannot accord the complete relief that Plaintiffs seek from ComEd to remedy this Fifth-Seventh Claim for Relief.

### FIFTY-EIGHTH CLAIM FOR RELIEF
(Illinois SIP Opacity and PM Violations at Will County Unit 4)

487.     Paragraphs 1-88 and 462-486 are realleged and incorporated herein by reference.

488.     In or about February 2000, Midwest Gen and/or ComEd commenced construction of one or more major modifications, as defined in the Act and the Illinois SIP, at Will County Unit 4 without applying for or receiving a PSD permit.  These modifications included one or more physical changes or changes in the method of operation at Will County Unit 4, including, but not limited to, replacing boiler components.  These modification were described in the NOV dated July 31, 2007.  These modifications increased the amount of specified air contaminants, including $NO_X$, $SO_2$, and/or PM, emitted by the source, as defined by 35 IAC §§ 201.102.

489.     As a qualifying modified source under 35 IAC § 212.122, since ComEd and/or

Midwest Gen modified Will County Unit 4 in or about February 2000, it has been subject to the 20 percent opacity limit contained in 35 IAC § 212.122. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Will County Unit 4 that exceed the 20 percent opacity limit in Section 212.122 of the Illinois SIP.

490.    In addition, because it has been modified, Will County Unit 4 is a qualifying source under Illinois SIP provision 35 IAC § 212.204 governing PM limitations for such sources. As provided in 35 IAC § 212.124(d)(2)(A), an exceedance of the opacity limitations of 35 IAC § 212.122 at Will County Unit 4 shall constitute a violation of the applicable PM limitations contained in 35 IAC § 212.204 at Will County Unit 4.

491.    In the alternative, as a qualifying source under 35 IAC § 212.123, Will County Unit 4 is subject to the 30 percent opacity limit contained in 35 IAC § 212.123. From approximately October 31, 2002 and, upon information and belief, continuing until the present, on numerous occasions, Midwest Gen emitted, and continues to emit, visible emissions from Will County Unit 4 that exceed the opacity limits in Section 212.123 of the Illinois SIP.

492.    U.S. EPA has found, based upon visible emissions referenced in paragraphs 489 and 491, that Midwest Gen has been, and, upon information and belief, continues to be, in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Will County Unit 4. Pursuant to CAA Section 113(a), 42 U.S.C. § 7413(a)(1), U.S. EPA notified Midwest Gen and Illinois by the NOV that U.S. EPA had found Midwest Gen to be in violation of 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123.

493.    Midwest Gen has violated, and continues to violate, the 20 percent opacity

- 119 -

limitation under 35 IAC § 212.122 and the PM limitations under 35 IAC § 212.204 or, in the

alternative, the 30 percent opacity limitation under 35 IAC § 212.123, at Will County Unit 4.

Each of these provisions is a federally enforceable Illinois SIP provision, pursuant to CAA

Section 113(a), 42 U.S.C. § 7413(a), and is also enforceable as a violation of Section 9(a) of the

Illinois Act, 415 ILCS 5/9(a). Unless restrained by an order of this Court, these and similar

violations of the Act will continue.

494. As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth

above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for

each such violation occurring on or after January 31, 1997; $32,500 per day for each such

violation occurring on or after March 15, 2004; and $37,500 per day for each such violation

occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### FIFTY-NINTH CLAIM FOR RELIEF
(Title V Violations at Will County Unit 4)

495. Paragraphs 1-88 and 462-494 are realleged and incorporated herein by reference.

496. In or about February 2000, Midwest Gen and/or ComEd commenced construction

of one or more major modifications, as defined in the Act and the Illinois SIP, at Will County

without applying for or receiving a PSD permit. These modifications included one or more

physical changes or changes in the method of operation at Will County Unit 4, including, but not

limited to, replacing boiler components. These modifications were described in the NOV dated

July 31, 2007. These modifications resulted in significant net emissions increases, as defined by

the relevant PSD regulations, 40 C.F.R. § 52.21(b)(3)(i), of one or more of the following: $NO_x$,

$SO_2$, and/or PM. As a result of those modifications, Will County Unit 4 became a modified source under Part C of Title I of the Act.

497.    As set forth above, on or about December 15, 1999, Midwest Gen began operating Will County Unit 4, as modified. Midwest Gen's operation of the modified unit triggered its requirement to, among other things, obtain a Title V permit, submit a Title V permit application and/or update its existing application to include all applicable requirements, including the requirement to meet BACT limits.

498.    Additionally, as described above, Midwest Gen has violated, and, upon information and belief, continues to be in violation of opacity and PM limitations under the Illinois SIP, 35 IAC § 212.122 and 35 IAC § 212.204 or, in the alternative, Section 212.123, at Will County Unit 4. These repeated violations of the opacity and PM limitations triggered the requirement to submit a Title V permit application and/or update its existing application to include all applicable requirements, including submission of a compliance schedule to remedy its opacity and PM violations.

