**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS,<br><br>               Plaintiffs,<br><br>    and<br><br>CITIZENS AGAINST RUINING THE ENVIRONMENT; THE ENVIRONMENTAL LAW AND POLICY CENTER; NATURAL RESOURCE DEFENSE COUNCIL, INC.; RESPIRATORY HEALTH ASSOCIATION OF METROPOLITAN CHICAGO; and SIERRA CLUB,<br><br>               Intervenor-Plaintiffs,<br><br>    v.<br><br>MIDWEST GENERATION, LLC, EDISON MISSION ENERGY, INC., and COMMONWEALTH EDISON COMPANY,<br><br>               Defendants. | No. 09-cv-05277<br><br>Judge John W. Darrah<br><br>Magistrate Judge Maria Valdez |

**DEFENDANT MIDWEST GENERATION, LLC'S
RESPONSE TO PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION
OF PARTIAL FINAL JUDGMENT AND TO STAY REMAINING CLAIMS**

On September 14, 2011, plaintiffs filed their Unopposed Motion for Certification of Partial Final Judgment and to Stay Remaining Claims (Dkt. 157). Those papers accurately set forth Midwest Gen's position on the motion: "[I]n the presence of a stay of all remaining claims . . . pending appeal, Midwest Gen [would] not oppose a Rule 54(b) determination regarding the court's decisions on Midwest Gen's motions to dismiss[,]" but Midwest Gen reserved the right "to file a response that sets out the reasons why Midwest Gen, in the absence of such a stay, would oppose the requested Rule 54(b) determination . . . ." *Id.* at 2. At the September 21, 2011 presentment hearing for plaintiffs' motion, this Court granted Midwest Gen leave to file that response, and these papers convey it.

Absent a stay of plaintiffs' and intervenor-plaintiffs' remaining federal Clean Air Act and state statutory and regulatory claims pending appeal, the dismissed claims for alleged violations of the Prevention of Significant Deterioration provisions of the Clean Air Act are not appropriate candidates for Rule 54(b) certification. Factual inquiries required for resolution of the dismissed PSD claims and those that would remain for resolution on the claims still before this Court significantly overlap. The requested immediate appeal of the dismissed PSD claims, in the absence of a stay, would occasion the very kind of piecemeal appeals and other judicial diseconomies that Rule 54(b) seeks to avoid. Midwest Gen, therefore, asks this Court either: (1) to stay all remaining claims pending appeal should it grant Rule 54(b) certification for the dismissed PSD claims, or (2) to deny the requested Rule 54(b) certification altogether.

## I. ABSENT A STAY OF ALL REMAINING CLAIMS, PLAINTIFFS' DISMISSED PSD CLAIMS ARE INAPPROPRIATE CANDIDATES FOR RULE 54(b) CERTIFICATION.

As plaintiffs acknowledge, the threshold question for Rule 54(b) certification is whether "'a distinct claim has been fully resolved with respect to all parties.'" (Dkt. 157 at 4 (quoting *Factory Mut. Ins. Co. v. Bobst Group USA , Inc.*, 392 F.3d 922, 924 (7th Cir. 2004)). If the claims to be certified are not distinct from those that remain in the district court, Rule 54(b) certification is not appropriate. *See, e.g.*, *Lottie v. W. Am. Ins. Co., of Ohio Cas. Grp. of Ins. Cos.*, 408 F.3d 935, 938-39 (7th Cir. 2005) (The Seventh Circuit has repeatedly "insisted that Rule 54(b) be employed only when the subjects of the partial judgment do not overlap with those remaining in the district court."); *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (Rule 54(b) should be interpreted to preserve the "historic federal policy against piecemeal appeals" (quotation omitted).).