499.    Midwest Gen has failed to submit a complete application and/or update its application for a Title V operating permit for Will County Unit 4 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a BACT determination under PSD and to meet opacity and PM limitations under the Illinois SIP), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, the Illinois CAAPP, or to determine the applicability of such requirements, as required by CAA Section 503(c),

- 121 -

42 U.S.C. § 7661(b)(c), 40 C.F.R. § 70.5, and the Illinois CAAPP, 415 ILCS 5/39.5(5). Midwest Gen thereafter operated Will County Unit 4 without meeting the required limitations and without applying for and/or obtaining a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.

500.    Midwest Gen's conduct has violated and continues to violate CAA Sections 502(a), 503(c), and 504(a), 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Illinois CAAPP, 415 ILCS 5/39.5, at Will County Unit 4. Unless restrained by an order of this Court, these and similar violations will continue.

501.    As provided in CAA Section 113(b), 42 U.S.C. § 7413(b), the violations set forth above subject Midwest Gen to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

### PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States and the State of Illinois request that this Court:

1.    Permanently enjoin Defendants from operating any of the plants subject to this action, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2.    Order Midwest Gen and/or the other Defendants (acting on behalf of Midwest

- 122 -

Gen) to prepare applications for, and/or apply for, new source review permits under Parts C and/or D of Title I of the Clean Air Act, as appropriate, that conform with the permitting requirements in effect at the time of the permitting action, for each pollutant in violation of the new source review requirements of the Clean Air Act;

3.      Order Defendants to remedy their past violations by, among other things, requiring Defendants to install and/or operate the best available control technology or lowest achievable emission rate, as appropriate, at the units subject to this action, for each pollutant in violation of the new source review requirements of the Clean Air Act;

4.      Order Midwest Gen and/or the other Defendant (acting on behalf of Midwest Gen) to apply and/or amend applications for permits that are in conformity with the requirements of the Illinois SIP opacity and PM limitations and the Title V program;

5.      Order Midwest Gen to achieve, maintain, and demonstrate compliance with the CAA and applicable requirements established thereunder, including provisions of the Illinois SIP described above at the six plants at issue;

6.      Order Midwest Gen to conduct audits of its operations to determine if any additional modifications have occurred at the six plants at issue that would require it to meet the requirements of PSD or Nonattainment NSR, as appropriate, and report the results of these audits to the United States and the State of Illinois;

7.      Order Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

8.      Assess a civil penalty against Defendants of up to $25,000 per day for each

violation of the Clean Air Act and applicable regulations occurring before January 31, 1997;

$27,500 per day for each such violation occurring on or after January 31, 1997; $32,500 per day

for each such violation occurring on or after March 15, 2004; and $37,500 per day for each such

violation occurring on or after January 12, 2009;

9.     Award Plaintiffs their costs of this action; and,

10.    Grant such other relief as the Court deems just and proper.


                              Respectfully submitted,


Dated:  May  /2  , 2010

                              IGNACIA S. MORENO
                              Assistant Attorney General
                              Environment and Natural Resources Division



                              JENNIFER A. LUKAS-JACKSON
                              KRISTIN M. FURRIE
                              Trial Attorneys
                              JUSTIN A. SAVAGE
OF COUNSEL                    Senior Counsel
Environmental Enforcement Section       Environment and Natural Resources Division
SUSAN TENNENBAUM              U.S. Department of Justice
CHARLES MIKALIAN             P.O. Box 7611
Assistant Regional Counsels   Washington, DC  20044-7611
Office of Regional Counsel (C-14J)   Phone:  (202) 305-2332
U.S. EPA, Region V           Fax:  (202) 514-8395
77 W. Jackson Blvd.          Jennifer.lukas-jackson@usdoj.gov
Chicago, IL  60604-3590



                              PATRICK J. FITZGERALD
                              United States Attorney for the
                              Northern District of Illinois



                              - 124 -

JONATHAN HAILE
Assistant United States Attorney
Northern District of Illinois
219 S. Dearborn St., Fifth Floor
Chicago, IL 60604

*Signature Page for the State of Illinois, United States of America and the State of Illinois, et al. v. Midwest Generation, LLC, et al., 09-cv-05277 (N.D. Ill.).*

STATE OF ILLINOIS

LISA MADIGAN
Attorney General

OF COUNSEL:
ROSEMARIE CAZEAU, Bureau Chief
STEPHEN SYLVESTER
Assistant Attorneys General
69 W. Washington St., 18th Floor
Chicago, IL 60602

By: *Matthew J. Dunn*

MATTHEW J. DUNN, Chief
Environmental Enforcement/
Asbestos Litigation Division
Assistant Attorney General
69 W. Washington St., 18th Floor
Chicago, IL 60602
Phone: (312) 814-2521
MDunn@atg.state.il.us