Before certifying a Rule 54(b) appeal, the Court should "determine whether the [dismissed] claims overlap *as a practical matter* with the remaining [] claim[s]." *Lottie*, 408

F.3d at 939 (emphasis added) (citing *Newman v. Indiana*, 129 F.3d 937, 940 (7th Cir. 1997) (whether the retained claims are separate from the dismissed ones depends on whether, in the practical sense, there is minimal factual overlap)). In this pragmatic analysis, separateness "mean[s] *minimal factual overlap*." *Lottie*, 408 F.3d at 939 (emphasis added) (citing *Continental Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 516 (7th Cir. 1999); *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 515 (7th Cir. 2002) ("separate" in the Rule 54(b) context does not mean arising under a different statute or legal doctrine but rather means involving different facts); *Horwitz v. Alloy Auto. Co.*, 957 F.2d 1431, 1434 (7th Cir. 1992) (explaining that if there is a great deal of factual or legal overlap between counts, they are considered the same claim for Rule 54(b) purposes)). So, even if the dismissed claims involve different legal theories or statutes, Rule 54(b) certification is inappropriate if the claims turn on overlapping facts:

> [The test] is whether the claim that is contended to be separate so overlaps the claim or claims that have been retained for trial that if the latter were to give rise to a separate appeal at the end of the case the court would have to go over the same ground that it had covered in the first appeal.

*Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1162 (7th Cir. 1997).[1]

The discovery and factual investigation attendant to resolution of plaintiffs' dismissed PSD claims overlap in numerous ways with that which will be required to resolve their remaining claims, and, as presented below, this should not be a matter of significant dispute. This Court, in the orders for which plaintiffs seek Rule 54(b) certification, dismissed plaintiffs' PSD claims as they related to nine coal-fired, electricity-generating units at five power plants in Illinois. But remaining before this Court for resolution are:

---

[1] This makes sense. For where claims certified for immediate appeal turn on the same or similar facts as claims that remain, *factual* discovery on the remaining claims will almost certainly have to be redone to some extent in the event of an appellate reversal, to accommodate the *legal* nuances attendant to the certified claims.

- an additional, identically pleaded PSD claim regarding still another unit at an Illinois plant—Will County Unit 4;

- claims for violation of visible air pollutant and particulate matter limitations under Illinois's state implementation plan ("opacity" claims) at each of the same units and plants for which PSD claims had been alleged (whether or not dismissed); and

- claims for Title V violations that allegedly derive from these remaining claims.

The dismissed PSD claims and the remaining PSD, opacity, and Title V claims would ultimately require resolution of many of the same or similar factual inquiries, necessitating significantly duplicative discovery and, depending on timing, a significantly duplicative trial should the Seventh Circuit revive the dismissed PSD claims. And both the dismissed and remaining claims also would involve many of the same or similar facts on appeal, requiring the Seventh Circuit to "go over the same ground" again should that second trial result in perhaps another appeal. *Lawyers Title Ins.*, 118 F.3d at 1162. Rule 54(b) is intended to avoid precisely this waste of the parties' (and the courts') resources. At least four areas of factual overlap are evident.

### A. There Is Significant Factual Overlap Between Plaintiffs' Dismissed PSD Claims And The Remaining PSD Claim Directed To Will County Unit 4.

To begin, there is obvious factual overlap between plaintiffs' dismissed PSD claims directed to Midwest Gen's units and plants in various other Illinois locales and their remaining PSD claim directed to Will County Unit 4. Plaintiffs, in pressing their PSD claim directed to Will County Unit 4, predictably will demand (as they already have demanded) broad, programmatic discovery on how Midwest Gen, and/or ComEd before it, operated or performed work at the Illinois plants; how those parties generally complied with PSD and other obligations under the Clean Air Act and related regulations; and whether and how either of those parties

planned for and undertook alleged "modifications" to the various Illinois units over time.[2]  These

demands, also predictably, will involve the production of documents related to matters, and the

depositions of company and former company employees with responsibilities, broader than

operations, compliance, and construction at Will County Unit 4 alone.  Should the Seventh

Circuit later revive plaintiffs' other-unit/other-plant PSD claims, those document productions

likely will require significant supplementation if not "redoing" and those current and former

employees with cross-unit and cross-plant responsibility likely will be required to sit for a second

set of testimonial sessions.

Midwest Gen also will have to retrace many of its discovery steps should plaintiffs

prevail on a Rule 54(b) appeal.  As part of defending against plaintiffs' Will County Unit 4 PSD

claim, Midwest Gen will seek discovery from the United States EPA ("USEPA") and the Illinois

EPA ("ILEPA") on the New Source Review program, including both USEPA's and ILEPA's

interpretations and decisions over time, and both Agencies' dealings with ComEd before

Midwest Gen assumed ownership of Will County Unit 4.  Many of those lines of inquiry, with

broader scope, are also relevant for the dismissed PSD claims.  Likewise, Midwest Gen will need

to depose plaintiffs' experts about their general emissions methodology and how they performed

their emissions calculations for Will County Unit 4.  Should the other PSD claims come back,

Midwest Gen will have to re-depose those same experts to ask the same or similar questions

about the other plants.  The dismissed PSD claims thus substantially "overlap as a practical

matter with the remaining [Will County Unit 4] claim."  *Lottie*, 408 F.3d at 939.

---

[2] Indeed, plaintiffs have outlined this expansive view of Will County Unit 4 discovery in their discovery correspondence.  *See, e.g.*, March 31, 2010 Letter from Savage at ¶ 12 ("Midwest Gen has identified certain discovery requests as relevant to the PSD claims only . . . [but] these requests are responsive to our existing Will County Unit 4 PSD claims and our Title V claims on the other Midwest Gen Units in this litigation.") (Ex. A).

Plaintiffs assert that "a district court in similar litigation entered partial final judgment pursuant to Rule 54(b) on PSD claims at one plant, despite the fact that PSD claims remained pending in the district court for PSD claims [sic] at other plants." (Dkt. 157 at 7-8 (citing *United States v. Cinergy Corp.*, No. 99-cv-01693, Dkt. No. 1747 (S.D. Ind. May 29, 2009)). But that assertion is suspect on two levels.

First, although the *Cinergy* court did note that there was "no just reason for delay" in entering judgment, it never mentioned Rule 54(b). Indeed, no party appears to have raised Rule 54(b), and the Seventh Circuit never mentioned Rule 54(b) in its subsequent opinion. *See United States v. Cinergy Corp.*, 623 F.3d 455 (7th Cir. 2010).

Second, the *Cinergy* court entered partial final judgment after ten years of litigation, an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and a subsequent jury trial. Its entry of partial final judgment thus came only after one intermediate clarification of the law by the Seventh Circuit (pursuant to section 1292(b), which plaintiffs have not invoked here) and a fully developed factual record. There was little risk of duplication. Here, by contrast, the Seventh Circuit has never addressed the key legal issues and the factual record is yet to be built. Granting Rule 54(b) certification now thus increases the likelihood of future appeals with overlapping or duplicative facts, as well as redundant proceedings in this Court. *See, e.g.*, *Factory Mut. Ins. Co.*, 392 F.3d at 924 ("To keep Rule 54(b) distinct from § 1292(b), we have insisted that Rule 54(b) be employed only when the subjects of the partial judgment do not overlap with those ongoing in the district court.").[3]

---

[3] Plaintiffs also describe the Seventh Circuit's opinion in *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008), as holding that claims seeking "different relief" can be certified under Rule 54(b) if they arise from the "same events." (Dkt. 157 at 7) The opinion does say that, but the opinion also goes on to make it clear that "[a]lthough, in the case before us, many of the claims on appeal and some still pending in the district court stem from the same

**B.**     **Plaintiffs Themselves Assert Significant Factual Overlap Between Their Dismissed PSD Claims And Their Remaining Opacity Claims.**

"Modification" of a unit is a key event that potentially can trigger PSD liability.  *See, e.g.*, *United States v. Midwest Generation, LLC*, 694 F. Supp. 2d 999, 1005 (N.D. Ill. 2010) ("PSD provisions only pertain to the construction or modification of plants—not their subsequent operation.").  Plaintiffs assert that "modification" is also a key event for their opacity claims, alleging that the permissible opacity level changes from 30% to 20% if the electric generating unit has been "modified," as that term is defined under state law.  *See, e.g.*, Plaintiffs' Amended Complaint at ¶ 148 (citing 35 IAC § 212.122 for the alleged 20% opacity standard) (Dkt. 93).

The legal definition of "modification" as that term is defined for the Illinois opacity rules—and how similar it is or is not to a PSD "modification"—remains disputed.  The United States, though, has already staked out its position:  "The threshold question of whether Midwest Gen's units were 'modified' within the meaning of the Illinois SIP *largely parallels the facts that Plaintiffs would rely upon* to show a PSD modification."  Plaintiffs' Response to Midwest Gen's First Set of Interrogatories at Interrogatory 1 (emphasis added) (Ex. B).  With this interrogatory answer, the United States announced its intent to pursue "parallel" facts in its effort to prove both PSD violations and opacity violations (via a lower opacity threshold).  And the pursuit of "parallel," though perhaps not identical, facts itself guarantees some discovery redux on "modification" matters, should the Seventh Circuit revive plaintiffs' PSD claims for trial.  If

_____
(continued…)

occurrence . . . the issues raised in each part of the case are legally distinct and *involve different facts*."  *Marseilles Hydro Power*, 518 F.3d at 464 (emphasis added).  Factual distinctness remains the *sine qua non* of Rule 54(b) certification.

plaintiffs have their way, PSD discovery and opacity discovery certainly will overlap, if imperfectly, and the United States has conceded the point.[4]

### C. There Is Significant Factual Overlap Between Plaintiffs' Dismissed PSD Claims Against ComEd And EME And The Remaining PSD Claim And Opacity Claims Against Midwest Gen.

In the orders for which plaintiffs seek certification, this Court dismissed from the case ComEd, the former owner and operator of the units and plants at issue, and EME, the indirect parent of Midwest Gen. But plaintiffs, in their amended complaint, asserted the same PSD claims against these now-former parties under theories of direct and "successor" liability, respectively. For the reasons noted above, there would be extensive factual overlap in the discovery and factual development related to the pursuit and defense of the dismissed claims (if revived) against these former parties (if rejoined) and those that will otherwise proceed before this Court in the meantime. ComEd and EME, if rejoined to these proceedings, will have the right to develop their own factual record on the very same factual issues discovered and developed by plaintiffs, intervenor-plaintiffs, and Midwest Gen in ComEd and EME's absence. Return of these companies as defendants would thus occasion a material discovery "do-over," as of right.

More specifically, because ComEd and EME are not currently parties, if discovery proceeds on plaintiffs' remaining claims, it will do so without ComEd's and EME's participation

---

[4] Indeed, the United States has also repeatedly emphasized this overlap in its discovery correspondence. *See, e.g.*, December 21, 2010 Letter from Lukas-Jackson at 3 n.2 ("[I]t is our position that many of our interrogatories and document requests that the Court has stayed are directly related to our opacity claims (not just PSD).") (Ex. C); June 17, 2010 Letter from Lukas-Jackson at ¶ 2 ("[T]he scope of the current stay on 'PSD discovery' is inappropriately impeding discovery of our opacity claims.") (Ex. D).

as parties.[5]  If the Seventh Circuit later revives plaintiffs' PSD claims against ComEd and EME, both again will be parties with the prerogative to seek their own full and complete discovery on USEPA and ILEPA's PSD-related conduct, the acts of the other parties' fact witnesses, and the opinions of all parties' experts, all of whom (both the lay and the expert witnesses) likely will have been deposed previously.

> **D.**    **There Is Factual Overlap Between Plaintiffs' Dismissed Title V PSD Claims And The Remaining Title V Claims For Opacity and Will County Unit 4 PSD.**

Finally, although plaintiffs have not sought Rule 54(b) certification of their dismissed Title V claims premised on the dismissed PSD claims, they surely will seek to re-file those claims if the Seventh Circuit revives their PSD claims.  This Court thus should consider the Title V overlap, too.

For example, plaintiffs continue to press Title V claims based on Midwest Gen's alleged opacity violations.  Proving those claims will require plaintiffs to conduct discovery on Midwest Gen's Title V permits—focused on the opacity predicate for these claims that is currently in the case—as well as Midwest Gen's general Title V compliance plans.  Plaintiffs likewise will ask to depose the Midwest Gen personnel responsible for those permits and plans.  Midwest Gen, for its part, will have to conduct general Title V discovery and depositions in order to defend against the remaining Title V claims.  Should plaintiffs prevail on their Rule 54(b) appeal, that discovery will need to be redone to focus on the PSD predicates, with many of the same facts to be re-analyzed and many of the same witnesses to be heard from again.

---

[5] And of course, the scope of non-party discovery is narrower than party discovery.  *Compare* Fed. R. Civ. P. 45 (subpoenas), *with* Fed. R. Civ. P. 30 (depositions), Fed. R. Civ. P. 33 (interrogatories to parties), Fed. R. Civ. P. 34 (document production), and Fed. R. Civ. P. 36 (requests for admission).

## II. A STAY WOULD AMELIORATE THESE PROBLEMS AND PRESERVE THE EFFICIENCIES THAT RULE 54(b) IS INTENDED TO PROTECT.

The overlap here is real and substantial. But caselaw suggests that staying plaintiffs'
remaining claims pending appeal would preserve the efficiencies that Rule 54(b) is designed to
safeguard. As one court explained, "[i]f a district court certifies claims for appeal pursuant to
Rule 54(b), *it should stay all proceedings on the remaining claims* if the interests of efficiency
and fairness are served by doing so." *Doe v. Univ. of Cal.*, No. C-92-2284 SAW, 1993 WL
361540, at *2 (N.D. Cal. Sept. 2, 1993) (emphasis added).

Federal courts from around the country routinely agree. *See, e.g.*, *Access Mediquip
L.L.C. v. UnitedHealth Grp. Inc.*, No. H-09-2965, 2010 WL 4812968, at *4 (S.D. Tex. Nov. 19,
2010) ("A Rule 54(b) final judgment . . . *together with a stay pending appeal*—is an efficient
way to avoid duplicative, potentially unnecessary, discovery, motion practice, and trials."
(emphasis added)); *Las Vegas Sands, Inc. v. Culinary Workers Union*, No. CV-S-9700467-PMP,
2002 WL 32511175, at *1 (D. Nev. July 3, 2002) ("[A]n immediate appeal . . . and stay pending
that appeal substantially reduces the risk of a second trial, which would consume the valuable
time and resources of this Court and the parties."); *De Aguilar v. AMTRAK*, No. CV-F-02-6527
REC, 2006 U.S. Dist. LEXIS 11187, at *10 (E.D. Cal. Mar. 2, 2006) ("Staying further
proceedings pending the appeal . . . possibly will avoid the need to conduct two separate trials,
thereby saving judicial resources as well as the resources of the parties."); *Cent. Green Co. v.
United States*, No. CV-F-96-5541 REC, 1997 U.S. Dist. LEXIS 23913, at *7 (E.D. Cal. Nov. 18,
1997) ("[T]his court has the inherent power to stay proceedings in order to control the
disposition of the causes on its docket with economy of time and effort for itself, for counsel and
for litigants."); *Stadler v. McCulloch*, 882 F. Supp. 1524, 1527-28 (E.D. Pa. 1995) ("We think it
more sensible to await the Third Circuit's decision and proceed accordingly, rather than charging

forward, possibly to trial, knowing that we may be compelled to return to this point and begin anew.").[6] And agreement is also (unsurprisingly) prevalent where (as here) no party is opposed. *See, e.g.*, *Boudwin v. Hastings Bay Marina, Inc.*, 614 F.3d 780, 782 (8th Cir. 2010) ("[T]he parties agreed to stay the trial on the counterclaims until the resolution of this appeal."); *Access Mediquip LLC*, 2010 WL 4812968, at *4 ("United does not oppose the Rule 54(b) final judgment and corresponding stay pending the appeal.").

Here, both "efficiency and fairness" militate in favor of staying the remaining claims pending any Rule 54(b) appeal. *Matek v. Murat*, 638 F. Supp. 775, 784 (C.D. Cal. 1986). Staying the remaining claims would spare the parties and the courts from wasted time and effort should plaintiffs prevail on appeal. It would spare plaintiffs, intervenor-plaintiffs, and Midwest Gen from having to repeat significant document discovery and many depositions (among themselves); it would spare plaintiffs, intervenor-plaintiffs, and Midwest Gen from having to redo much discovery if ComEd and EME are added back to the case caption; and it would spare this Court from having to resolve duplicative discovery disputes and other pretrial motions related to successive sets of viability-tested claims. And most importantly, a stay would avoid the possibility of this Court presiding over a trial (and the Seventh Circuit resolving an appeal) at which central issues are historical PSD, opacity, and Title V practices and compliance at the plants, the USEPA and ILEPA's rules and interpretations regarding the foregoing regulatory

---

[6] *See also Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 628 (2d Cir. 1991) (quoting from district court order that "a stay of this action, pending resolution of the appeal from this entry of judgment pursuant to Fed. R. Civ. P. 54(b) is appropriate"); *Utah Power & Light Co. v. Fed. Ins. Co.*, 983 F.2d 1549, 1551, 1553 (10th Cir. 1993) (noting that the trial court had stayed the remaining proceedings when entering its Rule 54(b) judgment); *Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 244 n.1 (4th Cir. 1993) (noting in an appeal pursuant to Rule 54(b) that "a CERCLA claim has been stayed pending this appeal"); *Davis v. Mann*, 882 F.2d 967, 972 n.14 (5th Cir. 1989) (noting that the trial court had stayed the remaining proceedings when entering its Rule 54(b) judgment); *McLean v. Badger Equip. Co.*, 868 F. Supp. 258, 263 (E.D. Wis. 1994) ("The Court also stays any and all proceedings . . . pending the appeal.").

regimes, those Agencies' records of their dealings with the plants' prior and current owners, and the details of whether and how any alleged "modifications" at one or more of the plants were performed—only to then conduct a second trial and appeal featuring plaintiffs' then-revived PSD claims, at which all of these issues are *again* at center stage.

Midwest Gen thus respectfully suggests that if there is to be a Rule 54(b) appeal, the remaining claims should be stayed while that appeal is pending.

## CONCLUSION

For the foregoing reasons, should the Court grant Rule 54(b) certification, it should stay all of plaintiffs' remaining claims pending appeal. In the absence of such a stay, plaintiffs' motion should be denied in its entirety.

Dated:  October 5, 2011

Respectfully submitted,

/s/ Brian J. Murray
Daniel E. Reidy (IL Bar No. 2306948)
  dereidy@jonesday.com
Brian J. Murray (IL Bar No. 6272767)
  bjmurray@jonesday.com
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601-1692
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585

James M. Jones (*pro hac vice*)
  jmjones@jonesday.com
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania  15219-2514
Telephone:  (412) 391-3939
Facsimile:  (412) 394-7959

Kevin P. Holewinksi (*pro hac vice*)
  kpholewinski@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant Midwest Generation, LLC
and Edison Mission Energy, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail address on file with the Court:

Keith Harley
Chicago Legal Clinic
205 W. Monroe, Floor 4
Chicago, IL 60606
(312) 726-2938

*Attorneys for Citizens Against Ruining the Environment and The Sierra Club*

Shannon Fisk
Natural Resources Defense Council
2 N. Riverside Plaza, Suite 2250
Chicago, IL 60606
(312) 651-7904

*Attorneys for the Natural Resources Defense Council, Inc.*

Faith E. Bugel
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1300
Chicago, IL 60601-2110
(312) 673-6500

*Attorneys for The Environmental Law and Policy Center and Respiratory Health Association of Metropolitan Chicago*

John C. Cruden
Jennifer A. Lukas-Jackson
Environmental Enforcement Section
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-2332

Patrick J. Fitzgerald
Jonathan Haile
Office of the United States Attorney
Northern District of Illinois
219 S. Dearborn St., Fifth Floor
Chicago, IL 60604

*Attorneys for the United States*

Matthew J. Dunn
Chief, Environmental Enforcement/
Asbestos Litigation Division
Assistant Attorney General
69 W. Washington St., 18th Floor
Chicago, IL 60602
(312) 814-2521

*Attorneys for the State of Illinois*

Dated:  October 5, 2011

/s/ Brian J. Murray
Brian J. Murray